# EXHIBIT "12"

1         REPORTER'S RECORD        COPY

2      TRIAL COURT CAUSE NO. 2020DCV2997

3          VOLUME 1 OF 1 VOLUMES

4  ALBERTO FLORES,                )
        Plaintiff,                )
5  vs.                            )
   KEYVAN PARSA, M.D. and         )
6  MONTOYA PARK PLACE, INC.,      )
        Defendants,               )  IN THE DISTRICT COURT
7                                 )
   vs.                            )  OF EL PASO COUNTY, TEXAS
8                                 )
   WESTSTAR TITLE, L.L.C.,        )  327TH JUDICIAL DISTRICT
9  Intervenor/Third-Party         )
   Plaintiff,                     )
10                                )
   FIDELITY NATIONAL TITLE        )
11 INSURANCE, CO.                 )

12

13      *********************************

14              MOTIONS HEARING

15      *********************************

16      The 18th day of May, 2020, the following

17 proceedings came on to be heard in the above-entitled

18 and numbered cause before the Honorable THOMAS A.

19 SPIECZNY  Judge Presiding, via Zoom in accordance with

20 the Supreme Court of Texas' Emergency Order Regarding

21 the COVID-19 State of Disaster, held in El Paso, El Paso

22 County, Texas:

23      Proceedings reported by machine shorthand

24 utilizing computer-assisted realtime transcription.

25

1          MR. MIRANDA:  Yeah.  And we know you see

2 hundreds if not thousands of these, so, I mean -- and I

3 even told my client, and I spoke with Mr. Brewer and I

4 think that's where it came from.  That being said, it

5 was always our intention to object to the motion for the

6 interpleader funds, because, in all honesty, it -- it

7 remains our position that's unnecessary.

8          As the Court is well aware, not only has

9 Mr. Parsa voluntarily entered into an agreed temporary

10 restraining order, we also voluntarily entered into an

11 agreed temporary injunction.  And the agreed temporary

12 injunction has maintained the status quo of the funds.

13          Back in January I had discussions with

14 Mr. Brewer and Mr. Kirk, and I provided evidence where

15 the money was.  It's in a Wells Fargo account.  The

16 money has not been moved since that date.  And then as

17 recently as yesterday, May 17th, I provided Mr. Brewer

18 and Mr. Willey an updated copy and a letter from Wells

19 Fargo Bank confirming that the funds are still there.

20 So it was our position -- remains our position that this

21 is really unnecessary.

22          Now, I know that WestStar, Fidelity are

23 taking the position that, number one, they really didn't

24 participate in the agreed temporary injunction and the

25 agreed TRO.  My position on that would be, without

1 disclosing communications I had with other lawyers, I

2 did have conversations with -- with WestStar about this.

3 They knew what was going on. And Fidelity has always

4 known what's going on. And the reason that I have

5 Mr. Parsa here is that he would testify that Fidelity

6 has actually made a demand on him prior to the lawsuit

7 even being filed by Mr. Flores, in which WestStar and

8 Fidelity then intervened, that there's an issue about

9 these funds.

10 But the point is, the money hasn't gone

11 anywhere, and the money is not going to go anywhere.

12 And if I'm permitted to call Mr. Parsa to the stand, he

13 will testify that this closing occurred in July of 2020.

14 Mr. Flores' lawsuit wasn't filed until October 2020.

15 The TRO and the injunction were not entered until

16 January of 2021. And at no point during those

17 six months did he do anything wrong with the money. He

18 didn't transfer it. He didn't hide it. He didn't

19 launder it. He didn't send it overseas. He didn't

20 abscond with it to Las Vegas or Rio de Janeiro. The

21 money's always been safe. And since --

22 THE COURT: Let me just interrupt you for a

23 second. I have a vague recollection -- wasn't the money

24 in Mexico for a while?

25 MR. MIRANDA: I -- I can call Mr. Parsa and

1 ask him that.  I don't believe, and I've never seen any

2 document where --

3          THE COURT:  Okay.  Maybe I'm wrong about

4 that.  Maybe there was a fear that it would be moved to

5 Mexico.

6          MR. MIRANDA:  Yes, there was.  And, yes,

7 that's in Mr. Kirk's pleadings that the money may have

8 gone to Mexico, but it -- it never left the country.

9 Money doesn't have a visa, so it's been here in the U.S.

10 the whole time.  So that being said, we really believe

11 that this motion was unnecessary.

12          I mean -- and, yes, we had a mediation.  I

13 don't -- to be honest, I don't recall opposing to it.

14 We willingly went to the mediation.  It got continued

15 because Mr. Parsa --

16          THE COURT:  Mr. Roman had -- had an

17 objection and I overruled the objection.

18          MR. MIRANDA:  Oh, yeah.  Yeah, but that

19 didn't come from Mr. Parsa.  We did continue it for a

20 month because of his quarantine for COVID.  But we've

21 always tried to do things in good faith, and since I've

22 been involved in the case, I've gone above and beyond to

23 do things in good faith and remain in communication with

24 opposing counsel.

25          So when we were hit with this motion, we

1 were surprised, but we understand.  I might have done

2 the same thing if I was on the other side.  And when we

3 were hit with the order, we were blindsided, but, you

4 know, we know where that came from, too.

5          So that being said, our position hasn't

6 changed.  This isn't really unnecessary [sic], and I can

7 call Mr. Parsa to the stand.  And I would be happy to

8 cover these points with him and provide direct testimony

9 as to the fact that the money hasn't gone anywhere and

10 the terms of the temporary injunction have been

11 respected since the moment it was entered by this Court.

