**EXHIBIT "17"**

| | |
|---|---|
| 1 | REPORTER'S RECORD  COPY |
| 2 | TRIAL COURT CAUSE NO. 2020DCV2997 |
| 3 | VOLUME 1 OF 1 VOLUMES |

```
 4  ALBERTO FLORES,                    )
        Plaintiff,                     )
 5  vs.                                )
    KEYVAN PARSA, M.D. and             )
 6  MONTOYA PARK PLACE, INC.,          )
        Defendants,                    )  IN THE DISTRICT COURT
 7                                     )
    vs.                                )  OF EL PASO COUNTY, TEXAS
 8                                     )
    WESTSTAR TITLE, L.L.C.,            )  327TH JUDICIAL DISTRICT
 9  Intervenor/Third-Party             )
    Plaintiff,                         )
10                                     )
    Fidelity National Title            )
11  Insurance, CO.                     )

12

13              ***********************************

14                          MOTIONS HEARING

15              ***********************************

16          The 8th day of June, 2021, the following

17  proceedings came on to be heard in the above-entitled

18  and numbered cause before the Honorable THOMAS A.

19  SPIECZNY Judge Presiding, via Zoom in accordance with

20  the Supreme Court of Texas' Emergency Order Regarding

21  the COVID-19 State of Disaster, held in El Paso, El Paso

22  County, Texas:

23          Proceedings reported by machine shorthand

24  utilizing computer-assisted realtime transcription.

25
```

MARIA I. STALLINGS; OFFICIAL COURT REPORTER; 327TH DISTRICT COURT
500 E. SAN ANTONIO, RM. 606, EL PASO, TX 79901 (915) 546-2032

```
 1  witness.
 2              Doctor, would you raise your right hand,
 3  please?
 4                    KEYVAN PARSA,
 5  having been first duly sworn by the Court, testified as
 6  follows:
 7                   DIRECT EXAMINATION
 8  BY MR. BROWN:
 9      Q.   Dr. Parsa, can you please state your full name?
10      A.   Keyvan Parsa.
11      Q.   Doctor, you remember when you were here back on
12  May 18th of this year and you testified on -- on the
13  original motion that the defendants, Fidelity and
14  WestStar, had filed for interpleader.  Do you remember
15  that?
16      A.   Yes.
17      Q.   And at that time I believe that you testified
18  that the monies at issue, the $700,000 and the $338,000,
19  remained on deposit at Wells Fargo; is that correct?
20      A.   Yes.
21      Q.   As of today, July 8th, 2021, do those monies
22  still remain on deposit in those same accounts?
23      A.   Yes, sir.
24      Q.   When were the monies originally deposited into
25  those accounts?
```

1    A.    July 2020.

2    Q.    And --

3    A.    July -- July 20th, 2020.

4    Q.    Now, after that but before the lawsuit, were
5 the monies used as collateral for a credit line?

6    A.    Yes.

7    Q.    When did that take place after July 20th of
8 2020?

9    A.    August 2020.

10   Q.    And that was in the name of what account
11 holder?

12   A.    Westmount Group.

13         THE COURT: Can you speak a little louder,
14 please?

15         THE WITNESS: Yes.

16         Westmount Group.

17   Q.    (BY MR. BROWN) And is the correct name of that
18 entity Westmount Group, Inc.?

19   A.    Yes.

20   Q.    How are you affiliated with that entity?

21   A.    I'm the president.

22   Q.    All right. There's an Exhibit B that was
23 attached to the joint motion for interpleader. You've
24 had an opportunity to review that in preparation for
25 today?

1     A.   Yes.

2     Q.   There were a couple letters that were attached
3 that identified accounts in the name of Westmount Group,
4 Inc., which back in January of 2021 had the respective
5 sums of 700,000 and -- and 338,000 in them; is that
6 correct?

7     A.   That is correct.

8     Q.   Now, are those the same accounts and the same
9 funds that were deposited back in July of -- of '20?

10     A.   Identical, yes.

11     Q.   And so, to my understanding, a temporary
12 injunction was issued and entered into in this case in
13 the latter part of January of 2021; is that correct?

