IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | |
| WESTMOUNT GROUP, INC. | § | No. 21-30633-HCM-11 |
| | § | |
| | § | |
| Debtor. | § | |

**FIRST AMENDED MOTION TO DISMISS
CHAPTER 11 CASE AS A BAD FAITH FILING**

TO THE HONORABLE H. CHRISTOPHER MOTT, BANKRUPTCY JUDGE:

Now comes the creditor ALBERT FLORES (hereinafter "FLORES") and through his attorney E.P. BUD KIRK files this First Amended Motion to Dismiss this Chapter 11 Case as a Bad Faith Filing, and for cause would show:

1.

The Debtor WESTMOUNT GROUP, INC. filed for Chapter 11 relief on August 23, 2021. Jurisdiction arises under 28 U.S.C. § 1334.

2.

At the time of filing, WESTMOUNT GROUP, INC.'s and its principal officer KEYVAN PARSA was under an order from the 327th District Court for El Paso, County, Texas, to deposit $750,000 into the registry of that Court. The Plaintiff FLORES and the Intervenors WESTSTAR TITLE COMPANY and FIDELITY NATIONAL TITLE INSURANCE COMPANY were contending in the 327th District Court action that those funds (and another $283,000) had been misappropriated, as more specifically described below. A copy of the Order to deposit the funds is hereto attached as Exhibit "1."

1

3.

WESMOUNT GROUP, INC.'s principal officer is KEYVAN PARSA, and KEYVAN PARSA signed the bankruptcy petition for WESTMOUNT GROUP INC. KEYVAN PARSA and WESTMOUNT GROUP, INC. had been repeatedly contesting the order to deposit the $750,000 for several months. Some background is necessary for an understanding of why the deposit into the registry was ordered. Most of the background facts recited below are supported by an Affidavit from FLORES that is included in his Third Amended Petition in the 327th District Court suit. That Petition with all its attachments is Exhibit "2" hereto attached. The FLORES Affidavit is Exhibit "M" within the Petition. Subsequent references to FLORES' Affidavit will be identifying it as Exhibit "2-M." Other Exhibits in support of the averments of this Motion to Dismiss are hereto attached and discussed herein.

4.

PARSA and FLORES participated on the seller's side in a real estate closing at WESTSTAR TITLE CO. in El Paso, Texas on June 30, 2020 (PARSA) and July 1, 2020 (FLORES). The selling entity was named MONTOYA PARK PLACE, INC. Separate closings were necessary because no organizational meeting had ever been held, no officers had been elected, and no stock had ever been issued, for MONTOYA PARK PLACE, INC. FLORES' capital contribution to MONTOYA PARK PLACE, INC. was title to Tract 3, JOHANNSEN SUBDIVISION (hereinafter referred to as "Tract 3"). FLORES got that title by foreclosing a second-lien real estate note with a balance of $558,000 against Tract 3 on February 4, 2020. PARSA never made any capital contribution to MONTOYA PARK PLACE, INC. but had orally promised to pay in funds in the future for further improvements to Tract 3. PARSA never put up any. PARSA and FLORES were both named as Initial Directors on the February 5, 2020 Certificate of Incorporation obtained by PARSA for MONTOYA PARK PLACE, INC., hereto attached as Exhibit "3," and PARSA and FLORES signed the closing papers at WESTSTAR TITLE CO. separately as "Shareholder/Directors." *See* Exhibit "4" hereto. The facts averred in this Paragraph 4 are supported by FLORES' Affidavit, Exhibit "2-M" hereto attached, pages 2-3.

2

5.

The sale being closed was of Tract 3, JOHANNSEN SUBDIVISION, for $1,950,000.00 to IDEA PUBLIC SCHOOLS, LLC. The proceeds to MONTOYA PARK PLACE, INC. should have been approximately $1,109,000. Instead the proceeds to MONTOYA PARK PLACE, INC. were $1,829,295.40. (*See* the closing statement hereto attached as Exhibit "5"). The windfall to MONTOYA PARK PLACE, INC. is explained by the fact that WESTSTAR TITLE CO. missed an outstanding first lien held on Tract 3 by RIGHT IMMIX CAPITAL, LLC that then had a balance of about $720,000.00. *See* the promissory note, deed of trust, and personal guaranty by KEYVAN PARSA for the RIGHT IMMIX CAPITAL, LLC loan on Tract 3, hereto attached as Exhibits "6," "7," and "8."

6.

Both PARSA and FLORES were aware of the balance owed on Tract 3 to RIGHT IMMIX CAPITAL, LLC. The Loan from RIGHT IMMIX, LLC dated back to June 29, 2019. PARSA and DEBORAH JORDAN had personally guaranteed the RIGHT IMMIX note, as co-shareholders in the principal note obligor, JOHANNSEN DEVELOPMENT GROUP, INC. FLORES had subordinated his lien on Tract 3 to the RIGHT IMMIX lien on that same day. PARSA and FLORES had agreed in October of 2019 to share 50-50 in keeping up the monthly payments to RIGHT IMMIX CAPITAL, LLC. (PARSA did not ever pay his half.) FLORES never assumed the note; he paid on it so that RIGHT IMMIX CAPITAL, LLC would not foreclose on Tract 3. *See* FLORES' Affidavit, Exhibit "2-M" hereto attached, at its pages 2-3.

