**EXHIBIT "12"**

1

REPORTER'S RECORD    COPY

TRIAL COURT CAUSE NO. 2020DCV2997

VOLUME 1 OF 1 VOLUMES

| | |
|---|---|
| ALBERTO FLORES,<br>    Plaintiff,<br>vs.<br>KEYVAN PARSA, M.D. and<br>MONTOYA PARK PLACE, INC.,<br>    Defendants,<br>vs.<br><br>WESTSTAR TITLE, L.L.C.,<br>Intervenor/Third-Party<br>Plaintiff,<br><br>FIDELITY NATIONAL TITLE<br>INSURANCE, CO. | IN THE DISTRICT COURT<br><br>OF EL PASO COUNTY, TEXAS<br><br>327TH JUDICIAL DISTRICT |

*********************************

MOTIONS HEARING

*********************************

    The 18th day of May, 2020, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable THOMAS A. SPIECZNY Judge Presiding, via Zoom in accordance with the Supreme Court of Texas' Emergency Order Regarding the COVID-19 State of Disaster, held in El Paso, El Paso County, Texas:

    Proceedings reported by machine shorthand utilizing computer-assisted realtime transcription.

MARIA I. STALLINGS; OFFICIAL COURT REPORTER; 327TH DISTRICT COURT
500 E. SAN ANTONIO, RM. 606, EL PASO, TX 79901 (915) 546-2032

1  MR. MIRANDA: Yeah. And we know you see
2 hundreds if not thousands of these, so, I mean -- and I
3 even told my client, and I spoke with Mr. Brewer and I
4 think that's where it came from. That being said, it
5 was always our intention to object to the motion for the
6 interpleader funds, because, in all honesty, it -- it
7 remains our position that's unnecessary.
8  As the Court is well aware, not only has
9 Mr. Parsa voluntarily entered into an agreed temporary
10 restraining order, we also voluntarily entered into an
11 agreed temporary injunction. And the agreed temporary
12 injunction has maintained the status quo of the funds.
13  Back in January I had discussions with
14 Mr. Brewer and Mr. Kirk, and I provided evidence where
15 the money was. It's in a Wells Fargo account. The
16 money has not been moved since that date. And then as
17 recently as yesterday, May 17th, I provided Mr. Brewer
18 and Mr. Willey an updated copy and a letter from Wells
19 Fargo Bank confirming that the funds are still there.
20 So it was our position -- remains our position that this
21 is really unnecessary.
22  Now, I know that WestStar, Fidelity are
23 taking the position that, number one, they really didn't
24 participate in the agreed temporary injunction and the
25 agreed TRO. My position on that would be, without

1 disclosing communications I had with other lawyers, I
2 did have conversations with -- with WestStar about this.
3 They knew what was going on. And Fidelity has always
4 known what's going on. And the reason that I have
5 Mr. Parsa here is that he would testify that Fidelity
6 has actually made a demand on him prior to the lawsuit
7 even being filed by Mr. Flores, in which WestStar and
8 Fidelity then intervened, that there's an issue about
9 these funds.
10 But the point is, the money hasn't gone
11 anywhere, and the money is not going to go anywhere.
12 And if I'm permitted to call Mr. Parsa to the stand, he
13 will testify that this closing occurred in July of 2020.
14 Mr. Flores' lawsuit wasn't filed until October 2020.
15 The TRO and the injunction were not entered until
16 January of 2021. And at no point during those
17 six months did he do anything wrong with the money. He
18 didn't transfer it. He didn't hide it. He didn't
19 launder it. He didn't send it overseas. He didn't
20 abscond with it to Las Vegas or Rio de Janeiro. The
21 money's always been safe. And since --
22 THE COURT: Let me just interrupt you for a
23 second. I have a vague recollection -- wasn't the money
24 in Mexico for a while?
25 MR. MIRANDA: I -- I can call Mr. Parsa and

1  ask him that.  I don't believe, and I've never seen any
2  document where --
3              THE COURT:  Okay.  Maybe I'm wrong about
4  that.  Maybe there was a fear that it would be moved to
5  Mexico.
6              MR. MIRANDA:  Yes, there was.  And, yes,
7  that's in Mr. Kirk's pleadings that the money may have
8  gone to Mexico, but it -- it never left the country.
9  Money doesn't have a visa, so it's been here in the U.S.
10 the whole time.  So that being said, we really believe
11 that this motion was unnecessary.
12             I mean -- and, yes, we had a mediation.  I
13 don't -- to be honest, I don't recall opposing to it.
14 We willingly went to the mediation.  It got continued
15 because Mr. Parsa --
16             THE COURT:  Mr. Roman had -- had an
17 objection and I overruled the objection.
18             MR. MIRANDA:  Oh, yeah.  Yeah, but that
19 didn't come from Mr. Parsa.  We did continue it for a
20 month because of his quarantine for COVID.  But we've
21 always tried to do things in good faith, and since I've
22 been involved in the case, I've gone above and beyond to
23 do things in good faith and remain in communication with
24 opposing counsel.
25             So when we were hit with this motion, we

