**EXHIBIT "13"**

El Paso County - 327th District Court

Filed 8/6/2021 10:23 AM
Norma Favela Barceleau
District Clerk
El Paso County
2020DCV2997

## CAUSE NO. <u>2020DCV2997</u>

| | | |
|---|---|---|
| **ALBERT FLORES** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **FIDELITY NATIONAL TITLE** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| **Intervenor-Plaintiff,** | § | **EL PASO COUNTY, TEXAS** |
| | § | |
| **v.** | § | |
| | § | |
| **KEYVAN PARSA, M.D, AND** | § | |
| **MONTOYA PARK PLACE, INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| **and** | § | |
| | § | |
| **KEYVAN PARSA, M.D.,** | § | |
| **MONTOYA PARK PLACE, INC.,** | § | |
| **ALBERT FLORES, and DEBORAH** | § | |
| **JORDAN,** | § | |
| | § | |
| **Intervenor-Defendants.** | § | **327TH JUDICIAL DISTRICT** |

## <u>FIDELITY NATIONAL TITLE INSURANCE COMPANY'S</u>
## <u>AMENDED PETITION IN INTERVENTION</u>

**COMES NOW**, Intervenor-Plaintiff, Fidelity National Title Insurance Company (hereinafter referred to as "Intervenor-Plaintiff" and/or "Fidelity"), individually and as subrogee of Idea Public Schools, a Texas Non-Profit Corporation (hereinafter referred to as the "Insured") and files this, Amended Petition in Intervention, complaining of Intervenor-Defendants, Keyvan Parsa, M.D. ("Intervenor-Defendant Parsa"), Montoya Park Place Inc. ("Intervenor-Defendant Montoya"), Albert Flores ("Intervenor-Defendant Flores"), and Deborah Jordan ("Intervenor-Defendant Jordan") (collectively hereinafter referred to as the "Defendants" and/or "Intervenor-

Defendants"), and would show the Court the following:

## DISCOVERY CONTROL PLAN

1.    Discovery in this case is intended to be conducted under Level 2, pursuant to Rule 190.3 of the *Texas Rules of Civil Procedure* ("TRCP").

## JURISDICTION AND VENUE

2.    Venue is proper in El Paso County, Texas because this action relates to El Paso County real property and substantially all the actions and occurrences that give rise to Intervenor-Plaintiff's claims occurred in El Paso County, Texas.

3.    Intervenor-Plaintiff further contends this court has subject-matter jurisdiction over Intervenor-Plaintiff's claims because the claims are within the jurisdictional limits of this court. Finally, Intervenor-Plaintiff contends this court has personal jurisdiction over the Intervenor-Defendants in this case because the Intervenor-Defendants are residents of this state and/or have purposefully availed themselves to the jurisdiction of this court by making contacts with this forum that are sufficient to give rise to general or specific jurisdiction and the exercise of jurisdiction will not offend the traditional notions of fair play and substantial justice.

## PARTIES

4.    Intervenor-Plaintiff, Fidelity National Title Insurance Company, is a foreign corporation, but is duly authorized to do business in the State of Texas, and may be served with all pleadings, discovery, or other communications related to the above styled and numbered cause through its counsel of record, S. Shakira Ali Kelley, and Gregory Brewer, Fidelity National Law Group, 6900 Dallas Parkway, Suite 610, Plano, Texas 75024, Phone: (972) 812-6478, Fax: (972) 812-9408, email: Shakira.kelley@fnf.com pursuant to Rule 21a of the TRCP.

5.      Intervenor-Defendant, Parsa, is an individual residing in El Paso County, Texas. Intervenor-Defendant Parsa has appeared and answered. A copy of this petition may be served by and through its attorney of record, Troy Brown, attorney at law, at: 1074 Country Club Road Suite B.4, El Paso, Texas 79932, Phone: (915) 543-9669; email: troy@tcblegal.com or wherever it may be found or wherever it may be found, pursuant to Rule 21a of the TRCP.

6.      Intervenor-Defendant, Montoya Park Place, Inc., is a Texas Corporation. Intervenor-Defendant Montoya Park Place, Inc. has appeared and answered. A copy of the Petition may be served by and through its attorney of record, Troy Brown, attorney at law, at: 1074 Country Club Road Suite B.4, El Paso, Texas 79932, Phone: (915) 543-9669; email: troy@tcblegal.com or wherever it may be found or wherever it may be found, pursuant to Rule 21a of the TRCP.

7.      Plaintiff and Intervenor-Defendant Flores, is an individual residing in El Paso County, Texas. A copy of this petition may be served by and through its attorney of record, E.P. Bud Kirk, attorney at law, at: 600 Sunland Park Drive, Building 4, Suite 400, El Paso, Texas 79912-5115, Phone: (915) 584-3773; email: budkirk@aol.com, or wherever he may be found, pursuant to Rule 21a of the TRCP.

8.      Intervenor-Defendant, Jordan, is an individual residing in El Paso County, Texas. A copy of this petition may be served at her usual place of abode at: 601 Shadow Willow Drive, El Paso, Texas 79922-1866, or wherever she may be found, pursuant to Rule 21a of the TRCP.

9.      Intervenor, WESTSTAR TITLE, LLC ("WestStar") is a Texas limited liability company with is principal place of business in El Paso County, Texas. WestStar has previously made an appearance in this case, however, a copy of this Amended Petition may be served through its attorney of record, James Brewer, attorney at law; 221 N. Kansas, Suite 1700 El Paso, Texas 79901, james.brewer@kempsmith.com, pursuant to Rule 21a of the TRCP.

10.     Intervenor and Third-Party Defendant, Westmount Group, Inc. ("Westmount") is a Texas corporation operating its principal place of business in El Paso County, Texas. Westmount has made an appearance in this lawsuit and additionally can be served a copy of this Amended Petition through its attorney of record, Stephen Sather, attorney at law; 7320 N. Mopac Expy, Suite 400 Austin, Texas 78731, pursuant to Rule 21a of the TRCP.

