**EXHIBIT "18"**

REPORTER'S RECORD    COPY
TRIAL COURT CAUSE NO. 2020DCV2997
VOLUME 2 OF 3 VOLUMES

| | |
|---|---|
| ALBERT FLORES, Plaintiff, | ) |
| vs. | ) |
| KEYVAN PARSA, M.D. and MONTOYA PARK PLACE, INC., Defendants, | ) |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY and WESTSTAR TITLE, L.L.C., Intervenors/Third-Party Plaintiffs, | ) IN THE DISTRICT COURT ) OF EL PASO COUNTY, TEXAS |
| vs. | ) |
| KEYVAN PARSA, M.D., and MONTOYA PARK PLACE, INC., ALBERT FLORES and DEBORAH JORDAN, Third-Party Defendants, | ) 327TH JUDICIAL DISTRICT |
| and WESTMOUNT GROUP, INC. Intervenor-Third-Party Defendant. | ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
STATUS HEARING
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The 14th day of July, 2021, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Thomas A. Spieczny, Judge Presiding, via Zoom in accordance with the Supreme Court of Texas' Emergency Order Regarding the COVID-19 State of Disaster, held in El Paso, El Paso County, Texas:

Proceedings reported by machine shorthand utilizing computer-assisted realtime transcription.

1     MS. KELLEY: Yes, Your Honor. I -- I
2  apologize for being late.
3     THE COURT: No. I got you. I think -- I
4  understand you were in traffic. No problem.
5     MS. KELLEY: Thank you.
6     THE COURT: I think we're all good. So I
7  think we can -- I can see everybody now.
8     MS. KELLEY: Okay.
9     THE COURT: Okay. The way I remember how
10 we left it last week, we had a hearing, and I had had a
11 previous order to deposit some funds into the registry
12 of the Court. The defendant raised some issues at the
13 last hearing, and I modified my order. One of the
14 things that was raised was that there was some portion
15 of the funds that were encumbered, so I modified the
16 order to say that I believe 750,000 was to be deposited
17 into the registry of the Court by this coming Monday.
18 And it's my understanding that there are some issues or
19 concerns about that.
20    I have received from Mr. Brown one exhibit
21 that I think he intends to rely on during this hearing,
22 but that's as much as I know. So, Mr. Brown, I will let
23 you go first. I get a sense that you are the person
24 that wants to have something heard today.
25    MR. BROWN: That's correct, Judge. And

1  I'll just say that kind of in an abundance of caution I
2  went ahead and set a hearing just because if there was
3  anything that came up, I wanted to be able to have
4  something on the calendar before Monday.
5              But I'll just start out by saying that I
6  have had some discussions today with -- with Counsel for
7  WestStar and Fidelity.  And I don't mean to get into
8  those, but I did have some discussions with them.
9              I would like to offer into evidence the
10 Exhibit 1.
11             (Defendant's Exhibit 1, offered.)
12             MR. BROWN:  And -- and, really, it's a
13 document that is essentially similar or essentially the
14 same as Exhibit B to the original joint motion to compel
15 interpleader.  And it -- it simply shows that the funds
16 in the -- in these two accounts, the 1,038,000, is -- it
17 remains on deposit as of -- as of today.
18             So there was some discussion at the last
19 hearing about, well, we don't have the statement, so
20 that might lead people to believe that there's some
21 reason for a not recently updated statement, i.e., that
22 the funds were not there.  But I would offer that into
23 evidence just for the purpose of -- of putting that
24 concern to rest.
25             THE COURT:  Are there any objections to

```
1  Exhibit Number 1?
2              MR. BREWER:  No objection, Your Honor.
3              MR. KIRK:  I don't know what the exhibit
4  is, Your Honor.
5              THE COURT:  Have you not seen it?  Okay.
6  What I --
7              MR. KIRK:  I have 4 pages --
8              THE COURT:  -- Exhibit Number 1 appears to
9  be two parts.  There is a asset management exhibit
10 generated by Wells Fargo, which I think summarizes a
11 treasury money market fund.  And then there is an
12 exhibit which is a letter dated July 14th to Westmount,
13 essentially saying that there is a -- an amount of
14 $338,000 in that one.  And then I think there was
15 another one from them saying that there is over 700,000.
16 And that -- those are also dated July 14th.  So as of
17 July 14th it looks like there was a little over a
18 million deposited in WestStar.
19             MR. BREWER:  Wells Fargo.
20             THE COURT:  In West- -- correct.  Thank
21 you.  Excuse me.  Thank you for correcting me.
22             Are there objections to the exhibits?
23             MR. KIRK:  Yes, Your Honor. This is a
24 roundabout way of objecting, I think.  We don't have a
25 pleading in front of us.  I don't know what relief it is
```