12          THE COURT:  Let me -- before you call any

13 witnesses, let me just get a brief statement from all of

14 the other counsel as to what their position is.

15          Mr. Kirk, what is your position with regard

16 to Mr. Miranda's motion?

17          MR. KIRK:  Well, I've read the letter which

18 Mr. Miranda --

19          THE COURT:  Can you speak a little bit

20 louder?

21          MR. KIRK:  Yes, Your Honor.  I've read the

22 letter which Mr. Miranda circulated showing that -- that

23 there's a balance of over $700,000 in Wells Fargo Bank.

24 That does not satisfy me.  It worries me, because we had

25 two accounts.  And I think the total in them was one

```
 1  million three.  So what has happened to the other
 2  600,000?
 3              Also, why is there activity?  Why are they
 4  funds -- are there funds moving in and out of this
 5  account, which is what Mr. Miranda's correspondence
 6  shows?
 7              MR. PARSA:  Can I answer this --
 8              THE COURT:  I understand you've got some
 9  concerns.  Okay.
10              MR. PARSA:  Can I answer these questions,
11  Your Honor?
12              MR. MIRANDA:  Mr. Parsa, hold on --
13              THE COURT:  Okay.  Mr. Brewer, what is your
14  position?
15              MR. BREWER:  Jim Brewer on behalf of
16  WestStar Title, L.L.C.  As the Court remembers, this
17  has -- this lawsuit has to do with a closing on a sale
18  of some real estate -- commercial real estate.  We are
19  contending that we think by fraud, possibly by mistake,
20  Montoya Park Place, the seller, was overpaid to the tune
21  of over $700,000.  And -- and there was not a lien
22  release that should have been in that closing.
23              The -- the moving to Mexico discussion,
24  that comes from an affidavit -- not just pleadings but
25  an affidavit of Mr. Flores, and it's attached to his
```

1  petition in this case.  The affidavit says, quote --

2  this is Mr. Flores testifying.  He told me after

3  WestStar Title Company demanded return of the money to

4  satisfy the lien, that he had moved the money out of

5  Western Heritage Bank and into Mexico.  So that's --

6  that's where this concern started.

7              I see Mr. Parsa is here.  He may have a

8  different position, but I would argue that the Court

9  does have inherent authority to order deposit of funds

10  into the registry of the Court and that's what we're

11  requesting.

12              THE COURT:  Okay.  Okay.  Mr. Willey.

13              MR. WILLEY:  Yes, Your Honor, for Fidelity

14  National Title Insurance Company.  I mean, it is our

15  stance that, Your Honor, there's -- we obviously wanted

16  to preserve our -- our right to demand deposit in the

17  registry.  And, obviously, the -- the order hasn't been

18  followed to date, even though it's been granted and

19  entered.  And we just don't want a waiver of our right

20  to demand deposit into the registry of the Court.

21              Also, as -- I'm sorry -- Mr. Miranda

22  pointed out that, you know, we're -- we weren't a party

23  to the temporary injunction.  We were able -- we were

24  not able to, you know, offer our terms in regards to

25  the -- the terms of the actual TRO itself.

1        The argument that Mr. Parsa, you know,

2   hasn't violated or -- or breached is -- is not really a

3   grounds for vacating said order.  There's -- there's no

4   real grounds to show that the Court erred in its

5   decision.  There's no real irregularity.  There's no

6   conduct administered by Mr. Brewer or client -- or my

7   client in this matter.  He hasn't shown that they're

8   actually going to be prejudiced by this.

9        And, also, you know, it's important to

10  point out that the temporary injunction that was filed

11  also agreed -- or there was terms in there that

12  indicated that this temporary injunction was going to be

13  filed without prejudice to any separate requests for

14  injunctive relief by WestStar Title itself.  So, I mean,

15  I understand the mistake that was made with the joint

16  vice [sic] and agreed order, but it still doesn't --

17  doesn't take away from the order that's been rendered by

18  the Court.

19       And, you know, obviously to date nothing

20  has been followed in regards to Mr. Parsa in that

21  regards either, because he's supposed to register within

22  10 days of the order being executed and entered.

23       Moreover, Mr. Kirk actually did point a

24  good fact in regards to the money actually being moved

25  back and forth.  You know, that's obviously a concern of

1   STATE OF TEXAS        )

2   COUNTY OF EL PASO    )

3

4      I, Maria I. Stallings, Official Court Reporter in

5   and for the 327th District Court of El Paso County,

6   State of Texas, do hereby certify that the above and

7   foregoing contains a true and correct transcription of

8   all portions of evidence and other proceedings requested

9   in writing by counsel for the parties to be included in

10   this volume of the Reporter's Record, in the

11   above-styled and numbered cause, all of which occurred

12   in open court or in chambers and were reported by me.

13      I further certify that this Reporter's Record of

14   the proceedings truly and correctly reflects the

15   exhibits, if any, offered by the respective parties.

16      I further certify that the total cost for the

17   preparation of this Reporter's Record is $70.00 and was

18   paid by Mr. James Brewer, Esq.

19      WITNESS MY OFFICIAL HAND this the  2 nd day of

20   June, 2021.

21

22                 /s/ Maria I. Stallings
                   MARIA I. STALLINGS, Texas CSR# 8229

23                    Official Court Reporter
                   327th District Court

24                    500 E. San Antonio, Rm. 606
                   El Paso, TX 79901

25                    (915) 546-2032
                   Expires May 31, 2023