14     A.   Yes.

15     Q.   So since that date has there been any change in
16 where these monies are deposited and in -- in what name?

17     A.   No.

18     Q.   If -- if the monies were to be removed at this
19 point, are there any consequences that would flow --
20 monetary consequences that would flow from doing that?

21     A.   Yes.

22     Q.   What are those?

23     A.   At least the 4.5 penalty plus other fees, and,
24 also, there are tax -- tax consequences, and most
25 importantly, it's pledged to the loan, so it virtually

1  is illegal for me to take the funds and send it to the
2  registry of the Court.
3      Q.   Now, you said 4.5 penalty.  Is it a
4  4.5 percent --
5      A.   Percent penalty.  Yes.
6      Q.   Calculated on the sum of $1,038,000?
7      A.   At least, yes.
8      Q.   And you said there were other penalties or fees
9  that would be incurred?
10     A.   Yes.
11     Q.   And would the -- you said it was -- it would be
12 illegal to -- since the monies have been pledged as
13 collateral, to -- to remove the funds from the accounts.
14 Are you saying that in your -- to your understanding
15 that would be a breach of the contract where -- whereby
16 the funds were -- the monies were pledged?
17     A.   Yes, that is correct.
18          MS. KELLEY:  Objection, legal conclusion.
19          THE COURT:  I'll -- I'll overrule it.
20          You may continue.
21          MR. BROWN:  I'll pass the witness,
22 Your Honor.
23          THE COURT:  Okay.  Let's keep the same
24 order.
25          Mr. Kirk, do you want to question this

```
 1  witness?
 2              MR. KIRK:  Yes, Your Honor.  Thank you.
 3                    CROSS-EXAMINATION
 4  BY MR. KIRK:
 5     Q.   Dr. Parsa, why did you not tell Albert Flores
 6  about the deposits into the Wells Fargo accounts?
 7              THE WITNESS:  Do I need to answer the
 8  question?
 9              MR. BROWN:  You need to.
10              THE WITNESS:  I'm sorry?
11              MR. BROWN:  You need to answer that.
12              THE WITNESS:  Would you -- would you repeat
13  one more time your question, sir?
14     Q.   (BY MR. KIRK)  Yes.  Why did you not tell
15  Albert Flores about the deposits into the Wells Fargo
16  accounts?
17              MR. BROWN:  Judge, I would object that that
18  assumes facts not in evidence at this point, as
19  Mr. Flores has never testified in this hearing.
20              THE COURT:  I'll overrule the objection.
21              You can go ahead and answer.
22              THE WITNESS:  I should answer?
23              MR. BROWN:  Yes.
24              THE COURT:  Yes.
25              THE WITNESS:  Well, you know, if you look
```

```
 1  STATE OF TEXAS            )
 2  COUNTY OF EL PASO         )
 3
 4       I, Maria I. Stallings, Official Court Reporter in
 5  and for the 327th District Court of El Paso County,
 6  State of Texas, do hereby certify that the above and
 7  foregoing contains a true and correct transcription of
 8  all portions of evidence and other proceedings requested
 9  in writing by counsel for the parties to be included in
10  this volume of the Reporter's Record, in the
11  above-styled and numbered cause, all of which occurred
12  in open court or in chambers and were reported by me.
13       I further certify that this Reporter's Record of
14  the proceedings truly and correctly reflects the
15  exhibits, if any, offered by the respective parties.
16       I further certify that the total cost for the
17  preparation of this Reporter's Record is $97.00 and was
18  paid by Mr. James Brewer, Esq.
19       WITNESS MY OFFICIAL HAND this the  15 th day of
20  July, 2021.
21
22                        /s/ Maria I. Stallings
                          MARIA I. STALLINGS, Texas CSR# 8229
23                        Official Court Reporter
                          327th District Court
24                        500 E. San Antonio, Rm. 606
                          El Paso, TX 79901
25                        (915) 546-2032
                          Expires May 31, 2023
```