7.

PARSA directed the closing proceeds of Tract 3 to be wired by WESTSTAR to an account he had opened in the name of MONTOYA PARK PLACE, INC. at WESTERN HERITAGE BANK in El Paso. FLORES was never presented the deposit contract to sign for the account, and was never given any checks on the account. *See* FLORES' Affidavit, Exhibit "2-M" hereto, at its pages 3-4.

8.

FLORES' part in the second day of the closing, on the morning of July 1, took about 15 minutes. He was not given enough time to read thoroughly everything he put his signature to, and he assumed PARSA, who had closed his part in the transaction the afternoon before, had read everything carefully. FLORES did notice the larger-than-expected closing statement amount to MONTOYA PARK PLACE, but FLORES did not want to disrupt the closing, and he decided to discuss the matter with PARSA before taking any action.

9.

They met the next day, July 2, 2020. By this time FLORES had "done the math" and figured out that MONTOYA PARK PLACE, INC. had been overpaid by the amount still owing to RIGHT IMMIX CAPITAL, LLC. He told PARSA they should return the money to pay off RIGHT IMMIX, to the title company.

10.

PARSA would not heed FLORES' directions, and PARSA controlled the WESTERN HERITAGE bank account. PARSA said ten thousand dollars had come out of the sale price on seller's side, to pay for the title insurance, and the title company would have to pay for its mistake, to protect MONTOYA PARK PLACE, INC. as purchaser of the policy. PARSA also said he deserved to keep the money, because he had lost so much to his co-venturer DEBORAH JORDAN in investing in the development of Tract 3. *See*, as to the averments of these paragraphs 8-10, FLORES' Affidavit, Exhibit "2-M" hereto attached, at its pages 3-4.

11.

FLORES then told PARSA that he wanted no part of keeping the money that should have paid off RIGHT IMMIX CAPITAL, LLC, that PARSA would be on his own if he tried to keep what was due to RIGHT IMMIX, and that he (FLORES) just wanted his share of the correct amount that was due to the seller, plus reimbursement for 50% of the monthly payments he had made to RIGHT IMMIX, and PARSA could go his own way with MONTOYA PARK PLACE, INC. *See* FLORES' affidavit, Exhibit "2-M" hereto attached, at its pages 3-4.

4

12.

PARSA then asked FLORES, "How much do you need to have right away?" FLORES made some calculations on a note pad, concerning real estate loans he needed to pay, and came up with a total of $280,000. FLORES asked when PARSA would pay him the rest of his share, and PARSA said, "Don't worry, just give me a little time." *See* FLORES' affidavit, Exhibit "2-M" hereto attached, at its page 4.

13.

The following Monday, July 6, 2020, PARSA had a cashier's check ready for FLORES, drawn on WESTERN HERITAGE BANK for $280,000.00. FLORES, despite further assurances from PARSA whenever FLORES asked, that FLORES would get the rest of his share, has not received any more money. And FLORES has continued to urge PARSA to restore the RIGHT IMMIX loan balance to WESTSTAR TITLE, to no avail. *See* FLORES' affidavit, Exhibit "2-M" hereto attached, at its pages 4-5.

14.

FLORES made one of his numerous requests to PARSA, to restore to WESTSTAR TITLE the $720,000 still owed to RIGHT IMMIX CAPITAL, around July 20, 2020. PARSA then told him that he had withdrawn all the money that had been in the WESTERN HERITAGE BANK account and moved it into Mexico. PARSA would not say where, only that it would take him "a little time" to get it out. *See* FLORES' affidavit, Exhibit "2-M" hereto attached, at its pages 4-5.

15.

FLORES' Affidavit goes on to say that he brought suit against PARSA and MONTOYA PARK PLACE, INC. in the 327th Judicial District Court for El Paso, County, Texas on September 16, 2020, in Cause No. 2020DCV2997. FLORES asked for a receiver to be appointed over MONTOYA PARK PLACE, INC. and for recovery of all the moneys owed to WESTSTAR TITLE and to himself, under theories of unjust enrichment, real estate fraud, stock fraud, common-law fraud, and deadlock between directors under Tex. Bus. Corps. Act art. 7.05.

*See* FLORES' Third Amended Petition in the 327th District Court, hereto attached as Exhibit "2," and FLORES' Affidavit, Exhibit "M" therein, at its pages 1-5.

16.

A few days after PARSA delivered to FLORES the $280,000 cashier's check on WESTERN HERITAGE BANK, PARSA summoned FLORES to come to his weight-loss clinic, and presented to FLORES a self-drawn "Stock Purchase Agreement" under which FLORES was said to transfer his stock in MONTOYA PARK PLACE, INC. to PARSA in exchange for a $50 check on PARSA's personal bank account. PARSA back-dated the check and the Stock Purchase Agreement to July 1, 2020. (That is an impossible date for several reasons. The closing was not completed yet on July 1st. FLORES did not tell PARSA he wanted no part of keeping the $720,000 that should have been paid to RIGHT IMMIX, until July 2, 2020. And the $280,000 cashier's check for the interim payment to FLORES, mentioned on the last page of the "Stock Purchase Agreement," was not cut until July 6, 2020. The "Stock Purchase Agreement" also reads on its face that the total consideration for the Stock Purchase is $50.00. *See* FLORES' Third Amended Petition, hereto attached as Exhibit "2," and its Exhibits "F" and "M."