1  were surprised, but we understand.  I might have done
2  the same thing if I was on the other side.  And when we
3  were hit with the order, we were blindsided, but, you
4  know, we know where that came from, too.
5           So that being said, our position hasn't
6  changed.  This isn't really unnecessary [sic], and I can
7  call Mr. Parsa to the stand.  And I would be happy to
8  cover these points with him and provide direct testimony
9  as to the fact that the money hasn't gone anywhere and
10 the terms of the temporary injunction have been
11 respected since the moment it was entered by this Court.
12          THE COURT:  Let me -- before you call any
13 witnesses, let me just get a brief statement from all of
14 the other counsel as to what their position is.
15          Mr. Kirk, what is your position with regard
16 to Mr. Miranda's motion?
17          MR. KIRK:  Well, I've read the letter which
18 Mr. Miranda --
19          THE COURT:  Can you speak a little bit
20 louder?
21          MR. KIRK:  Yes, Your Honor.  I've read the
22 letter which Mr. Miranda circulated showing that -- that
23 there's a balance of over $700,000 in Wells Fargo Bank.
24 That does not satisfy me.  It worries me, because we had
25 two accounts.  And I think the total in them was one

```
 1  million three.  So what has happened to the other
 2  600,000?
 3              Also, why is there activity?  Why are they
 4  funds -- are there funds moving in and out of this
 5  account, which is what Mr. Miranda's correspondence
 6  shows?
 7              MR. PARSA:  Can I answer this --
 8              THE COURT:  I understand you've got some
 9  concerns.  Okay.
10              MR. PARSA:  Can I answer these questions,
11  Your Honor?
12              MR. MIRANDA:  Mr. Parsa, hold on --
13              THE COURT:  Okay.  Mr. Brewer, what is your
14  position?
15              MR. BREWER:  Jim Brewer on behalf of
16  WestStar Title, L.L.C.  As the Court remembers, this
17  has -- this lawsuit has to do with a closing on a sale
18  of some real estate -- commercial real estate.  We are
19  contending that we think by fraud, possibly by mistake,
20  Montoya Park Place, the seller, was overpaid to the tune
21  of over $700,000.  And -- and there was not a lien
22  release that should have been in that closing.
23              The -- the moving to Mexico discussion,
24  that comes from an affidavit -- not just pleadings but
25  an affidavit of Mr. Flores, and it's attached to his
```

1 petition in this case. The affidavit says, quote --
2 this is Mr. Flores testifying. He told me after
3 WestStar Title Company demanded return of the money to
4 satisfy the lien, that he had moved the money out of
5 Western Heritage Bank and into Mexico. So that's --
6 that's where this concern started.
7     I see Mr. Parsa is here. He may have a
8 different position, but I would argue that the Court
9 does have inherent authority to order deposit of funds
10 into the registry of the Court and that's what we're
11 requesting.
12     THE COURT: Okay. Okay. Mr. Willey.
13     MR. WILLEY: Yes, Your Honor, for Fidelity
14 National Title Insurance Company. I mean, it is our
15 stance that, Your Honor, there's -- we obviously wanted
16 to preserve our -- our right to demand deposit in the
17 registry. And, obviously, the -- the order hasn't been
18 followed to date, even though it's been granted and
19 entered. And we just don't want a waiver of our right
20 to demand deposit into the registry of the Court.
21     Also, as -- I'm sorry -- Mr. Miranda
22 pointed out that, you know, we're -- we weren't a party
23 to the temporary injunction. We were able -- we were
24 not able to, you know, offer our terms in regards to
25 the -- the terms of the actual TRO itself.

1       The argument that Mr. Parsa, you know,
2  hasn't violated or -- or breached is -- is not really a
3  grounds for vacating said order. There's -- there's no
4  real grounds to show that the Court erred in its
5  decision. There's no real irregularity. There's no
6  conduct administered by Mr. Brewer or client -- or my
7  client in this matter. He hasn't shown that they're
8  actually going to be prejudiced by this.
9       And, also, you know, it's important to
10 point out that the temporary injunction that was filed
11 also agreed -- or there was terms in there that
12 indicated that this temporary injunction was going to be
13 filed without prejudice to any separate requests for
14 injunctive relief by WestStar Title itself. So, I mean,
15 I understand the mistake that was made with the joint
16 vice [sic] and agreed order, but it still doesn't --
17 doesn't take away from the order that's been rendered by
18 the Court.
19      And, you know, obviously to date nothing
20 has been followed in regards to Mr. Parsa in that
21 regards either, because he's supposed to register within
22 10 days of the order being executed and entered.
23      Moreover, Mr. Kirk actually did point a
24 good fact in regards to the money actually being moved
25 back and forth. You know, that's obviously a concern of

```
1  STATE OF TEXAS              )
2  COUNTY OF EL PASO           )
3
4       I, Maria I. Stallings, Official Court Reporter in
5  and for the 327th District Court of El Paso County,
6  State of Texas, do hereby certify that the above and
7  foregoing contains a true and correct transcription of
8  all portions of evidence and other proceedings requested
9  in writing by counsel for the parties to be included in
10 this volume of the Reporter's Record, in the
11 above-styled and numbered cause, all of which occurred
12 in open court or in chambers and were reported by me.
13      I further certify that this Reporter's Record of
14 the proceedings truly and correctly reflects the
15 exhibits, if any, offered by the respective parties.
16      I further certify that the total cost for the
17 preparation of this Reporter's Record is $70.00 and was
18 paid by Mr. James Brewer, Esq.
19      WITNESS MY OFFICIAL HAND this the  2 nd day of
20 June, 2021.
21
22                      /s/ Maria I. Stallings
                        MARIA I. STALLINGS, Texas CSR# 8229
23                      Official Court Reporter
                        327th District Court
24                      500 E. San Antonio, Rm. 606
                        El Paso, TX 79901
25                      (915) 546-2032
                        Expires May 31, 2023
```