## FACTS

11.     The property, that is the subject of this dispute, is commonly known as:  5980 Johannsen Road, El Paso, Texas 79932, and legally described as:

> **TRACT 3, J.L. JOHANNSEN SURVEY NUMBER 185, IN THE CITY OF EL PASO, EL PASO COUNTY, TEXAS, ACCORDING TO THE RESURVEY OF SAID J.L. JOHANNSEN SURVEY NUMBER 185 MADE BY EL PASO COUNTY, TEXAS, FOR TAX PURPOSES, AND CONTAINING 12.08 ACRES OF LAND, MORE OR LESS.**

(hereinafter referred to as the "Subject Property").

12.     On or about November 20, 2015, Josette Flores Silverman, Jamie Flores, and Intervenor-Defendant Flores, individually and as independent executors of the Estate of Ramon G. Flores, Deceased (collectively hereinafter referred to as the "Flores'"), conveyed the Subject Property to Johannsen Development Group, Inc. ("JDG"), via a Warranty Deed with Vendor's Lien (the "First JDG Deed"). The First JDG Deed, dated November 20, 2015, was recorded on November 24, 2015, at Instrument Number: 20150082539, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the First JDG Deed is attached hereto, as **Exhibit "A"**, and incorporated herein.

13.     On or about the same day, JDG, duly executed, acknowledged and delivered a Deed of Trust (Security Agreement, Assignment of Losses, Assignment of Rents, and Financing Statement) in favor of the Flores, encumbering the Subject Property in the original principal

amount of $715,000.00 the ("Flores' DOT"). The Flores' DOT, dated November 20, 2015, was recorded on November 24, 2015, at Instrument Number: 20150082540, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the Flores' DOT is attached hereto, as **Exhibit "B"**, and incorporated herein.

14.  On or about March 1, 2017, JDG conveyed the Subject Property to the Flores via a Special Warranty Deed in Lieu of Foreclosure (the "Flores' Deed"). The Flores' Deed, dated March 1, 2017, was recorded on the same day, at Instrument Number: 20170014809, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the Flores' Deed is attached hereto, as **Exhibit "C"**, and incorporated herein by reference for all intents and purposes.

15.  On or about September 7, 2017, Gina Silverman-Smith, as Independent Executrix of the Estate of Josette Flores Silverman, deceased, and Jaime Flores, individually, conveyed their interest in the Subject Property back to JDG via a Special Warranty Deed (the "Second JDG Deed"). The Second JDG Deed, dated September 7, 2017, was recorded on September 11, 2017, at Instrument Number: 20170066563, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the Second JDG Deed is attached hereto, as **Exhibit "D"**, and incorporated herein.

16.  Simultaneously, Intervenor-Defendant Flores, individually and as independent executor of the Estate of Ramon G. Flores, Deceased, conveyed their interest in the Subject Property back to JDG via a Special Warranty Deed with Vendor's Lien (the "Third JDG Deed"). The Third JDG Deed, dated September 7, 2017, was recorded on September 11, 2017, at Instrument Number: 20170066564, in the Real Property Records of the County Clerk's Office, El

Paso County, Texas. A true and correct copy of the Thirst JDG Deed, is attached hereto, as **Exhibit "E"**, and incorporated herein by reference for all intents and purposes.

17. On or about the same day, JDG, duly executed, acknowledged and delivered a Deed of Trust, Security Agreement, Assignment of Rents, and Financing Statement, in favor of the MJ Real Properties, Inc. ("MJRP"), encumbering the Subject Property in the original principal amount of $400,000.00 the ("MJRP DOT"). The MJRP DOT, dated September 7, 2017, was recorded on September 11, 2017, at Instrument Number: 20170066565, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the MJRP DOT is attached hereto, as **Exhibit "F"**, and incorporated herein by reference for all intents and purposes.

18. Concurrently, JDG, duly executed, acknowledged and delivered a Deed of Trust, in favor of Intervenor-Defendant Flores, encumbering the Subject Property in the original principal amount of $437,500.00 (the "Defendant Flores DOT"). The Defendant Flores DOT, dated September 7, 2017, was recorded on September 11, 2017, at Instrument Number: 20170066567, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the Defendant Flores DOT is attached hereto, as **Exhibit "G"**, and incorporated herein.

19. Contemporaneously, JDG, duly executed, acknowledged and delivered a Subordinate Deed of Trust, in favor of Intervenor-Defendant Parsa, encumbering the Subject Property in the original principal amount of $255,000.00 (the "Parsa DOT"). The Parsa DOT, dated September 7, 2017, was recorded on September 11, 2017, at Instrument Number: 20170066569, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the Parsa DOT is attached hereto, as **Exhibit "H"**, and incorporated herein.

20.     Intervenor-Defendant Flores executed an Agreement of Subordination and Opportunity to Cure with MJRP in which Flores agreed to subordinate the Defendant Flores DOT to that of the interests of the MJRP DOT (the "First Subordination Agreement"). The First Subordination Agreement, dated September 7, 2017, was recorded on September 11, 2017, at Instrument Number: 20170066568, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the First Subordination Agreement is attached hereto, as **Exhibit "I"**, and incorporated herein.

21.     Thereafter, on or about June 5, 2019, Intervenor-Defendant Parsa duly executed, acknowledged a Release of the Parsa DOT (the "Parsa DOT Release"). The Parsa DOT Release, dated June 5, 2019, was recorded on June 7, 2019, at Instrument Number: 20190042694, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the Subordination Agreement is attached hereto, as **Exhibit "J"**, and incorporated herein.