1 that Mr. Parsa is going to be asking for, so, you know,
2 this is kind of an ambush.
3     THE COURT: Well --
4     MR. KIRK: I don't know where it's going.
5     THE COURT: I'm not -- I have not looked
6 thoroughly at all the pleadings. I know there are some
7 motions that were filed. I assume this exhibit is to
8 support those motions.
9     Is that correct, Mr. Brown?
10     MR. BROWN: That's correct. I -- I filed
11 a -- a motion for reconsideration, and -- and we've also
12 filed a reply to the response from Mr. Kirk and from
13 Mr. Brewer on behalf of their respective clients to that
14 motion. So this is in support of our motion and reply.
15     MR. KIRK: I think those were the pleadings
16 for the hearing we had last week, Your Honor, and I
17 don't know what the pleadings are for the hearing we're
18 having today.
19     THE COURT: To my knowledge there are none.
20 I think I had -- at the end of last week's hearing I
21 said, Here is what I want to do, but if snags or
22 problems arise, I wanted to be informed of them. And I
23 think I have been informed, but I am not aware -- as a
24 matter of fact, I asked Ms. Alarcon. I don't think
25 anybody has filed any subsequent pleadings since our

```
 1  hearing last week.  Is -- is that correct?
 2              MR. BROWN:  That's -- that's correct, to my
 3  knowledge.
 4              MS. KELLEY:  Yes, Your Honor, that's
 5  correct.
 6              THE COURT:  Okay.  Okay.  Well, I will
 7  admit the exhibits.
 8              (Defendant's Exhibit 1, admitted.)
 9              THE COURT:  And, Mr. Brown, let me ask
10  you -- yeah, let me ask you a couple of questions about
11  the part from Wells Fargo.
12              First of all, whatever that treasury money
13  market fund descriptive document is, it lists what the
14  returns are and the performance and does it monthly, and
15  it sort of ranges from a high of 1.46 percent in
16  December of 2019 and it goes all the way down to
17  .01 percent in December of 2020.  I remember I did have
18  some discussion with your client, and he was telling me
19  he thought there was an eight-to-10-percent return on
20  this -- this money.  I -- I assume he was incorrect in
21  those statements last -- last week?
22              MR. BROWN:  Judge, I -- I guess what I
23  would say is, I -- I don't know.  I -- I don't know
24  whether the -- the -- the yield over time somehow
25  calculated is -- is what he said or if it's not.  I
```

1 understand what the Court is saying about the -- the
2 30-day yield, but I don't -- I don't pretend to know how
3 it translates into any kind of a -- I guess an annual
4 yield. I don't know.
5       THE COURT: Okay. And, also, on this
6 document from Wells Fargo it does say that there is a
7 investment minimum of 10 million, and it's my
8 understanding substantially less than that has been
9 deposited. So I'm not sure this description of this
10 fund and what it yields would be applicable to the money
11 that you-all are fighting over.
12       Anyway, those are my observations. I'll
13 overrule the objection. It's -- it's admitted.
14       So where are we at? Can the money be
15 deposited by Monday in the registry of the Court?
16       MR. BROWN: That's another concern that I
17 wanted to raise, Judge, is that my understanding -- and,
18 again, I don't -- I can -- I can only do -- do so much
19 based on my understanding of what the bank requires.
20 But my understanding from them is that it takes 10 to 15
21 days for them to sell the shares once the account is
22 liquidated. And I'm assuming, for instance, if it's
23 liquidated at $750,000, they have to sell the equivalent
24 of shares to equal $750,000 to allow that amount of
25 money to be withdrawn. So --

1 STATE OF TEXAS )
2 COUNTY OF EL PASO )
3
4     I, Maria I. Stallings, Official Court Reporter in
5 and for the 327th District Court of El Paso County,
6 State of Texas, do hereby certify that the above and
7 foregoing contains a true and correct transcription of
8 all portions of evidence and other proceedings requested
9 in writing by counsel for the parties to be included in
10 this volume of the Reporter's Record, in the
11 above-styled and numbered cause, all of which occurred
12 in open court or in chambers and were reported by me.
13     I further certify that this Reporter's Record of
14 the proceedings truly and correctly reflects the
15 exhibits, if any, offered by the respective parties.
16     I further certify that the total cost for the
17 preparation of this Reporter's Record is $230.40 and was
18 paid by Mr. James Brewer, Esq.
19     WITNESS MY OFFICIAL HAND this the 23 rd day of
20 July, 2021.
21
22     /s/ Maria I. Stallings
    MARIA I. STALLINGS, Texas CSR# 8229
23     Official Court Reporter
    327th District Court
24     500 E. San Antonio, Rm. 606
    El Paso, TX 79901
25     (915) 546-2032
    Expires May 31, 2023