17.

At intervals (about once every ten days) throughout the rest of the Summer of 2020, PARSA continued to represent to FLORES that FLORES would receive the rest of his share of the closing proceeds. *See* FLORES' Affidavit, Exhibit "2-M" hereto attached, at its pages 4-5. On or about September 15, 2020, PARSA drafted another document for FLORES to sign, which is attached to FLORES' Third Amended Petition (Exhibit "2" hereto) at its Exhibit "G." The document reads that FLORES makes no claim to the portion of the Tract 3 closing proceeds that RIGHT IMMIX CAPITAL, LLC is trying to recover. It was undated at the time FLORES signed it and asked for a copy, which PARSA promised to send him. When FLORES eventually got his copy, in October, 2020, it came with two surprises:

    a) The copy came from the attorney PARSA hired to defend him, and it was backdated to July 1, 2020; and

6

b) The attorney maintained that in signing the "Stock Purchase Agreement,"
FLORES was also transferring his interest in the closing proceeds.

*See* FLORES' Affidavit, Exhibit "2-M" hereto, at its pages 4-5. The back-dating to July 1 of the
September disclaimer of interest in the funds that should have paid off RIGHT IMMIX, is easily
proved: no demands for the windfall funds had occurred by RIGHT IMMIX until mid-July. *See*
FLORES' Amended Petition, Exhibit "2" hereto attached, Exhibits "H" and "I" thereto.


18.

FLORES thereupon amended his state court petition to add claims for rescission of the
"Stock Purchase Agreement" due to its shockingly low consideration ($50 for $292,500), for
fraud in a stock transaction, and for unjust enrichment in the stock purchase transaction. These
amendments are still present in FLORES Third Amended Petition, Exhibit "2" hereto attached.


19.

PARSA has now hired three attorneys in the State Court case and fired two of them. The
first one to be hired and fired was Jeff Rago. Mr. Rago ordinarily practices criminal law and was
retained because WESTSTAR TITLE COMPANY and its underwriter FIDELITY NATIONAL
TITLE INSURANCE CO., up until the time they intervened in the 327th District Court action,
were trying to get a criminal prosecution of PARSA. Citing conflicts of interest with PARSA
after FLORES amended his Petition, RAGO withdrew. *See* Exhibit "9" hereto attached.
PARSA then hired CARLOS MIRANDA. Mr. MIRANDA responded to FLORES' Motion for
temporary injunctive relief that PARSA would stop concealing the whereabouts of the closing
proceeds and not alienate any of the remaining Tract 3 closing proceeds, by agreeing to a
Temporary Restraining Order and a Temporary Injunction under which PARSA and
MONTOYA PARK PLACE, INC. were ordered to reveal the funds' location and refrain from
any transferring or alienating of the remaining proceeds of the sale of Tract 3. Copies of the
Temporary Restraining Order and the Agreed Temporary Injunction are hereto attached as
Exhibits "10" and "11." Mr. MIRANDA represented to the Court at the hearings on the

Temporary Restraining Order and the Temporary Injunction, that no closing proceeds had been transferred into Mexico, and that "at least" $700,000 representing the proceeds allegedly owed for the RIGHT IMMIX lien payoff, and $338,000 claimed by FLORES as still due to him from the closing, were safe in PARSA controlled by PARSA at WELLS FARGO BANK. These representations from Mr. MIRANDA persisted through and including another hearing in the 327th District Court on May 18, 2021. *See* the Transcript hereto appended as Exhibit "12," at its pages 8-14.

20.

FIDELITY NATIONAL TITLE INSURANCE and WESTSTAR TITLE intervened in the 327th District Court action just after Christmas of 2020. Their pleadings echoed FLORES', as to the remedies against PARSA for unjust enrichment, real estate fraud, breach of warranty of good title, and subrogation to the rights of RIGHT IMMIX on PARSA's personal guaranty.

21.

Prior to its plea in Intervention in the case against PARSA, FIDELITY NATIONAL TITLE CO. paid off the claim of RIGHT IMMIX CAPITAL, LLC against Tract 3, accepted from RIGHT IMMIX CAPITAL, LLC a transfer of the note and the personal guaranty signed by PARSA, and included in its claim against PARSA for unjust enrichment and fraud, claims for subrogation to the rights of RIGHT IMMIX CAPITAL on PARSA's personal guaranty. *See* FIDELITY NATIONAL's First Amended Petition in Intervention, hereto attached as Exhibit "13," without attachments for sake of their bulk. WESTSTAR TITLE COMPANY'S other claims in Intervention against PARSA, have been and still are for fraud in a real estate transaction, because of the false affidavit that there were no outstanding liens, for breach of the warranty of clear title in the warranty deed, and for unjust enrichment. FLORES and WESTSTAR and FIDELITY all now allege that WESTMOUNT GROUP, INC. is PARSA's and MONTOYA PARK PLACE, INC.'s fraudulent transferee under Tex. Bus. & Comm. Code §§ 24.005 and 24.006. WESTSTAR's Amended Petition in Intervention is hereto appended (without Exhibits) as Exhibit "14."