22.     The MJRP DOT and the Intervenor-Defendant Flores DOT remained as encumbrances on the Subject Property.

23.     Subsequently, on June 28, 2019, Intervenor-Defendant Parsa and Intervenor-Defendant Jordan on behalf of JDG, executed a Note (the "RIC Note") by which it borrowed the sum of $700,000.00 from Right Immix Capital, LLC ("RIC"). A true and correct copy of the RIC Note is attached hereto, as **Exhibit "K"**, and incorporated herein.

24.     In order to collaterally secure the repayment of the obligation under the terms of the RIC Note, Intervenor-Defendant Parsa and Intervenor-Defendant Jordan on behalf of JDG, duly executed, acknowledged and delivered a Renewal and Extension Deed of Trust, encumbering the Subject Property in the original principal amount of $700,000.00 (the "RIC DOT"). The RIC DOT, dated June 28, 2019, was recorded on July 8, 2019, at Instrument Number: 20190051396,

in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the RIC DOT is attached hereto, as **Exhibit "L"**, and incorporated herein.

25.     In the RIC DOT, Intervenor-Defendant Parsa and Intervenor-Defendant Jordan, on behalf of JDG, executed, acknowledged and warrantied, that the RIC DOT was a renewal and extension of the loans underlying the MJRP DOT and Defendant Flores DOT and stated in pertinent part that:

> "Grantor represents that this deed of trust and the Note are given for the following purposes:
>
> The renewal and extension of a loan as evidenced by a A Vendor's lien retained in Deed dated September 7, 2017, filed for record on September 11, 2017 in the Office of the County Clerk of El Paso County, Texas, under Clerk's Document No. 20170066564, from Alberto Flores, Individually and as Independent executor of the Estate of Ramon G. Flores, deceased to Johannsen Development Group, Inc., a Texas corporation, securing the payment of one certain promissory note of even date therewith in the principal amount of $400,000.00, payable to the order of MJ Real Properties, In., a Texas corporation; said note and lien being additionally secured by Deed of Trust of even date to Steve E. Anderson and/or William B Crout, Trustee, filed for record on September 11, 2017 in the Office of the County Clerk of El Paso County, Texas under Clerk's Document No. 20170066565. Notice of Trustee's Sale No. 149, filed on May 14, 2019, Official Records of El Paso County, Texas. A Vendor's lien retained in Deed dated September 7, 2017, filed for record on September 11, 2017 in the Office of the County Clerk of El Paso County, Texas, under Clerk's Document No. 20170066564, from Alberto Flores, Individually and as Independent executor of the Estate of Ramon G. Flores, deceased to Johannsen Development Group, Inc., a Texas corporation, securing the payment of one certain promissory note of even date therewith in the principal amount of $437,500.00, payable to the order of Alberto Flores, Individually as Independent Executor of the Estate of Ramon G. Flores, deceased; said note and lien being additionally secured by Deed of Trust of even date to E.P. Bud Kirk, Trustee, filed for record on September 11, 2017 in the Office of the County Clerk of El Paso County, Texas under Clerk's Document No. 20170066567. Notice of Trustee's Sale No. 149, filed on May 14, 2019, Official Records of El Paso County, Texas. Same being affected by that certain Agreement of subordination and Opportunity to Cure dated September 7, 2017 executed by and between Alberto Flores, Individually and as Independent Executor of the Estate of Ramon G. Flores, deceased and MJ Real Properties, Inc., a Texas corporation, filed for record on September 11, 2017 in the Office of the County Clerk of El Paso County, Texas, under Clerk's Document No. 20170066568. Promissory Note dated September 7, 2017, filed for record on October 18, 2018 in the Office of the County Clerk of El

Paso County, Texas, under Clerk's Document No. 20180080252, from Johannsen Development Group, Inc., a Texas corporation, securing the payment in the principal amount of $437,500.00, payable to the order of Alberto Flores, Individually and as Independent Executor of the estate of Ramon G. Flores, deceased. Notice of Ongoing Maturity of Real Estate Lien Note and Trustee's sale No. 15, filed on April 24, 2019, Official Records of El Paso County, Texas..."

*See* Ex. "L".

26.     Also on June 28, 2019, Intervenor-Defendant Parsa and Intervenor-Defendant Jordan, executed a Guaranty by which they individually and personally guaranteed the payment of the indebtedness created by the RIC Note (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto, as **Exhibit "M"**, and incorporated herein.

27.     In said Guaranty, Intervenor-Defendant Parsa and Intervenor-Defendant Jordan, explicitly agreed, that:

"DEBORAH JORDAN and KEYVAN PARSA (the "Guarantor"), does hereby *absolutely and unconditionally, jointly and severally, guarantee and promise to pay the following indebtedness of* JOHANNSEN DEVELOPMENT GROUP, INC., A TEXAS CORPORATION (the "Borrower") as follows:

a secured Promissory Note in the original principal sum of SEVEN HUNDRED THOUSAND and 00/100 DOLLARS ($700,000.00), of even date, payable to the order of Right Immix Capital, LLC, secured with a Deed of Trust lien on 5980Johannsen Road, legally described as follows: Tract 3 (containing 12.1644 acres, more or less), J.L. JOHANNSEN SURVEY NO. 185, in the City of El Paso, El Paso County, Texas, according to the resurvey of said J.L. Johansen Survey No. 185, made by El Paso County Texas, for tax purposes.

and all extensions and renewals thereof, all unpaid principal, interest and all expenses of collection thereof and in enforcing this Guaranty, including reasonable attorney's fees, hereby waiving (a) notice of acceptance of this Guaranty, presentment, demand, notice of demand, protest, notice of protest, notice of dishonor, and notice of nonpayment of said Indebtedness; (b) the right, if any, to the benefit of or to direct the application of any property or security securing said Indebtedness until the same shall have been paid in full; and (c) the right to require any proceedings against the Borrower or that foreclosure or exercise of the power of sale under any mortgage securing the Indebtedness be instituted or the pursuance of any other remedy before suit on this Guaranty. *The undersigned Guarantor does further agree that he may be proceeded against directly and independently and that the cessation of the liability of others obligated for the payment of said*

*Indebtedness for any reason other than full payment, or any renewal or extension* (whether before or after the death of any of the undersigned Guarantor), forbearance, change of rate of interest, or any acceptance, release or substitution of security, or any impairment or suspension of remedies or rights against others obligated thereon, shall not in anywise affect the liability of the undersigned Guarantor.