8

22.

Uneasy that the Temporary Injunction would adequately protect them, FIDELITY and WESTSTAR asked in April 2021 that the account funds that were the subject of the Temporary Injunction, be pled into the registry of the 327th District Court. The Honorable Thomas Spieczny, who has presided throughout the case, granted that Order, and PARSA asked for it to be vacated. The multiple Motions to Vacate that followed, and PARSA's testimony in support of them, revealed the following truths about the funds in WELLS FARGO BANK that were subject to the injunction:

a) PARSA had used two letters from WELLS FARGO BANK, stating that he had "at least" $700,000 on deposit in one account, and "at least" $338,000 in another account, as evidence that he has those funds on deposit. *See* Exhibits "15" and "16" hereto attached.

b) The accounts holding the funds were not in PARSA's name but in the name of WESTMOUNT GROUP, INC., an entity PARSA said he wholly owned and controlled;

c) PARSA told the 327th District Court that the funds had come from MONTOYA PARK PLACE, INC.'s account at WESTERN HERITAGE BANK, on July 20, 2020;

d) PARSA and his attorney CARLOS MIRANDA told the 327th District Court that the funds had never been placed into Mexico, as FLORES said he had been told;

e) PARSA and his new attorney TROY BROWN next told the 327th District Court that the funds had been placed into money-market accounts that entailed penalties for early withdrawal if the funds had to be pleaded into the registry;

f)  PARSA and his new attorney TROY BROWN told the 327th District Court that WESTMOUNT GROUP, INC. had pledged the funds to secure three loans from WELLS FARGO BANK totaling at least $165,000;

g)  PARSA, MIRANDA, and TROY C. BROWN never mentioned any consideration paid by WESTMOUNT GROUP, INC. for the "at least" $1,038,000 in WELLS FARGO money market certificates.

h)  The amended pleadings by FLORES, WESTSTAR, and FIDELITY joining WESTMOUNT GROUP, INC. all alleged that as of July 20, 2020 when "at least" $1,038,000 of the closing proceeds was transferred to WESTMOUNT GROUP, INC., there had been debt facing PARSA and MONTOYA PARK PLACE, INC. Demands upon PARSA and MONTOYA PARK PLACE, INC. to return the money that should have paid off RIGHT IMMIX CAPITAL, LLC had been made as early as July 17, 2020. And FLORES had been imploring PARSA to return the $720,000 since July 2, 2020. *See* FLORES' Affidavit, Exhibit "2-M" hereto attached, at its pages 3-5.

*See* the transcripts of the May 18th and June 8th and July 14th hearings, Exhibits "12" and "17" and "18" hereto attached, at their respective pages 8-14, at pages 20-22, and at pages 6-11.

23.

As the foregoing discoveries unfolded, PARSA terminated the services of attorney CARLOS MIRANDA. The termination came after MIRANDA would not reveal to the 327th District Court, after PARSA asked for a recess, the first things that PARSA's next attorney TROY C. BROWN, did reveal at the next Motion to Vacate hearing: the early withdrawal penalties at WELLS FARGO and the pledges of the money market certificates for loans from WELLS FARGO. See the transcript at Exhibit "17" hereto, pages 20-22. BROWN filed another Motion to Vacate, the centerpieces of which were the early withdrawal penalties and the

encumbrances which PARSA and WESTMOUNT GROUP, INC. had agreed to place upon the funds.

24.

False as PARSA's story to FLORES may have been, that the remaining closing proceeds had been placed "into Mexico" (*see* paragraph 14, *supra.*), the timing of the story coincided with the purchase of the WELLS FARGO money market certificates, and the story served the fraudulent purpose of concealing the funds' whereabouts from FLORES, who was still insisting on returning the funds to pay off the RIGHT IMMIX lien, and asking for rest of his share of the proceeds. *See* FLORES Amended Petition, Exhibit "2" hereto, at its Exhibit "M," pages 4-5.

25.

After a denial of PARSA's second Motion to Vacate, PARSA hired an attorney for WESTMOUNT GROUP, INC., STEVEN SATHER of Austin, Texas. Mr. SATHER filed in the 327th District Court for WESTMOUNT GROUP, INC. a Plea in Intervention hereto attached as Exhibit "19," and yet another Motion to Vacate the Order to Deposit, hereto attached as Exhibit "19-A." TROY C. BROWN meanwhile filed a Petition on behalf of PARSA and MONTOYA PARK PLACE, INC. for Mandamus in the Eighth Judicial District Court of Appeals, to get a mandate that the deposit orders be vacated. Mr. SATHER's Motion to Vacate revealed, contrary to PARSA's prior representations on the record that he was in complete control of the money market certificates of WESTMOUNT GROUP, INC., the existence of other shareholders, and other creditors of WESTMOUNT GROUP, INC., and warned that compliance with the order to deposit would drive WESTMOUNT GROUP, INC. "out of business." *See* Exhibit "19-A" hereto attached. And Mr. SATHER's Plea in Intervention attached copies of the WELLS FARGO BANK records evidencing the money market certificates. *See* Exhibit "19" hereto attached.