*No invalidity, irregularity or unenforceability of all or any part of the Indebtedness and liabilities of Borrower guaranteed hereunder or any security therefor shall affect, impair or be a defense to this Guaranty, and this Guaranty shall be a primary obligation of the undersigned.*

The obligations of each Guarantor under this Agreement and those of any other Guarantor or Guarantors who may have guaranteed or who hereafter guarantee the Indebtedness of Borrower are and will be joint and several, and Lender may release or settle with any one or more of the Guarantors at any time without affecting the continuing liability of the remaining Guarantor or Guarantors..." (emphasis added).

*See* Ex. "M".

28.     Intervenor-Defendant Flores executed an Agreement of Subordination and Opportunity to Cure with RIC in which he agreed to subordinate the Defendant Flores DOT to that of the interests of the RIC DOT (the "Second Subordination Agreement"). The Second Subordination Agreement, dated June 28, 2019, was recorded on August 27, 2019, at Instrument Number: 20190065558, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the Second Subordination Agreement is attached hereto, as **Exhibit "N"**, and incorporated herein.

29.     Following the Second Subordination Agreement, the MJRP DOT remained a superior encumbrance on the Subject Property, while the Flores DOT remained as a subordinate encumbrance on the Subject Property.

30.     Thereafter, on January 23, 2020, Intervenor-Defendant Parsa, on behalf of JDG, conveyed its interest in the Subject Property to Westmount Assets, Inc., via a Warranty Deed (the "Westmount Deed"). The Westmount Deed, dated January 23, 2020, was recorded on the same

day, at Instrument Number: 202000006155, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the Westmount Deed is attached hereto, as **Exhibit "O"**, and incorporated herein.

31.     Subsequently, as the Note under the Defendant Flores DOT was not satisfied from the proceeds of the RIC DOT, Intervenor-Defendant Flores enforced his rights under the Flores DOT and on February 4, 2020, proceeded to non-judicially foreclose the interest he held in the Subject Property. Wherein the Trustee of the Flores DOT, E.P. Bud Kirk, executed and conveyed the Subject Property to Intervenor-Defendant Flores, via a Trustee's Deed (the "Flores Trustee's Deed"). The Flores Trustee's Deed, dated February 4, 2020, was recorded on the same day, at Instrument Number: 20200010170, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the Flores Trustee's Deed is attached hereto, as **Exhibit "P"**, and incorporated herein.

32.     On or about February 11, 2020, Intervenor-Defendant Flores conveyed his interest in the Subject Property to Intervenor-Defendant Montoya, via a Warranty Deed (the "Montoya Deed"). The Montoya Deed, dated February 11, 2020, was recorded on the same day, at Instrument Number: 20200012109, in the Real Property Records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the Montoya Deed is attached hereto, as **Exhibit "Q"**, and incorporated herein .

33.     Within the Montoya Deed, Intervenor-Defendant Flores, as Grantor, executed, acknowledged and warrantied, in pertinent part that:

> "TO HAVE AND TO HOLD the Property together with all and singular the rights and appurtenances thereto in any way belonging unto Grantee, Grantee's heirs, representatives, *successors and assigns forever*, and Grantor does hereby bind Grantor, Grantor's heirs, representatives, successors, and assigns to warrant and *forever defend, all and singular, the property unto Grantee, Grantee's successors and assigns against every person whomsoever lawfully claiming or to claim the*

*Property or any part thereof...*" (emphasis added).

*See* Ex. "Q".

34.     On or about July 1, 2020, Intervenor-Defendant Flores and Intervenor-Defendant Parsa, as Grantors on behalf of Intervenor-Defendant Montoya conveyed the Subject Property via Special Warranty Deed to buyer, IDEA Public Schools. Idea Public Schools ("Insured") is an in insured of Fidelity National Title Insurance Company. The vesting deed dated July 1, 2020, was recorded as Instrument Number: 20200050290, in the real property records of the County Clerk's Office, El Paso County, Texas. A true and correct copy of the Insured's Vesting Deed is attached hereto, as **Exhibit "R"**, and incorporated herein.

35.     Within the Insured's Vesting Deed, Intervenor-Defendant Flores and Intervenor-Defendant Parsa, as Grantors on behalf of Intervenor-Defendant Montoya, as Grantors, executed, acknowledged and warrantied, in pertinent part that:

> "TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in any wise belonging, unto Grantee, its successors and assigns forever, subject to the matters described on Exhibit B attached hereto (collectively, the "Permitted Exceptions") and Grantor does hereby bind itself, its successors and assigns, to WARRANT AND FOREVER DEFEND all and singular the Property, subject to the Permitted Exceptions, unto Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof..."

*See* Ex. "R".

36.     Contemporaneous with the Insured's Vesting Deed, Intervenor-Defendant Flores and Intervenor-Defendant Parsa, on behalf of Intervenor-Defendant Montoya, as Seller, on or about July 1, 2020, executed and acknowledged a Commercial Affidavit as to Debts and Liens (the "Debts and Liens Affidavit"). Intervenor-Defendant Flores and Intervenor-Defendant Parsa failed to disclose or otherwise acknowledge the RIC DOT that remained as an encumbrance on the

Subject Property.  A true and correct copy of the Debts and Liens Affidavit is attached hereto, as **Exhibit "S"**, and incorporated herein for all intents and purposes.