26.

The Court of Appeals denied the Petition for Mandamus. *See* Exhibit "20" hereto attached. There next came on in the state court a Motion for Sanctions against PARSA filed by FIDELITY on account of PARSA's and MONTOYA PARK PLACE, INC.'s refusals to deposit

11

the funds into the registry, and a Motion to Compel responses to Discovery against PARSA, filed by WESTSTAR. Those were both set for hearing on August 24, 2021. The time to deposit the funds into the registry had expired on May 5, 2021. *See* Exhibit "1" hereto attached.

27.

On the afternoon of August 23, 2021, Mr. SATHER filed an Emergency Subchapter V Petition in this Bankruptcy Court for WESTMOUNT GROUP, INC. The obvious, eleventh-hour purpose, was to stop the proceedings in the 327th District Court from advancing.

28.

FLORES also incorporates herein the remainder of the factual averments, and the documents supporting them, that are contained within and/or are attachments to his Third Amended Petition in the 327th District Court, Exhibit "2" hereto attached.

29.

No Schedules were timely filed within 14 days in this emergency Chapter 11 case. And no extension was requested, for more time to file them.

30.

On September 13, 2021, WESTMOUNT GROUP, INC. filed its § 1116 Statement, docket #12 in this Subchapter V case, revealing that the Debtor has filed no federal tax returns and maintained no balance sheets, no statements of operations, and no cash-flow statements.

31.

The Chapter 11 filing is made in bad faith. Mr. PARSA has used WESTMOUNT GROUP, INC. as his fraudulent transferee, and has surreptitiously hired new counsel and filed Motions to thwart the deposit orders of the State court, seeking ways to avoid having to put the fraudulently-obtained funds within the legal reach of the 327th District Court, FLORES, WESTSTAR, and FIDELITY.

32.

If this Subchapter V case is allowed to go forward, PARSA will be indirectly rewarded for his repeated frauds, concealments, and evasions of justice, because the eventual rights of WESTSTAR, FIDELITY, and FLORES to the funds will be diluted to pay other creditors of WESTMOUNT GROUP, INC.--yet another unjust enrichment for the benefit of PARSA.

33.

The bankruptcy filing will no doubt be hailed by the Debtor, PARSA, and MONTOYA PARK PLACE, INC. as an implicit dissolution of the Temporary Injunction, so that consumption of the windfall funds for alleged "reorganization" expenses can commence.

34.

The filing of the Subchapter V case also now places the Automatic Stay between WESTMOUNT GROUP, INC., whom PARSA consistently represented up until July 14, 2021 still had the "at least" $1,038,000.00 of the closing proceeds, and the claims of WESTSTAR, FIDELITY, and FLORES, who have been defrauded and now cannot advance their suit against the party who has the money. The stay and its timing are obviously too convenient, for PARSA and WESTMOUNT GROUP, INC., to have been sought for any other purpose than thwarting the course of the 327th District Court action. And FLORES is barred by local rules and case law from asking for combined relief from stay, in this Motion.

35.

Bankruptcy relief should be available to the honest but unfortunate debtor. *Grogan v. Garner*, 498 U.S. 279, 279, 287, 11 S.Ct. 654, 659, 112 L.Ed. 2d 785 (1991). WESTMOUNT GROUP, INC. is neither. It has repeatedly engaged in acts to deprive the rightful owners of their money, and is bent on retaining its extraordinary and unjust enrichment.

36.

In summary, WESTMOUNT GROUP, INC. has come into possession of "at least" $1,038,000.00 through a series of false representations, concealments, and evasions, made by its

13

principal shareholder and officer KEYVAN PARSA. In no particular order of chronology, but in order of magnitude, these have been:

a) The omission of his personally-guaranteed real estate lien note payable to RIGHT IMMIX CAPITAL, LLC from the affidavit of no outstanding liens at the June 30-July 1, 2020 closing, requested by WESTSTAR TITLE CO.

b) The warranty of clear title in the warranty deed from MONTOYA PARK PLACE, INC. to IDEA PUBLIC SCHOOLS;

c) PARSA's refusal of FLORES' July 2, 2020 insistence that the $720,000 windfall he restored to WESTSTAR TITLE COMPANY, using the pretexts that MONTOYA PARK PLACE, INC. could keep the windfall of approximately $720,000 because the title policy insured its purchaser the seller, and because he had lost so much money to DEBORAH JORDAN in developing Tract 3, JOHANNSEN SUBDIVISION;

d) PARSA's exclusion of FLORES from any power to transfer the closing proceeds out of WESTERN HERITAGE BANK;

e) PARSA's eluding of FLORES' request for his share of the legitimate proceeds, by asking FLORES how much he had to have right away, and telling FLORES he would get the rest "In a little while. Just give me a little time."