37.    Within the Debts and Liens Affidavit, Intervenor-Defendant Flores and Intervenor-Defendant Parsa, as affiants, sore under oath, in pertinent part that:

> "2.  Affiant[s] is desirous of selling the above described property and has requested WestStar Title, LLC, agent for Fidelity National Title Insurance Company, to issue a title policy guarantying the title of same to his purchaser.
>
> 3.  In connection with the issuance of such policy, Affiant makes the following statement of facts:
>
> g.  That Affiant knows of no adverse claim to the hereinabove described property and that so far as Affiant knows there are no encroachments or boundary conflicts...
>
> h.  That there are no outstanding loans, recorded or unrecorded, except as follows...
>
> i.  That Affiant has not heretofore sold, granted an option to purchase, contracted to sell or conveyed any part of said property other than in connection with this sale. That Affiant has not entered into any leases, recorded or unrecorded, or vendor contracts in connection with said property, except as follows...
>
> k.  No loans of any kind on such property except the following...
>
> 4.  Affiant recognizes that but for the making of the hereinabove statements of fact relative the hereinabove described property WestStar Title, LLC would not issue a title policy on said property and that such statements have been made as a material inducement for the issuance of such policy.

*See* Ex. "S".

38.    The Debts and Liens Affidavit was relied upon by WestStar, agent for Fidelity in issuing Owner's Policy of Title Insurance No. 744243-220016568 to the Insured (hereinafter referred to as the "Policy") in connection with the purchase of the Subject Property (the "Insured Transaction"). The Policy defined Fidelity's rights and obligations to the Insured in the event title to the Subject Property was subject to title defects covered by the Policy.  A true and correct copy of the Policy is attached hereto, as **Exhibit "T"**, and incorporated herein.

39.     Pursuant to an issuing agency contract entered on July 1, 2016 (the "Issuing Agency Contract"), WestStar is an agent of Intervenor/Plaintiff, Fidelity National Title Insurance Company for purposes of issuing title insurance assurances. A true and correct copy of the Issuing Agency Contract is attached hereto, as **Exhibit "U"**, and incorporated herein.

40.     According to the terms of the Issuing Agency Contract, as Fidelity's Agent, WestStar has certain contractual duties and obligations owed to Fidelity National Title Insurance Company, while acting as Fidelity's agent in issuing title assurances. There duties include, but are not limited to: "[r]eceive and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognize title insurance underwriting practices" and "[b]ase each policy issued on behalf of [Fidelity] upon a determination of insurability of title which includes...(ii) an examination of all documents affecting title to the subject property." *See* Ex. U.

41.     Under the Issuing Agency Contract, WestStar is required to indemnify Fidelity for any damages that result from "[e]rrors or omissions in any commitment, policy, endorsement or other title assurance which were disclosed by the application, by the abstracting, examination or other works papers or which were known to [WestStar], or which, in exercise of due diligence, should have been known to [WestStar]" and/or from "[f]ailure of any title insurance commitment, policy, endorsement or other title assurance to correctly reflect the status of title..." *See* Ex. U.

42.     On or about August 6, 2020, WestStar tendered a claim under the Policy regarding the RIC DOT that continued to encumber the title of the Subject Property (the "Claim"). Under the terms of the Policy, Fidelity accepted coverage for the Claim.

43.     By its investigation, Fidelity determined that the RIC DOT was in fact not satisfied at closing of the Insured Transaction and remained a valid lien on the title to the Subject Property, thereby adversely affecting the title, right and interest of the Insured in the Subject Property.

44.     On or about August 26, 2020, Uprising Investments, LLC ("Uprising"), as successor to RIC, provided a payoff to Fidelity to release the RIC DOT in the amount of $722,949.42 (the "Payoff Correspondence"). A true and correct copy of Payoff Correspondence is attached hereto, as **Exhibit "V"**, and incorporated herein.

45.     In fulfillment of its obligations to the Insured under the Policy, on September 21, 20120, Intervenor-Plaintiff tendered an amount totaling $722,949.42 to Uprising (the "Payoff") in exchange for the satisfaction and release of the RIC DOT encumbering the Subject Property. A true and correct copy of the Payoff is attached hereto, as **Exhibit "W"**, and incorporated herein.

46.     Thereafter, as a result of the Payoff, RIC assigned the RIC Note and its right and interest in the Guaranty, to Intervenor-Plaintiff (the "Assignment"). The Assignment is attached hereto, as **Exhibit "X"**, and incorporated herein by reference for all intents and purposes.

47.     Fidelity incurred loss in the total amount of $722,949.42.

48.     All loss incurred by Fidelity described in detail above, were the result of the actions, omissions, inaction, conduct and misconduct of Intervenor-Defendants and Intervenor-Plaintiff, WestStar.

49.     Fidelity demaned on WestStar for recoupment on September 22, 2020 (the "WestStar Demand Letter"). However, to date, WestStar has not indemnified Fidelity. A true and correct copy of the WestStar Demand Letter is attached hereto, as **Exhibit "Y"**, and incorporated herein.

50.     Fidelity demanded Intervenor-Defendant Flores for recoupment in the amount of $722,949.42 on or about October 15, 2020 (the "Flores Demand Letter"). However, to date, Intervenor-Defendant Flores has failed to reimburse Fidelity. A true and correct copy of the Flores Demand Letter is attached hereto, as **Exhibit "Z"**, and incorporated herein.

51.     Fidelity demanded Intervenor-Defendants Parsa and Jordan for the amount owed under the RIC Note as of October 15, 2020, $745,131.13, on or about October 15, 2020 (the "Guaranty Demand Letters"). However, to date, Intervenor Defendants Parsa and Jordan have not paid Intervenor-Plaintiff the amount owed under the RIC Note. A true and correct copy of the Guaranty Demand Letters is attached hereto, as **Exhibit "AA"**, and incorporated herein.