f) Drawing up the "Stock Purchase Agreement" for the shockingly low consideration of a $50.00 check from PARSA, on or about July 10, 2020.

g) Throwing off FLORES' persisting requests for the rest of his share of the legitimate sale proceeds, and for repayment of the $720,000 windfall to WESTSTAR TITLE COMPANY, by telling FLORES he had moved all the

closing proceeds out of WESTERN HERITAGE BANK and "into Mexico" at an undisclosed location.

h) Concealing from FLORES, WESTSTAR, and FIDELITY for nearly six months "at least $1,038,000" of the closing proceeds that he placed into money market certificates at WELLS FARGO BANK;

i) Disclosing no promissory note allegedly given by WESTMOUNT GROUP, INC. to MONTOYA PARK PLACE, INC. for the "at least" $1,038,000.00 in money market certificates, until Schedules were filed in this case on September 17, 2021. The note is woefully inadequate consideration for the liquid $1,038,000, and it may have been invented, and back-dated after FLORES, WESTSTAR, and FIDELITY all sued WESTMOUNT GROUP, INC. as fraudulent transferee;

j) Representing and claiming he was a shareholder in MONTOYA PARK PLACE, INC. when he had never made any capital contribution to the corporation, never called an organizational meeting, never issued stock, and never observed any corporate formalities beyond the Certificate of Incorporation he filed by himself in Austin on February 5, 2020.

k) Representing to the 327th District Court, WESTSTAR, FLORES, and FIDELITY NATIONAL in connection with the TRO and Temporary Injunction that he had complete and sole control over the "at least $1,038,000" that was in WELLS FARGO BANK and concealing from them until June and July, 2021 that the funds were subject to heavy early withdrawal penalties and pledged as collateral for three loans to WESTMOUNT GROUP, INC.

l) Backdating to July 1, 2020, and withholding from FLORES any copy of, the disclaimer he drafted for FLORES to sign undated in September, 2020, of any personal interest in the amounts necessary to have paid off RIGHT IMMIX from closing.

m) Falsely representing to FLORES in Fall 2019 that he would pay 50% of the monthly note payments still due to RIGHT IMMIX CAPITAL, LLC as of Fall, 2019.

n) Falsely representing to FLORES that he would contribute development money to MONTOYA PARK PLACE, INC.;

o) Falsely representing now, in his opposition to the title company intervenors' Motion for Severance of the case against WESTMOUNT GROUP, INC., that FLORES willingly sold his entire interest in MONTOYA PARK PLACE, INC. and the closing proceeds, on July 1, 2020, for only $50 paid by PARSA and $280,000 paid by MONTOYA PARK PLACE, INC. *See* Exhibit "21" hereto attached. Among other reasons why the representation is false, are that FLORES' interest in MONTOYA PARK PLACE, INC. was worth far more. FLORES' foreclosure bid on February 4, 2020 was $558,000.00; the pending sale to IDEA PUBLIC SCHOOLS was for $1,950,000; and MONTOYA PARK PLACE, INC.'s rightful share after closing costs, realtor's commission, and the payoff of the RIGHT IMMIX note, was approximately $1,109,000.00. Half of the stock was worth $554,500, and PARSA had never made a capital contribution. FLORES was also due 50% reimbursement from PARSA, of $36,000 in monthly payments to RIGHT IMMIX.

p) Continuing to maintain there has been no unjust enrichment and no participation in fraudulent transfers, on the parts of PARSA, MONTOYA PARK PLACE, INC., and WESTMOUNT GROUP, INC.

q) WESTMOUNT GROUP, INC. cannot claim ignorance of the foregoing facts. Its principal officer PARSA conceived and accomplished all of the foregoing events, and PARSA's knowledge is WESTMOUNT GROUP, INC.'s knowledge.

### THE APPLICABLE LAW ON BAD FAITH CHAPTER 11 FILINGS

37.

The United States Courts of Appeal are in accord, that a factorial approach, rather than a focus upon any single circumstance, is best in deciding when a Chapter 11 filing is made in bad faith and should be dismissed. Common to most of the Circuit Court decisions, however, are the following factors:

a) <u>Whether the debtor is filing to evade a state court order</u>. *See In re Trident Associates Partnership*, 52 F.3d 127 (6th Cir. 1995), *cert. denied* 516 U.S. 869, 116 S. Ct. 188, 133 L. Ed. 2d 125; *In re Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986); *Trident Associates*, 52 F.3d at 131; *In re Kerr*, 908 F.2d 400, 404 (8th Cir. 1990). Here, WESTMOUNT GROUP, INC. is clearly filing to avoid the Order to Deposit the closing windfall into the registry of the 327th District Court, the sanctions hearing wanted by FIDELITY, and the discovery compliance wanted by WESTSTAR.

b) <u>Whether there is a pattern of pre-petition concealment by the debtor</u>. *See, e.g., In re Kerr*, 908 F.2d at 404; *Trident Associates, Ltd.*, 52 F.3d at 131. Here, PARSA's uses of WESTMOUNT GROUP, INC. for purposes of concealment, and WESTMOUNT's knowing acceptance of the fruits of the concealments, are summarized above at paragraph 36.