52.     Because Fidelity indemnified the Insured and buyer, IDEA Public Schools, as required under the terms of the Policy, Fidelity is subrogee to the Insured's rights, remedies, and causes of action against Intervenor-Defendants' acts and omissions which led to the Insured's losses, and is entitled to enforce all rights and causes of action against Intervenor-Defendants that the Insured accrued due to Intervenor-Defendants' acts and omissions that led to the Insured's losses. Fidelity is also entitled to enforce all rights and causes of actions Intervenor-Plaintiff has against the Intervenor-Defendants directly, due to the Intervenor-Defendants' acts and omissions in the Insured Transaction which led to Intervenor-Plaintiff's loss and expenses.

53.     Fidelity seeks to recover its rightful costs, expenses, fees, and damages in accordance with the following causes of action against Intervenor-Defendants and Intervenor-Plaintiff, WestStar.

## CAUSES OF ACTION

54.     Intervenor-Plaintiff incorporates the above allegations as if set forth fully hereafter.

INTERVENOR-PLAINTIFF'S DIRECT AND SUBROGATED CAUSES OF ACTION

55.     **Breach of Contract under the Guaranty.** Intervenor-Plaintiff sues Intervenor-Defendant Parsa and Intervenor-Defendant Jordan for breach of contract/indemnity under Guaranty. *See* Ex. "M".

56. In accordance with the Guaranty, Intervenor-Defendant Parsa and Intervenor-Defendant Jordan entered into a valid, written, agreement whereby Intervenor-Defendant Parsa and Intervenor-Defendant Jordan explicitly agreed to personally and individually guaranty the debt owed under the RIC Note.

57. As a result of the statements made in the aforementioned Guaranty, executed and acknowledged by Intervenor-Defendant Parsa and Intervenor-Defendant Jordan, Intervenor-Defendant Parsa and Intervenor-Defendant Jordan had a duty and obligation to satisfy the debt owed on the RIC Note. However, contrary to this express duty, Intervenor-Defendant Parsa and Intervenor-Defendant Jordan failed to cure any outstanding balances owed on the RIC Note despite the representations and obligations set forth by Intervenor-Defendant Parsa and Intervenor-Defendant in the Guaranty. Therefore, Intervenor-Defendant Parsa and Intervenor-Defendant Jordan are in breach of the terms of the Guaranty.

58. Due to Intervenor-Defendant Parsa and Intervenor-Defendant Jordan's breach of the RIC Note and the Guaranty, Intervenor-Plaintiff as holder of the RIC Note and Guaranty via the Assignment, Fidelity brings this cause of action against Intervenor-Defendant Parsa and Intervenor-Defendant Jordan for breach of the Guaranty. Fidelity suffered damages of the total amount owed under the RIC Note, which as of July 27, 2021, was $80,604.64, with interest and additional charges continuing to accrue.

59. **Breach of Contract under the Debts and Liens Affidavit.** In addition to or in in the alternative, without waiving the foregoing, Intervenor-Plaintiff sues Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya for breach of contract/indemnity under the above-referenced Debts and Liens Affidavit. *See* Ex. "S".

60.    In accordance with the Debts and Liens Affidavit, Intervenor-Defendant Flores and Intervenor-Defendant Parsa on behalf of Intervenor-Defendant Montoya represented that there were no other liens against the Property, including failing to identify the RIC DOT and the Agent relied on the Debts and Liens Affidavit's representations in issuing the Policy for the Intervenor-Plaintiff.

61.    The representations in the Debts and Liens Affidavit were false as the RIC DOT was not disclosed and remained as encumbrance on title of the Subject Property, thereby constituting a breach of the Debts and Liens Affidavit.

62.    As a result of the false statements executed and acknowledged by in the Debts and Liens Affidavit, Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya had a duty to indemnify Plaintiff for the Payoff as it was applied to the debt underlying the RIC DOT, which encumbered the Subject Property.  However, contrary to this express duty, Intervenor-Defendant Flores, Intervenor-Defendant Parsa, and Intervenor-Defendant Montoya failed to indemnify Intervenor-Plaintiff or otherwise satisfy the RIC DOT that remained as an encumbrance on title of the Subject Property.

63.    Therefore, Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya are in breach of the terms of the Debts and Liens Affidavit.

64.    Intervenor-Plaintiff, through the Agent, issued the Policy in reliance on the representations made by Intervenor-Defendant Flores, Intervenor-Defendant Parsa, and Intervenor-Defendant Montoya, in the Debts and Liens Affidavit.  As required under the Policy, Intervenor-Plaintiff indemnified the Insured, accordingly, Intervenor-Plaintiff suffered damages in the amount of $722,949.42, as described in detail above.

65. **Fraudulent Representation under the Debts and Liens Affidavit:** In addition to or in the alternative, without waiving the foregoing, Intervenor-Plaintiff sues Intervenor-Defendant Montoya, Intervenor-Defendant Flores, and Intervenor-Defendant Parsa for fraudulent representation under the provisions of the Debts and Liens Affidavit, as referenced in detail above. *See* Ex. "S".

66. Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya made direct representations to the Insured and Intervenor-Plaintiff under the Debts and Liens Affidavit that there were no outstanding loans, recorded or unrecorded encumbering the Subject Property or liens of any kind on such property. *Id.* The representations made in the Debts and Liens Affidavit were material in that it induced the Insured to purchase the Subject Property, and moreover induced Intervenor-Plaintiff to underwrite the Policy, issued by the Agent in the Insured Transaction. The Insured and Intervenor-Plaintiff relied on those representations their respective determination to transact with Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya for the purchase of the Subject Property and the issuance of the Policy.

67. Indeed, the representations made by Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya were false in that the RIC DOT still remained as an encumbrance on the Subject Property, which was untrue, deceptive and misleading. Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya knew their omission of the RIC DOT from the Debts and Liens Affidavit was false, or made the said representations recklessly, as a positive assertion, without the knowledge of its truth.

68. Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya made the representations in the Debts and Liens Affidavit with the intent to

obtain the maximum proceeds from the Insured Transaction, to avoid satisfying the debt and their obligations under the terms of the RIC DOT, and to persuade Intervenor-Plaintiff, through the Agent, in proceeding with the Insured Transaction and underwriting the Policy.

69.    Given the specific representations made in the Debts and Liens Affidavit, Intervenor-Plaintiff issued the Policy to the Insured and the Insured proceeded with the purchase of the Subject Property at Closing.  The reliance on the representations made was justified in that Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya, as affiants, specifically stated in the Debts and Liens Affidavit that, "No loans of any kind on such property…" and "Affiant recognizes that but for the making of the hereinabove statements of fact relative the hereinabove described property WestStar Title, LLC would not issue a title policy on said property and that such statements have been made as a material inducement for the issuance of such policy." *See Id.*

70.    The representations made by Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya in the Debts and Liens Affidavit caused Intervenor-Plaintiff direct damages in that it induced the Agent to issue the Policy that was underwritten by Intervenor-Plaintiff to insure the Insured that there were no encumbrances that remained against the Subject Property.  Because the RIC DOT remained as an encumbrance, as explained in detail above, Intervenor-Plaintiff had to remit payment to Uprising per the Payoff Correspondence, and incurred injuries in the amount of $722,949.42 via the Payoff.

71.    Further, Intervenor-Plaintiff was proximate injured in the amount of $722,949.42, in that said monies were remitted to Uprising to satisfy what was due and owing under the terms of the RIC DOT, in light of the obligations Intervenor-Plaintiff had to the Insured via the Policy. If the representations made by Intervenor-Defendant Flores, Intervenor-Defendant Parsa and

Intervenor-Defendant Montoya in the Debts and Liens Affidavit were not fraudulent, and the RIC DOT did not remain as a cloud on the title, the Insureds would not have invoked the Claim under their rights of the Policy and Intervenor-Plaintiff would not have been injured.

72.     **Negligent Misrepresentation under the Debts and Liens Affidavit**: In addition to or in in the alternative, without waiving the foregoing, Intervenor-Plaintiff sues Intervenor-Defendant Montoya, Intervenor-Defendant Flores, and Intervenor-Defendant Parsa for negligent misrepresentation under the provisions of the Debts and Liens Affidavit, as referenced in detail above. *Id.*

73.     Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya made representations to the Insured and Intervenor-Plaintiff in the Debts and Liens Affidavit in which Intervenor-Montoya, Intervenor-Defendant Flores and Intervenor-Defendant Parsa had a pecuniary interest; specifically to induce the Insured to purchase the Subject Property, and to induce Intervenor-Plaintiff to issue the Policy to insure the conveyance of the Subject Property to the Insured. *See* Ex "S".

74.     Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya supplied false information when they refrained from disclosing that the RIC DOT in the principal amount of $700,000.00, still remained an encumbrance on the Subject Property.

75.     In making these aforementioned false representations in the Debts and Liens Affidavit, Intervenor-Defendant Flores, Intervenor-Defendant Parsa, and Intervenor-Defendant Montoya did not use reasonable care in obtaining or communicating said information to the Insured or to Intervenor-Plaintiff.

76.    As a result, the Insured and Intervenor-Plaintiff justifiably relied on Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya's representations made in the Debts and Liens Affidavit as evidenced from the Insured purchasing the Subject Property, and Intervenor-Plaintiff being induced to issue the Policy to insure the Insured as to the Subject Property.

77.    Due to Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya's negligent misrepresentations, made in the Debts and Liens Affidavit, as described above, Intervenor-Defendant Flores, Intervenor-Defendant Parsa and Intervenor-Defendant Montoya proximately caused Intervenor-Plaintiff to suffer damages in the amount of $722,949.42; said amount being what Intervenor-Plaintiff had to remit in the to release the RIC DOT from the Subject Property.

78.    **Breach of Warranty of Title under the Insured's Vesting Deed:** In addition to or in in the alternative, without waiving the foregoing, Intervenor-Plaintiff sues Intervenor-Defendant Montoya for breach of warranty of title. Intervenor-Defendant Montoya is warrantor of the Insured's Vesting Deed. The Insured's Vesting Deed contains a covenant of warranty whereby Intervenor-Defendant Montoya warranted to: "TO HAVE AND TO HOLD the [Subject] Property together with all and singular the rights and appurtenances thereto in any way belonging unto Grantee, Grantee's heirs, representatives, *successors and assigns forever*, and Grantor does hereby bind Grantor, Grantor's heirs, representatives, successors, and assigns to warrant and *forever defend, all and singular, the property unto Grantee, Grantee's successors and assigns against every person whomsoever lawfully claiming or to claim the Property or any part thereof...*(emphasis added). *See* Ex. "R".

79.    In accordance with the Insured's Vesting Deed, the Intervenor-Defendant Montoya had the duty to the Insured, as Grantee, to warrant and forever defend and make full settlement with regards to any lawful adverse claims against the Subject Property.  However, as explained in detail above, Intervenor-Defendant Montoya has breached its duty under the Insured's Vesting Deed

80.    All conditions precedent have been performed or have occurred.  Indeed, as a result of Intervenor-Defendant Montoya's breach, the Insured was damaged in an amount within the jurisdictional limits of this court.  As such, because Intervenor-Plaintiff indemnified the Insured under the Policy and is therefore a subrogee of the Insured, Intervenor-Plaintiff suffered damages in the amount of $722,949.42, as described above.

81.    **Breach of Covenant against Encumbrances:**     In addition to or in in the alternative, without waiving the foregoing, Intervenor-Plaintiff sues Intervenor-Defendant Montoya for Breach of Covenant against Encumbrances.  It is clear, as described in detail above, that the Insured Vesting Deed, as executed by the Intervenor-Defendant Montoya, as grantor, explicitly contained language of a warranty deed creating a covenant against encumbrances.  The Insured Vesting Deed contains no language excluding the RIC DOT from its title covenants.