c) <u>Whether the Debtor has substantial business activity, and employees, and a reasonable prospect of reorganization</u>. *See Little Creek*, 779 F.2d at 1073; *In re Humble Place Joint Venture*, 936 F.2d 814, 818 (5th Cir. 1991); *In re Trident Associates Partnership*, 52 F.3d at 131; *In re First Connecticut Consulting Group*, 254 Fed. Appx. 64 (2d Cir. 2007); *In re Nursery Land Development*, 91 F.3d 1414, 1416 (10th Cir. 1996); *In re Brown*, 951 F.2d 564, 572 (3rd Cir. 1991); *In re Capital Food Corp. of Fields Corner*, 490 F.3d 21 (1st Cir. 2007); *In re Premier Automotive Services, Inc.*, 492 F. 3d 274 (4th Cir. 2007); *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994). *See also In re Oak Grove Village, Ltd.*, 90 B.R.

17

246 (Bankr. W.D. Tex. 1988) (dismissal of Ch. 11 filing depends on findings of merely delaying the inevitable or having good prospect of reorganization; Ayers, B.J.). Here it is apparent from WESTMOUNT GROUP, INC.'s failures to have filed tax returns and to have maintained any cash flow statements, balance sheets, or statements of operation, that there is no sound business to reorganize. The transfer of the closing proceeds from WESTERN HERITAGE BANK into money market certificates for WESTMOUNT GROUP, INC. which collateralize loans from WELLS FARGO BANK strongly indicates that the Debtor is a mere stakeholder for PARSA.

d) <u>Failure to follow Bankruptcy Code requirements</u>. *Oakgrove Village*, 90 B.R. at 251; *Charfoos*, 979 F.2d at 394. Here it is apparent from WESTMOUNT GROUP, INC.'s failure to file Schedules and to ask for more time to file them, that there is not only an indifference to the reorganization process, but also a further instance of concealment.

e) <u>Whether the filing appears to have been made to obtain tactical litigation advantages</u>. *See In re Antelope Technologies, Inc.*, 431 Fed. Appx. 272 (5th Cir. 2011) (purpose of filing was to gain unfair advantage in underlying shareholder derivative suit); *In re 15375 Memorial Corp. v. Bepco, L.P.*, 589 F.3d 605 (3d Cir. 2009) (filing to gain tactical litigation advantage); *In re Humble Place Joint Venture*, 936 F.2d at 818 (sheltering of guarantors, nothing to reorganize); *In re First Connecticut Consulting Group, Inc.*, 254 Fed. Appx. 64 (filing to re-litigate adverse state court judgment); *In re Premier Automatic Services, Inc.*, 492 F.3d 274 (4th Cir. 2007) (improper purpose instead of intention to reorganize). Here the Chapter 11 filing by WESTMOUNT GROUP, INC. has stymied the efforts of FLORES, WESTSTAR, and FIDELITY to recover the unjust enrichment kept by

18

PARSA, MONTOYA PARK PLACE, INC. and their fraudulent\* transferee WESTMOUNT GROUP, INC. *See also*, in this regard of thwarting the unjust enrichment litigation, the response of KEYVAN PARSA in opposition (Exhibit "21" hereto) to the Motions of WESTSTAR and FIDELITY to sever out the Debtor from the 327th District Court litigation, which basically avers that a severance of WESTMOUNT so that the co-Defendants PARSA and MONTOYA PARK PLACE, INC. can be pursued *in personam* would not solve all the stay problems created by the Chapter 11 filing.

WHEREFORE, PREMISES CONSIDERED, FLORES prays that the Chapter 11 filing of WESTMOUNT GROUP, INC. be dismissed, for all the reasons given above, as a bad-faith filing. Alternatively, FLORES prays that this case be converted to Chapter 7 because of the greater reach a bankruptcy trustee will have to pursue fraudulent transfers, compared to what can be pursued under the Texas Fraudulent Transfer Act in State Court. Further FLORES prays for all other relief be deserves in the circumstances, whether general or special, at law or equity.

Respectfully submitted this 15th day of October, 2021.

/s/ _____

E.P. BUD KIRK
Texas State Bar No. 11508650
600 Sunland Park Dr.
Building Four, Suite 400
El Paso, TX 79912
(915) 584-3773
(915) 581-3452 facsimile
budkirk@aol.com
Attorney for ALBERT FLORES

---

\* *I.e.*, fraudulent at least in the sense of Texas Bus. & Comm. Code § 24.006 because the transfer was either gratuitous or for inadequate consideration; and fraudulent under Texas Business & Commerce Code §24.005 because intended to evade creditors as well.