82.    When the Intervenor-Defendant Montoya conveyed the Subject Property, as Grantors, it breached the covenant of encumbrances upon execution and delivery of the Insured Vesting Deed by the RIC DOT continuing as encumbrances on the Subject Property.

83.    The Intervenor-Defendant Montoya represented and claimed to the Insured that it conveyed the Subject Property to them free and clear of any encumbrances that would affect the Insured's title to the Subject Property.

84.     Since Intervenor-Plaintiff is subrogated to the rights, claims, remedies and causes of action the Insured has against Intervenor-Defendant Montoya, Intervenor-Plaintiff is entitled to enforce those arising from the Insured Vesting Deed and brings this cause of action against the Intervenor-Defendant Montoya for breach of the covenant against encumbrances as it relates to the Insured's Vesting Deed.

85.     Intervenor-Defendant Montoya's breach of the covenant against encumbrances caused Intervenor-Plaintiff to be damaged in the amount of $722,949.42.

86.     **Unjust Enrichment:**  In addition to or in the alternative, without waiving the foregoing, Intervenor-Plaintiff sues the Intervenor-Defendants for unjust enrichment.  Intervenor-Plaintiff, in fulfillment of Intervenor-Plaintiff's duties under the Insured Policy and the Lender Policy, incurred loss in the amount of $722,949.42.

87.     Indeed, the losses were paid out by the Intervenor-Plaintiff as a result of Intervenor-Defendants' omission in satisfying or otherwise removing the RIC DOT on the Subject Property before conveying the Subject Property to the Insured.

88.     The Intervenor-Defendants benefitted from the Payoff, in that the various encumbrances secured obligations solely of the Intervenor-Defendants. Consequently, Intervenor-Defendants have wrongfully secured a benefit which would be unconscionable to retain. As such, the Intervenor-Defendants will be unjustly enriched if allowed to avoid reimbursing Intervenor-Plaintiff for the losses it incurred to clear title the Insured's title to the Subject Property, as described in detail above.

89.     **Breach of Contract under the Issuing Agency Contract:**  Intervenor-Plaintiff sues WestStar for breach of contract and indemnity under the Issuing Agency Contract. *See* Ex. "U".

90.     WestStar acted as Fidelity's agent under the Issuing Agency Contract in issuing the Policy.

91.     The Issuing Agency Contract requires WestStar to indemnify Fidelity for any damages that result from "[e]rrors or omissions in any commitment, policy, endorsement or other title assurance which were disclosed by the application, by the abstracting, examination or other works papers or which were known to [WestStar], or which, in exercise of due diligence, should have been known to [WestStar]"

92.     The Policy issued by WestStar did contain an error or omission in the commitment and policy that either was disclosed by the title examination or should have been discovered by WestStar, due to the RIC DOT remaining a valid lien against the Property.

93.     The Issuing Agency Contract requires WestStar to indemnify Fidelity for any damages that result from "[f]ailure of any title insurance commitment policy, endorsement, or other title assurance to correctly reflect the status of title..."

94.     The Policy issued by WestStar did not correctly reflect the status of title to the Property due to the RIC DOT remaining a valid lien against the Property.

95.     As a proximate result, Fidelity, in resolving the claim by paying to satisfy the RIC DOT, has been damaged in the amount of $722,949.42, as well as the attorney's fees and costs associated with bringing this instant litigation.

96.     Fidelity has demanded payment of $722,949.42 from WestStar, but, to date, WestStar has not indemnified Fidelity as required pursuant to the Issuing Agency Contract.

97.     Therefore, due to WestStar's breach of the Issuing Agency Contract, Fidelity brings this cause of action against WestStar to recover actual damages of $722,949.42 resulting from

WestStar Title's breach of contract and to recover reasonable and necessary attorney's fees and costs as permitted under the Issuing Agency Contract.

## CONDITIONS PRECEDENT

98.     All conditions precedent to Intervenor-Plaintiff's claims for relief have been performed or have occurred.

## COSTS / ATTORNEY'S FEES

99.     Fidelity is entitled to recover court costs and reasonable and necessary attorney's fees incurred as a result of Fidelity's claims of breach of contract and breach of warranty of title under the Texas Civil Remedies and Practices Code Section 38.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Fidelity prays that Intervenor-Defendants be cited to appear and file an answer herein, and after a trial on the merits, that Fidelity has and recovers judgment against said Intervenor-Defendants and Intervenor-Plaintiff, third-party Defendant, WestStar Title, for the following:

a.     Actual damages;

b.     Reasonable and necessary attorney's fees and costs;

c.     Prejudgment and post-judgment interest at the maximum rates permitted by law;

d.     All costs of court; and

e.     For such other and further relief to which Plaintiff may show itself to justly entitled.

Respectfully submitted,

**FIDELITY NATIONAL TITLE GROUP**

*//s// S. Shakira Ali Kelley*

**S. SHAKIRA ALI KELLEY**
State Bar No. 24107557
Shakira.Kelley@fnf.com
**GREGORY T. BREWER**
State Bar No. 00792370
Gregory.brewer@fnf.com
**FIDELITY NATIONAL LAW GROUP**
6900 Dallas Parkway, Suite 610
Plano, Texas 75024
Tel.: 972-812-6407
Fax.: 972-812-9408
**ATTORNEYS FOR FIDELITY
NATIONAL TITLE
INSURANCE COMPANY**

*ATTORNEYS FOR PLAINTIFF*
*Fidelity National Title Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served through the Texas electronic filing service to all counsel of record in this case on the 6th day of August, 2021 and in compliance with the Texas Rules of Civil Procedure.

*//s// S. Shakira Ali Kelley*
**S. SHAKIRA ALI KELLEY**