19

## CERTIFICATE OF SERVICE

I do hereby certify that on this 15 th day of October, 2021, I did cause a copy of the foregoing First Amended Motion to Dismiss Case as a Bad Faith Filing to be mailed to Jim Rose, Attorney for the United States Trustee, 615 E. Houston, Ste. 533, P.O. Box 1539, San Antonio, TX 78295-1539; to Brad W. Odell, Subchapter V Trustee, 1500 Broadway, Ste. 700, Lubbock, TX 79401-3169; to Westmount Group, Inc., 810 N. Kansas Street, El Paso, TX 79902-5207; to Stephen W. Sather, 7320 N MoPac Expy, Ste. 400, Austin, TX 78731; to City of El Paso, c/o Don Stecker, 112 E. Pecan St., Ste. 2200, San Antonio, TX 78205-1588; to Weststar Title, LLC, c/o James W. Brewer, 221 N. Kansas, Ste. 1700, El Paso, TX 79901-1401; and to all persons who have been identified to date as parties in interest in this case, as shown on the attached list.

/s/ _____

E. P. BUD KIRK

4063.007-MC-100521

Fidelity National Title Insurance Co.
c/o Shakira Kelley
6900 Dalls Parkway, Ste. 610
Plano, TX 75024-7164

Albert Flores
3605 Arcadia
El Paso, TX 79902

Keyvan Parsa
7604 Plaza Redonda
El Paso, TX 79912-8402

Keyvan Parsa, M.D. and
Montoya Park Place, Inc.
c/o Mark Walker
221 N. Kansas, Ste. #2000
El Paso, TX 79901

Manny Jemente
Acala Investments
6044 Gateway Blvd. East
El Paso, TX 79905-2023
Shabnam Izadpanahi
36 Micmac Crescent
North York, ON M2H2K2

Troy Chandler Brown
P.O. Box 221588
El Paso, TX 79913

Troy C. Brown
c/o Mannie Kalman
311 Montana, Bldg. A-2, Ste. 106
El Paso, TX 79902

Ulrick Moise
Palacio de Paquim
C. Durango 2047
32575 CD Juarez
Chih. Mexico

Wells Fargo Business
P.O. Box 6995
Portland, OR 97228-6995

## EXHIBIT INDEX

**EXHBIIT "1"**    Joint Order to Compel Interpleader and Hold Funds into Registry of Court.

**EXHIBIT "2"**    Third Amended Petition (Suit for Rescission of Contract, For Fraud in a Stock Transaction, for Unjust Enrichment, for Common Law Fraud, for Injunctive Relief, and to Appoint a Receiver).

        Exhibit "A"    Texas Secretary of State Certificate of Incorporation.

        Exhibit "B"    Warranty Deed.

        Exhibit "C"    Trustee's Deed.

        Exhibit "D"    Agreement of Subordination and Opportunity to Cure.

        Exhibit "E"    Cashier's check for $280,000.00

        Exhibit "F"    Stock Purchase Agreement

        Exhibit "G"    Document stating that FLORES was not entitled personally to "any portion of the disputed amount of $700,000, due to [sic] the sale of real estate known as TRACT 3, Johannsen Subdivision "5980 Johannsen Road" claimed by Right Immix Capital.

        Exhibit "H"    RIGHT IMMIX CAPITAL, LLC demand, dated July 17, 2020.

        Exhibit "I"    RIGHT IMMIX CAPITAL, LLC demand, dated July 24, 2020.

        Exhibit "J"    Demand for the money to pay RIGHT IMMIX CAPITAL, LLC from WESTSTAR TITLE, dated July 23, 2020.

        Exhibit "K"    Demand for the money to pay RIGHT IMMIX CAPITAL, LLC from FIDELITY NATIONAL TITLE INSURANCE, dated August 20, 2020.

        Exhibit "L"    Title Policy

        Exhibit "M"    Affidavit of ALBERT FLORES

**EXHIBIT "3"**        Certificate of Formation.

**EXHIBIT "4"**        Commercial Affidavits as to Debts and Liens.

**EXHIBIT "5"**        Seller's Statement.

**EXHIBIT "6"**        Promissory Note.

**EXHIBIT "7"**        Deed of Trust.

**EXHBIIT "8"**        Guaranty.

**EXHIBIT "9"**        Order for Substitution of Counsel.

**EXHIBIT "10"**       Agreed Temporary Restraining Order.

**EXHIBIT "11"**       Agreed Temporary Injunction.

**EXHIBIT "12"**       May 18, 2020 Hearing Transcript title page, pages 8-14, and Court
                       Reporters Affidavit.

**EXHIBIT "13"**       Fidelity National Title Insurance Company's Amended Petition in
                       Intervention without its Exhibits.

**EXHIBIT "14"**       First Amended Petition in Intervention of Weststar Title, LLC.

**EXHIBIT "15"**       Letter from Wells Fargo.

**EXHIBIT "16"**       Letter from Wells Fargo.

**EXHIBIT "17"**       June 8, 2021 Hearing Transcript title page, pages 18-22, and Court
                       Reporters Affidavit.

**EXHIBIT "18"**       July 14, 2021 Hearing Transcript title page, pages 6-11, and Court
                       Reporters Affidavit.

**EXHIBIT "19"**       Plea in Intervention of Westmount Group, LLC.

**EXHIBIT "19-A"**     Motion to Vacate Orders

**EXHIBIT "20"**       Judgment of the El Paso Court of Appeals.

**EXHBIT "21"**        Keyvan Parsa, M.D. and Montoya Park Place, Inc.'s Response to Weststar
                       Title, LLC's Motion to Sever.