IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | |
| WESTMOUNT GROUP, INC. | § | Case No. 21-30633-HCM-11 |
| | § | |
| Debtor. | § | |

### AMENDED OBJECTION TO APPLICATION OF STEVEN SATHER
### TO BE EMPLOYED AS ATTORNEY FOR THE DEBTOR-IN-POSSESSION

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

Now comes the creditor ALBERT FLORES (hereinafter "FLORES") in these Subchapter
V of Chapter 11 proceedings, and through his attorney undersigned files this Amended Objection
to the Application of STEVEN SATHER to be employed as counsel for the Debtor
WESTMOUNT GROUP, INC. in this case, and would show as follows:

1.

Mr. SATHER's representation of WESTMOUNT GROUP, INC. began in State Court
proceedings on July 16, 2021 when he filed a Petition in Intervention for WESTMOUNT GROUP,
INC. that is hereto attached in copy as Exhibit "A."

### BACKGROUND

2.

The action in the 327th District Court was begun by FLORES as a suit, primarily against the
Defendant KEYVAN PARSA (hereinafter "PARSA"), to compel him to return, as an unjust
enrichment, an overpayment of approximately $720,000 at a real estate closing at WESTSTAR
TITLE COMPANY ("WESTSTAR TITLE") on June 30-July 1, 2020.*

---

* FLORES and PARSA were Co-Initial Directors in the seller entity, MONTOYA PARK
PLACE, INC. The property being sold was Tract 3, Johannsen Subdivision (hereinafter "Tract 3"), to

1

3.

It appears that Mr. SATHER had been informed that WESTMOUNT GROUP, INC. was the owner of two money market certificates at WELLS FARGO BANK, in amounts of "at least" $700,000 and "at least" $338,000, and that the 327th District Court had entered several orders about what would have to be done with those funds. In chronological sequence, those orders were:

    a) An Agreed Temporary Restraining Order ("TRO") dated January 4, 2021, that PARSA and MONTOYA PARK PLACE, INC. would cease concealing the whereabouts of the funds and would make no alienations of them. In connection with the TRO, PARSA and MONTOYA PARK PLACE, INC. showed the 327th District Court statements from WELLS FARGO BANK showing the money market certificates to be in the name of WESTMOUNT GROUP, INC., in the

---

IDEA PUBLIC SCHOOLS for $1.95 million. PARSA closed his part of the closing on June 30, 2020. FLORES closed his part on July 1, 2020. Separate closings were necessary because there had never been an organizational meeting for MONTOYA PARK PLACE, INC. No officers had been elected, no stock had been issued, no by-laws drafted and approved. PARSA had obtained a Certificate of Incorporation on February 5, 2020, but he never made any capital contribution. FLORES' capital contribution was title to Tract 3, on February 9, 2020. FLORES had foreclosed his second-lien note against Tract 3 with a bid of $558,000 on February 4, 2020. The first-lien note on Tract 3 was held by RIGHT IMMIX CAPITAL, LLC (hereinafter "RIGHT IMMIX"). The balance still owing on it, as of the WESTSTAR TITLE COMPANY closing June 30-July 1, 2020 was approximately $720,000.00. The RIGHT IMMIX note should have been picked up on the title commitment, but WESTSTAR TITLE missed it. FLORES went to his part of the closing on the morning of July 1, 2020, expecting to see a seller's statement figure of about $1,109,000.00 cleared by MONTOYA PARK PLACE, INC. Instead the figure was $1,829,295.40. FLORES knew something was wrong, but decided to talk to PARSA about it. FLORES went to see PARSA the next day, July 2. PARSA had opened a checking account at WESTERN HERITAGE BANK in the name of MONTOYA PARK PLACE, INC. PARSA was the only authorized signatory on the account, and PARSA had the only checks. PARSA had instructed WESTSTAR TITLE to wire the closing proceeds to the WESTERN HERITAGE BANK account. The funds arrived there on July 1, 2020. FLORES had "done the math" by the time he met with PARSA, and FLORES realized the RIGHT IMMIX first lien note had not been paid off by WESTSTAR TITLE. FLORES told PARSA they should put the money back with WESTSTAR. PARSA would not hear of it. He told FLORES that MONTOYA had paid $10,000 for a title policy and was covered by the insurance for WESTSTAR's mistake; and that he (PARSA) had so many losses to his co-shareholder DEBORAH JORDAN in the development of TRACT 3, that the money was rightfully his to keep. FLORES then told PARSA that he (FLORES) wanted no part of keeping the $720,000 windfall, that PARSA was on his own if he tried keeping it, and that all he (FLORES) wanted was his half of the legitimate proceeds, plus reimbursement for monthly payments he had made to RIGHT IMMIX, to keep them current.

amounts of "at least" $700,000 and "at least" $338,000. *See* Exhibits "B-C" hereto attached.

b) The TRO became an Agreed Temporary Injunction on January 27, 2021. Again the WELLS FARGO BANK certificates in the name of WESTMOUNT GROUP, INC. were shown to the Court.

c) There followed a Motion to deposit the funds contained in the money market certificates, into the registry of the 327th District Court, which the Judge, The Honorable Thomas A. Spieczny, granted. PARSA and MONTOYA PARK PLACE, INC. moved to vacate the order to deposit. Hearings on the *vacatur* issue took place on May 18, 2021, June 8, 2021 and July 14, 2021, at which PARSA contended the following:

   I. The Order to deposit was unnecessary because he was in complete control of the funds and they were absolutely safe. May 18, 2021 transcript, at pages 9-10, hereto appended as Exhibit "D."

   II. The story changed on June 8. The 327th District Court was informed there were three loans at WELLS FARGO BANK for which the certificates were collateral, and that there were 4.5% penalties for early withdrawals of the certificates. PARSA refused to divulge any maturity dates. *See* the transcript hereto attached as Exhibit "D" at its pages 19-22.

   III. The hearing on July 14th again presented harms to the money market certificates that would occur, if the money had to be deposited into the registry. Judge Spieczny accordingly lowered the amount of the ordered deposit to $750,000, in the obvious expectation that the deposit would have to come from the money market certificates. *See* the transcript at Exhibit "E," pages 48-56.

3

4.

Meanwhile, TROY C. BROWN, who is counsel of record in the 327th District Court whom for the Co-Defendants KEYVAN PARSA and MONTOYA PARK PLACE, INC., filed a Petition for Writ of Mandamus for them in the Eighth Judicial District Court of Appeals, asking for a Mandate to Vacate the deposit Order. The Writ of Mandamus was denied, 18 days after it was filed. *See* Exhibits "F" and "G" hereto attached.

5.

Still another Motion to Vacate the deposit order was filed by Mr. SATHER on July 16, 2021. No order has been entered upon it. That Motion concludes with a statement that if $750,000 from the money market certificates have to be placed in the registry, WESTMOUNT GROUP, INC. will be "out of business." *See* Exhibit "H" hereto attached.

6.

The Defendants in the 327th District Court now are three: PARSA, MONTOYA PARK PLACE, INC., and WESTMOUNT GROUP, INC. Amended Petitions filed by FLORES on July 27, 2021, filed by WESTSTAR TITLE on August 19, 2021, and filed by FIDELITY NATIONAL TITLE INSURANCE on August 6, 2021, all named WESTMOUNT GROUP, INC. as the fraudulent transferee of PARSA or MONTOYA, under Tex. Business Commerce Code §§ 24.005 and 24.006.

7.

None of the Orders to Deposit was ever obeyed.

8.

A marked change occurred in the legal and factual position of WESTMOUNT GROUP, INC., however, when Mr. SATHER filed the Schedules and Statement of Affairs in this bankruptcy case. One can only surmise why the Schedules were filed 11 days late, and without any Motion for Extension of Time. What the Schedules and Statement of Affairs of September 17 reveal, are the following:

4

a) The Debtor has no money market certificates. *See* Schedule A/B.

b) The Statement of Affairs reveals no transfers of money market certificates.

c) Surprise! WESTMOUNT GROUP, INC. owes a promissory note for $1,461,000 to MONTOYA PARK PLACE, INC., shown on Schedule D, supposedly secured by "all assets" of WESTMOUNT GROUP, INC. There is no financing statement on file in Austin. And "all assets" are ascribed a value of only $794,000. The money market certificates are just gone, with no explanation. And PARSA and never mentioned any note payable to MONTOYA PARK PLACE, INC. at any point in the 327th District Court proceedings.

d) The note for $1,461,000 from WESTMOUNT GROUP, INC. payable to MONTOYA PARK PLACE, INC. is probably worthless. The note drastically weakens the chances that FLORES, WESTSTAR, and FIDELITY will be able to recover anything against MONTOYA PARK PLACE, INC. in the 327th District Court litigation. MONTOYA PARK PLACE's only asset was the Tract 3 proceeds. MONTOYA PARK PLACE, INC. apparently transferred all of the $1,461,000.00 that was in the money market certificates, to WESTMOUNT GROUP, INC. on July 20,2020. At the 341 meeting Dr. PARSA testified that the note was payable in annual level installments over thirty years—hardly the equivalent of the liquid assets for which the note was given. The Statement of Affairs reveals that WESTMOUNT GROUP, INC. has no income, and the § 1116 Statement (Doc.#12) shows no tax returns have been filed, and no statements of operation, balance sheets, or cash flow statements have been maintained.

e) The Statement of Financial Affairs, part 6, shows that within five days of July 14, 2021 when the last Motion to Vacate the deposit order was denied in the 327th District Court and within 3 days of Mr. SATHER's Plea in Intervention for WESTMOUNT GROUP, INC., Mr. PARSA orchestrated six transfers of real

5

properties owned by the Debtor, having a combined CAD value of $583,776, to insiders** in exchange for 100% financing promissory notes having a combined face amount of $349,552.09,

f) The assets left with the Debtor have nowhere near a value of $794,000.

g) The Schedules also reveal that there are now no loans owed by WESTMOUNT GROUP, INC. to WELLS FARGO BANK.

9.

Perplexed, and hoping for some explanation, the undersigned attorney wrote to Mr. SATHER on September 20, 2021, and got the reply hereto attached as Exhibit "I," in email string. Defending the notes receivable now substituted for the transferred liquid assets as their equivalent is evidently going to be Mr. SATHER's agenda, in this case, instead of restoring the assets transferred in fraud of creditors.

10.

Through concealed transfers of the money market certificates and exchanges of real estate notes for less valuable notes, Mr. PARSA has, within two months, depleted this estate with the obvious intention of defeating, hindering, and delaying creditors. Mr. SATHER may or may not be the architect of the transfers for less than adequate value, but he is certainly an apologist for them. The certificates are not glimpsed at all in a promissory note payable to MONTOYA for $1.461 million, and the violation of the state court temporary injunction has no just excuse. It is casuistry to argue, as Mr. SATHER has, that WESTMOUNT GROUP, INC. was not party to the temporary injunction, and that the deposit orders do not specify the money market certificates. WESTMOUNT GROUP, INC. came to the injunction when it intervened in the state court case, after PARSA represented to the Plaintiffs and the court that the proceeds of Tract 3 were safe in the

_____

** These transfers to insiders are discussed in more detail, and with supporting documentation, in FLORES' "First Amended Supplement to his Motion to Dismiss this case as a bad-faith filing, (Doc. #17), which is here incorporated by reference. At the 341 meeting it was disclosed that the transactions were refinances of existing real estate lien notes that were in default. The insiders were given lower payments, and more time to pay in the refinancing.

6

WELLS FARGO BANK money market certificates and would not be alienated. WESTMOUNT GROUP, INC.'s principal officer KEYVAN PARSA was party to the temporary injunction, and WESTMOUNT GROUP, INC. has acted through him. Putting on his corporate hat does not justify the blatant acts of alienation now.

### 11.

The employment of Mr. SATHER is not in the best interests of the estate. It appears a Chapter 7 Trustee should be appointed, who can be depended on to pursue all the evasions of Mr. PARSA as principal of the Debtor.

### 12.

Any hope the undersigned attorney had, that Mr. SATHER would, as capable and experienced bankruptcy counsel, be advising PARSA to gather assets to try to get creditors paid fairly in this case, disappeared when the Schedules and Statement of Affairs were filed and no sound justification was forthcoming for the depletion of this estate.

WHEREFORE, PREMISES CONSIDERED, FLORES prays that the Application of STEVEN SATHER to be employed as counsel for the Debtor WESTMOUNT GROUP, INC. be denied for the reasons previously pleaded. Further FLORES prays for all other relief deserved in the circumstances, general or special, at law or equity.

Respectfully submitted this 19th day of October, 2021.

/s/ E.P. Bud Kirk

E.P. BUD KIRK
Texas State Bar No. 11508650
600 Sunland Park Dr.
Building Four, Suite 400
El Paso, TX 79912
(915) 584-3773
(915) 581-3452 facsimile
budkirk@aol.com
Attorney for ALBERT FLORES

7

## CERTIFICATE OF SERVICE

I do hereby certify that on this _18th_ day of October, 2021, I did cause a copy of the foregoing Amended Objection to Application of Steven Sather to be employed as counsel for the Debtor Westmount Group, Inc. to be mailed to <u>Jim Rose</u>, Attorney for the United States Trustee, 615 E. Houston, Ste. 533, P.O. Box 1539, San Antonio, TX 78295-1539; to <u>Brad W. Odell</u>, Subchapter V Trustee, 1500 Broadway, Ste. 700, Lubbock, TX 79401-3169; to <u>Westmount Group, Inc.</u>, 810 N. Kansas Street, El Paso, TX 79902-5207; to <u>Stephen W. Sather</u>, 7320 N MoPac Expy, Ste. 400, Austin, TX 78731; to <u>City of El Paso</u>, c/o Don Stecker, 112 E. Pecan St., Ste. 2200, San Antonio, TX 78205-1588; to <u>Weststar Title, LLC</u>, c/o James W. Brewer, 221 N. Kansas, Ste. 1700, El Paso, TX 79901-1401; and to <u>all persons who have been identified to date as parties in interest in this case, as shown on the attached list</u>.

/s/ _E.P. Bud Kirk_

E.P. BUD KIRK

4063.007-MC-100821

Fidelity National Title Insurance Co.
c/o Shakira Kelley
6900 Dalls Parkway, Ste. 610
Plano, TX 75024-7164

Albert Flores
3605 Arcadia
El Paso, TX 79902

Keyvan Parsa
7604 Plaza Redonda
El Paso, TX 79912-8402

Keyvan Parsa, M.D. and
Montoya Park Place, Inc.
c/o Mark Walker
221 N. Kansas, Ste. #2000
El Paso, TX 79901

Manny Jemente
Acala Investments
6044 Gateway Blvd. East
El Paso, TX 79905-2023

Shabnam Izadpanahi
36 Micmac Crescent
North York, ON M2H2K2

Troy Chandler Brown
P.O. Box 221588
El Paso, TX 79913

Troy C. Brown
c/o Mannie Kalman
311 Montana, Bldg. A-2, Ste. 106
El Paso, TX 79902

Ulrick Moise
Palacio de Paquim
C. Durango 2047
32575 CD Juarez
Chih. Mexico

Wells Fargo Business
P.O. Box 6995
Portland, OR 97228-6995

**EXHIBIT "A"**

CAUSE NO. <u>2020DCV2997</u>

| | | |
|---|---|---|
| **ALBERT FLORES** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **KEYVAN PARSA, M.D. and** | § | |
| **MONTOYA PARK PLACE, INC.** | § | |
| | § | |
| **Defendants,** | § | |
| | § | |
| **FIDELTIY NATIONAL TITLE** | § | |
| **INSURANCE COMPANY and** | § | **EL PASO COUNTY, TEXAS** |
| **WESTSTAR TITLE, INC.** | § | |
| | § | |
| **Intervenors/Third Party Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **KEYVAN PARSA, M.D. and** | § | |
| **MONTOYA PARK PLACE, INC.,** | § | |
| **ALBERT FLORES, and DEBORAH** | § | |
| **JORDAN** | § | |
| | § | |
| **Third Party Defendants,** | § | **327TH JUDICIAL DISTRICT** |
| | § | |
| **and** | § | |
| | § | |
| **WESTMOUNT GROUP, INC.** | § | |
| | § | |
| **Intervenor-Third Party Defendant** | § | |

## <u>PLEA IN INTERVENTION OF WESTMOUNT GROUP, LLC</u>

COMES NOW Westmount Group, Inc. Intervenor-Third Party Defendant, and files this
Plea in Intervention and would shows as follows:

1.    Intervenor Westmount Group, Inc. is a Texas corporation with its principal place
of business in El Paso County, Texas.

2.      Westmount Group, Inc. has a justiciable interest in this suit because it is the owner of funds which have been ordered to be tendered into the registry of the court.

3.      Westmount Group, Inc. was incorporated on December 7, 2012. It has multiple shareholders. It is in the business of owning real estate and engaging in lending.

4.      On July 17, 2020, Westmount Group, Inc. received two deposits of funds which it used to open brokerage accounts with Wells Fargo Bank in the amounts of approximately $700,000 and $338,000 as shown by Exhibit A.

5.      On August 7, 2020, Westmount Group, Inc. signed a line of credit with Wells Fargo Bank, a true and correct copy of which is attached as Exhibit B.

6.      On September 16, 2020, Plaintiff Albert Flores filed this action.

7.      At a later date, Fidelity National Title Insurance Company and WestStar Title, LLC intervened in this action.

8.      On or about April 21, 2021, Fidelity and WestStar filed a Joint Motion to Compel Interpleaders of Funds Into Registry of Court.

9.      The Court granted the Motion without a hearing on April 26, 2021.

10.     Although the funds sought to be interpleaded were the property of Westmount Group, Inc., Westmount was not made a party to the motion nor was it given notice.

11.     Notwithstanding the filing of several motions for reconsideration, the Court has continued to order that the funds belonging to Westmount Group, Inc. be deposited into the registry of the Court.

12.     Westmount Group, Inc. denies each and every, all and singular, of the allegations of Fidelity National Title Insurance and WestStar Title, Inc. and demands strict proof thereof.

WHEREFORE, PREMISES CONSIDERED, Westmount Group, Inc. prays that it be granted leave to intervene in this action and for such other and further relief, at law and in equity to which it may be entitled.

Respectfully Submitted,

**BARRON & NEWBURGER, P.C.**
7320 N. Mopac Expy, Suite 400
Austin, Texas 78731
(512) 649-3243
(512) 476-9253 Facsimile

/s/ Stephen W. Sather
Barbara M. Barron (SB No1817300)
Stephen Sather (SBN 7657520)
**ATTORNEY FOR INTERVENOR**

## CERTIFICATE OF SERVICE

I certify that a true copy of this document was served in accordance with Rule 21a of the Texas Rules of Civil Procedure on the following on this the 16th day of July 2021.

All Counsel of record by electronic filing manager.

/s/Stephen W. Sather
Stephen W. Sather

Institutional Class shares



# 100% Treasury Money Market Fund

All information is as of 12-31-20 unless otherwise indicated. Information is subject to change.

## Key Facts

| | |
|---|---|
| S&P rating | AAAm |
| Moody's Rating | Aaa-mf |
| Share Class | Institutional |
| Investment Minimum | $10 million |
| Ticker | WOTXX |
| CUSIP | 94988A759 |
| Gross Expense Ratio | 0.23% |
| Net Expense Ratio | 0.20% |
| Total fund assets | $18.9 billion |
| Fund Manager | Laurie R. White, Jeffrey L. Weaver, CFA, Michael C. Bird, CFA |
| Fund Inception Date | 12-03-90 |
| Class Inception Date | 10-31-14 |
| Trading deadline | 1 p.m. Eastern Time |

## Performance

Current yield as of 12-31-20

| | 7-day SEC yield (%) |
|---|---|
| | 0.01 |

| Month | 30-day current yield (%) |
|---|---|
| December 2019 | 1.46 |
| January 2020 | 1.42 |
| February 2020 | 1.41 |
| March 2020 | 0.91 |
| April 2020 | 0.25 |
| May 2020 | 0.09 |
| June 2020 | 0.05 |
| July 2020 | 0.05 |
| August 2020 | 0.01 |
| September 2020 | 0.01 |
| October 2020 | 0.01 |
| November 2020 | 0.01 |
| December 2020 | 0.01 |

Average annual total returns (%) as of 12-31-20

| 1 year | 3 year | 5 year | 10 year | Since inception |
|---|---|---|---|---|
| 0.36 | 1.35 | 0.98 | 0.49 | 2.30 |

## Principal investment strategies

Seeks current income exempt from most state and local individual income taxes, while preserving capital and liquidity. Invests in high-quality, short-term money market instruments that consist of U.S. Treasury obligations.

## Portfolio composition

% of portfolio
▨ Treasury debt: (100)



Total : 100%

## Portfolio maturity schedule (%)



## Money market fund statistics

Weighted average maturity: 53 days
Weighted average life: 110 days

Daily liquid assets: 100%
Weekly liquid assets: 100%

*The Manager has contractually committed through May 31, 2021, to waive fees and/or reimburse expenses to the extent necessary to cap the fund's total annual fund operating expenses after fee waivers at the amounts shown above. Brokerage commissions, stamp duty fees, interest, taxes, acquired fund fees and expenses (if any), and extraordinary expenses are excluded from the expense cap. The Manager may also voluntarily waive or reimburse additional fees and expenses, and such voluntary waivers may be discontinued or modified at any time without notice. Without these reductions, the fund's seven-day current yield would have been -0.09%. Prior to or after the commitment expiration date, the cap may be increased or the commitment to maintain the cap may be terminated only with the approval of the Board of Trustees. The expense ratio paid by an investor is the net expense ratio (the total annual fund operating expenses after fee waivers) as stated in the prospectus.*

**Figures quoted represent past performance, which is no guarantee of future results and do not reflect taxes that a shareholder may pay on an investment in a fund.** Investment returns will fluctuate. The fund's yield figures more closely reflect the current earnings of the fund than the total return figures. Current performance may be lower or higher than the performance data quoted and assumes the reinvestment of dividends and capital gains. Current month-end performance is available at the fund's website, wfam.com.

Money market funds are sold without a front-end sales charge or contingent deferred sales charge. Other fees and expenses apply to an investment in the fund and are described in the fund's current prospectus.

(Continued on next page.)

 **Advisors**

Wells Fargo Advisors
MAC H0005-035
One North Jefferson Avenue
St. Louis, MO 63103

January 14, 2021

Westmount Group, Inc.
7604 Plaza Redonda Drive
El Paso, TX 79912-8402

**RE: Verification of Assets for Account** ▮▮▮▮▮

Dear Westmount Group, Inc.:

This letter confirms that:

(i) You maintain a brokerage account with Wells Fargo Clearing Services, LLC ("Wells Fargo Advisors"), numbered ▮▮▮▮ ("Account"), established on 07/20/2020;

(ii) As of 01/13/2021, the Account maintains a total account value in excess of $338,000.00.

This letter is provided for informational purposes and does not represent future Account value, if your Account will remain with Wells Fargo Advisors in the future, any purposes not mentioned in this letter, or the creditworthiness of the person(s) referenced within. Wells Fargo Advisors will have no liability with any party's reliance on this letter or the information within.

Sincerely,

*Denise Gilles*

**Denise Gilles**
**Securities Operations Services Specialist 3**
**Client Mailings – Verifications & Inquiries**



Investment and Insurance Products are:
• Not Insured by the FDIC or Any Federal Government Agency
• Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate
• Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested



© 2019 Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC and Wells Fargo Advisors Financial Network, LLC, separate registered broker-dealers and non-bank affiliates of Wells Fargo & Company

Institutional Class shares



# 100% Treasury Money Market Fund

All information is as of 12-31-20 unless otherwise indicated. Information is subject to change.



## Key facts

| | |
|---|---|
| S&P rating | AAAm |
| Moody's Rating | Aaa-mf |
| Share Class | Institutional |
| Investment Minimum | $10 million |
| Ticker | WOTXX |
| CUSIP | 94988A759 |
| Gross Expense Ratio | 0.23% |
| Net Expense Ratio | 0.20% |
| Total fund assets | $18.9 billion |
| Fund Manager | Laurie R. White, Jeffrey L. Weaver, CFA, Michael C. Bird, CFA |
| Fund Inception Date | 12-03-90 |
| Class Inception Date | 10-31-14 |
| Trading deadline | 1 p.m. Eastern Time |

## Performance

Current yield as of 12-31-20

| | 7-day SEC yield (%) |
|---|---|
| | 0.01 |

| Month | 30-day current yield (%) |
|---|---|
| December 2019 | 1.46 |
| January 2020 | 1.42 |
| February 2020 | 1.41 |
| March 2020 | 0.91 |
| April 2020 | 0.25 |
| May 2020 | 0.09 |
| June 2020 | 0.05 |
| July 2020 | 0.05 |
| August 2020 | 0.01 |
| September 2020 | 0.01 |
| October 2020 | 0.01 |
| November 2020 | 0.01 |
| December 2020 | 0.01 |

Average annual total returns (%) as of 12-31-20

| 1 year | 3 year | 5 year | 10 year | Since inception |
|---|---|---|---|---|
| 0.36 | 1.35 | 0.98 | 0.49 | 2.30 |

## Principal investment strategies

Seeks current income exempt from most state and local individual income taxes, while preserving capital and liquidity. Invests in high-quality, short-term money market instruments that consist of U.S. Treasury obligations.

## Portfolio composition

% of portfolio

Treasury debt: (100)



Total : 100%

## Portfolio maturity schedule (%)

| | |
|---|---|
| 1-7 days | 25 / 21 |
| 8-29 days | 23 / 23 |
| 30-89 days | 42 / 40 |
| 90-179 days | 15 / 13 |
| 180-269 days | 2 |
| 270+ days | 13 / 2 |

WAL
WAM

## Money market fund statistics

Weighted average maturity: 53 days
Weighted average life: 110 days

Daily liquid assets: 100%
Weekly liquid assets: 100%

*The Manager has contractually committed through May 31, 2021, to waive fees and/or reimburse expenses to the extent necessary to cap the fund's total annual fund operating expenses after fee waivers at the amounts shown above. Brokerage commissions, stamp duty fees, interest, taxes, acquired fund fees and expenses (if any), and extraordinary expenses are excluded from the expense cap. The Manager also voluntarily waive or reimburse additional fees and expenses, and such voluntary waivers may be discontinued or modified at any time without notice. Without these reductions, the fund's seven-day current yield would have been -0.09%. Prior to or after the commitment expiration date, the cap may be increased or the commitment to maintain the cap may be terminated only with the approval of the Board of Trustees. The expense ratio paid by an investor is the net expense ratio (the total annual fund operating expenses after fee waivers) as stated in the prospectus.*

*Figures quoted represent past performance, which is no guarantee of future results and do not reflect taxes that a shareholder may pay on an investment in a fund. Investment returns will fluctuate. The fund's yield figures more closely reflect the current earnings of the fund than the total return figures. Current performance may be lower or higher than the performance data quoted and assumes the reinvestment of dividends and capital gains. Current month-end performance is available at the fund's website, wfam.com.*

*Money market funds are sold without a front-end sales charge or contingent deferred sales charge. Other fees and expenses apply to an investment in the fund and are described in the fund's current prospectus.*

(Continued on next page.)

 **Advisors**

Wells Fargo Advisors
MAC H0005-035
One North Jefferson Avenue
St. Louis, MO 63103

January 14, 2021

Westmount Group, Inc.
7604 Plaza Redonda Drive
El Paso, TX  79912-8402

**RE:  Verification of Assets for Account** ▮▮▮▮

Dear Westmount Group, Inc.:

This letter confirms that:

(i)   You maintain a brokerage account with Wells Fargo Clearing Services, LLC ("Wells Fargo Advisors"),
      numbered ▮▮▮▮ ("Account"), established on 07/20/2020;

(ii)  As of 01/13/2021, the Account maintains a total account value in excess of $700,000.00.

This letter is provided for informational purposes and does not represent future Account value, if your Account will
remain with Wells Fargo Advisors in the future, any purposes not mentioned in this letter, or the creditworthiness
of the person(s) referenced within. Wells Fargo Advisors will have no liability with any party's reliance on this letter
or the information within.

Sincerely,

*Denise Gilles*

Denise Gilles
Securities Operations Services Specialist 3
Client Mailings – Verifications & Inquiries

Investment and Insurance Products are:
• Not Insured by the FDIC or Any Federal Government Agency
• Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate
• Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested



© 2019 Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC and Wells Fargo Advisors Financial Network, LLC, separate
registered broker-dealers and non-bank affiliates of Wells Fargo & Company

# Signature Page

**WESTMOUNT GROUP, LLC**
**PRIORITY CREDIT LINE**
7604 PLAZA REDONDA DR
EL PASO TX 79912-8402

| Sub Firm # | BR Code | FA Code | Account Number |
|---|---|---|---|
| 20 | TK | TK2Y | XXXX -0087 |

**Account Type**
C-Corporation-privately owned

BY SIGNING THIS PAGE, I/WE ("I") ACKNOWLEDGE THAT I HAVE RECEIVED AND REVIEWED A COPY OF MY/OUR INVESTMENT PROFILE(S) INCLUDED IN THIS PACKAGE AND I HAVE READ AND AGREE TO BE BOUND BY THE AGREEMENTS AND/OR DOCUMENTS LISTED BELOW AND ANY OTHER AGREEMENTS AND DOCUMENTS THAT ARE INCORPORATED BY REFERENCE INTO SUCH AGREEMENTS AND/OR DOCUMENTS.

020 - New Account Application, WBS - 1001
024 - Supplemental Account Owner Documentation *
131 - Trusted Contact Authorization, WFA - ICED

I UNDERSTAND AND ACKNOWLEDGE THAT INVESTMENTS AND INSURANCE PRODUCTS IN MY BROKERAGE ACCOUNT:
- ARE NOT INSURED BY THE FDIC OR ANY FEDERAL GOVERNMENT AGENCY
- ARE NOT A DEPOSIT OR OTHER OBLIGATION OF, OR GUARANTEED BY, THE BANK OR BY ANY BANK AFFILIATE
- ARE SUBJECT TO INVESTMENT RISKS, INCLUDING POSSIBLE LOSS OF PRINCIPAL AMOUNT INVESTED

I agree to promptly review and immediately advise Wells Fargo Advisors if any of the Owners and/or Account Profile information is not accurate or becomes inaccurate. I understand that Wells Fargo Advisors will rely on this information and that it is my responsibility to provide accurate and timely updates. My failure to do so may affect recommendations that are given to me related to my Priority Credit Line Account. If I decide to close or make changes to my Priority Credit Line Account, I will provide notification to Wells Fargo Advisors.

BY SIGNING THIS SIGNATURE PAGE, I/WE AUTHORIZE, ACKNOWLEDGE, AND AGREE TO THE TERMS AND CONDITIONS OF THE PRIORITY CREDIT LINE AGREEMENT AND TO THE FOLLOWING:
- **Stock Lending:** My securities may be loaned to Wells Fargo Clearing Services, LLC or to others.
- **Communications Consent:** My Financial Advisor may contact me/us as described in the Communications, Recording and Monitoring, Statements and Confirmations section of the Priority Credit Line Agreement.
- **PCL Account Holders:** In connection with my Priority Credit Line Account, Wells Fargo Bank, N.A. may establish a Bank Account in my/our name(s) and provide the banking-related services as set forth in the Priority Credit Line Account Agreement and may make any inquiry considered appropriate, including credit or other reports, to determine if the Bank Account should be opened. I/We also agree to the terms of the dispute resolution program described in the Priority Credit Line Account Agreement relating to disputes specifically involving the Bank Account.

**W-9:** *(Not Applicable to W-8 Clients)*
Payer's Request for Taxpayer Identification Number

Is this your correct Social Security/Tax ID?
If not, please enter the correct number in the appropriate boxes.

☐ Social Security
☐ Tax ID   XXXX 9727
or Corrected
  Social Security/
  Tax ID
  *(Please omit dashes)*

Under penalties of perjury, I certify that:
1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me); and
2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3) I am a U.S. citizen or other U.S. person; and
4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct. (NOTE: The FATCA code is not applicable for accounts maintained in the United States.)

☐ Check here if you have been notified by the IRS that you are currently subject to backup withholding because of under reporting interest or dividends on your tax return.

THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATIONS REQUIRED TO AVOID BACKUP WITHHOLDING.

THIS PRIORITY CREDIT LINE AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE LOCATED ON PAGE 4, PARAGRAPH C. BY EXECUTING THIS DOCUMENT CLIENT IS AGREEING TO BE BOUND BY THE PRE-DISPUTE ARBITRATION CLAUSE. THE UNDERSIGNED ACKNOWLEDGES RECEIPT OF A COPY OF THE PRIORITY CREDIT LINE AGREEMENT.

## MUST SIGN AND DATE

I agree to the terms and conditions of this agreement and attest that the certification made of the W-9 above is true. *(Not Applicable to W-8 Clients)*

| Signature of KEYVAN PARSA | (Primary Owner) Use BLACK ink only. | Title if Applicable Pres. | Date (Required) 08-07-20 |
|---|---|---|---|

I agree to the terms and conditions of this agreement.

| Signature of X | | Title if Applicable | Date (Required) |
|---|---|---|---|
| Signature of X | | Title if Applicable | Date (Required) |
| Signature of X | | Title if Applicable | Date (Required) |
| Signature of X | | Title if Applicable | Date (Required) |

**Investment and Insurance Products:**

| Not Insured by FDIC or any Federal Government Agency | May Lose Value | Not a Deposit of or Guaranteed by a Bank or any Bank Affiliate |
|---|---|---|

Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC, a registered broker-dealer and non-bank affiliate of Wells Fargo & Company.

591213 (Rev 11 - 11/20)

* Total Supplemental Form(s) - 1, 1096

75530087 WFGESGN 0080811608001

75530087   WFGESGN   0080811608001

## EXHIBIT A

# EXHIBIT "B"

Institutional Class shares



# 100% Treasury Money Market Fund

All information is as of 12-31-20 unless otherwise indicated. Information is subject to change.

## Key facts

| | |
|---|---|
| S&P rating | AAAm |
| Moody's Rating | Aaa-mf |
| Share Class | Institutional |
| Investment Minimum | $10 million |
| Ticker | WOTXX |
| CUSIP | 94988A759 |
| Gross Expense Ratio | 0.23% |
| Net Expense Ratio | 0.20% |
| Total fund assets | $18.9 billion |
| Fund Manager | Laurie R. White, Jeffrey L. Weaver, CFA, Michael C. Bird, CFA |
| Fund Inception Date | 12-03-90 |
| Class Inception Date | 10-31-14 |
| Trading deadline | 1 p.m. Eastern Time |

## Principal investment strategies



Seeks current income exempt from most state and local individual income taxes, while preserving capital and liquidity. Invests in high-quality, short-term money market instruments that consist of U.S. Treasury obligations.

## Portfolio composition



% of portfolio

■ Treasury debt: (100)



Total : 100%

## Performance

### Current yield as of 12-31-20

| | 7-day SEC yield (%) |
|---|---|
| | 0.01 |

| Month | 30-day current yield (%) |
|---|---|
| December 2019 | 1.45 |
| January 2020 | 1.42 |
| February 2020 | 1.41 |
| March 2020 | 0.91 |
| April 2020 | 0.25 |
| May 2020 | 0.09 |
| June 2020 | 0.05 |
| July 2020 | 0.05 |
| August 2020 | 0.01 |
| September 2020 | 0.01 |
| October 2020 | 0.01 |
| November 2020 | 0.01 |
| December 2020 | 0.01 |

### Average annual total returns (%) as of 12-31-20

| 1 year | 3 year | 5 year | 10 year | Since inception |
|---|---|---|---|---|
| 0.36 | 1.35 | 0.93 | 0.49 | 2.30 |

## Portfolio maturity schedule (%)



## Money market fund statistics

Weighted average maturity: 53 days
Weighted average life: 110 days

Daily liquid assets: 100%
Weekly liquid assets: 100%

*The Manager has contractually committed through May 31, 2021, to waive fees and/or reimburse expenses to the extent necessary to cap the fund's total annual fund operating expenses after fee waivers at the amounts shown above. Brokerage commissions, stamp duty fees, interest, taxes, acquired fund fees and expenses (if any), and extraordinary expenses are excluded from the expense cap. The Manager may also voluntarily waive or reimburse additional fees and expenses, and such voluntary waivers may be discontinued or modified at any time without notice. Without these reductions, the fund's seven-day current yield would have been -0.09%. Prior to or after the commitment expiration date, the cap may be increased or the commitment to maintain the cap may be terminated only with the approval of the Board of Trustees. The expense ratio paid by an investor is the net expense ratio (the total annual fund operating expenses after fee waivers) as stated in the prospectus.*

*Figures quoted represent past performance, which is no guarantee of future results and do not reflect taxes that a shareholder may pay on an investment in a fund. Investment returns will fluctuate. The fund's yield figures more closely reflect the current earnings of the fund than the total return figures. Current performance may be lower or higher than the performance data quoted and assumes the reinvestment of dividends and capital gains. Current month-end performance is available at the fund's website, wfam.com.*

*Money market funds are sold without a front-end sales charge or contingent deferred sales charge. Other fees and expenses apply to an investment in the fund and are described in the fund's current prospectus.*

(Continued on next page.)

 **Advisors**

Wells Fargo Advisors
MAC H0005-03S
One North Jefferson Avenue
St. Louis, MO 63103

January 14, 2021

Westmount Group, Inc.
7604 Plaza Redonda Drive
El Paso, TX 79912-8402

**RE: Verification of Assets for Account xxxx-7582**

Dear Westmount Group, Inc.:

This letter confirms that:

(i)     You maintain a brokerage account with Wells Fargo Clearing Services, LLC ("Wells Fargo Advisors"), numbered xxxx-7582 ("Account"), established on 07/20/2020;

(ii)    As of 01/13/2021, the Account maintains a total account value in excess of $700,000.00.

This letter is provided for informational purposes and does not represent future Account value, if your Account will remain with Wells Fargo Advisors in the future, any purposes not mentioned in this letter, or the creditworthiness of the person(s) referenced within. Wells Fargo Advisors will have no liability with any party's reliance on this letter or the information within.

Sincerely,

*Denise Gilles*

Denise Gilles
Securities Operations Services Specialist 3
Client Mailings – Verifications & Inquiries

Investment and Insurance Products are:
• Not Insured by the FDIC or Any Federal Government Agency
• Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate
• Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested



© 2019 Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC and Wells Fargo Advisors Financial Network, LLC, separate registered broker-dealers and non-bank affiliates of Wells Fargo & Company

# EXHIBIT "C"

Institutional Class shares



# 100% Treasury Money Market Fund

All information is as of 12-31-20 unless otherwise indicated. Information is subject to change.



## Key facts

| | |
|---|---|
| S&P rating | AAAm |
| Moody's Rating | Aaa-mf |
| Share Class | Institutional |
| Investment Minimum | $10 million |
| Ticker | WOTXX |
| CUSIP | 94988A759 |
| Gross Expense Ratio | 0.23% |
| Net Expense Ratio | 0.20% |
| Total fund assets | $18.9 billion |
| Fund Manager | Laurie R. White, Jeffrey L. Weaver, CFA, Michael C. Bird, CFA |
| Fund Inception Date | 12-03-90 |
| Class Inception Date | 10-31-14 |
| Trading deadline | 1 p.m. Eastern Time |

## Principal investment strategies

Seeks current income exempt from most state and local individual income taxes, while preserving capital and liquidity. Invests in high-quality, short-term money market instruments that consist of U.S. Treasury obligations.

## Portfolio composition

% of portfolio
 Treasury debt: (100)

Total: 100%

## Performance

Current yield as of 12-31-20

| | 7-day SEC yield (%) |
|---|---|
| | 0.01 |

| Month | 30-day current yield (%) |
|---|---|
| December 2019 | 1.46 |
| January 2020 | 1.42 |
| February 2020 | 1.41 |
| March 2020 | 0.91 |
| April 2020 | 0.25 |
| May 2020 | 0.09 |
| June 2020 | 0.05 |
| July 2020 | 0.05 |
| August 2020 | 0.01 |
| September 2020 | 0.01 |
| October 2020 | 0.01 |
| November 2020 | 0.01 |
| December 2020 | 0.01 |

Average annual total returns (%) as of 12-31-20

| 1 year | 3 year | 5 year | 10 year | Since inception |
|---|---|---|---|---|
| 0.36 | 1.35 | 0.93 | 0.49 | 2.30 |

## Portfolio maturity schedule (%)



## Money market fund statistics

Weighted average maturity: 53 days
Weighted average life: 110 days

Daily liquid assets: 100%
Weekly liquid assets: 100%

The Manager has contractually committed through May 31, 2021, to waive fees and/or reimburse expenses to the extent necessary to cap the fund's total annual fund operating expenses after fee waivers at the amounts shown above. Brokerage commissions, stamp duty fees, interest, taxes, acquired fund fees and expenses (if any), and extraordinary expenses are excluded from the expense cap. The Manager may also voluntarily waive or reimburse additional fees and expenses, and such voluntary waivers may be discontinued or modified at any time without notice. Without these reductions, the fund's seven-day current yield would have been -0.03%. Prior to or after the commitment expiration date, the cap may be increased or the commitment to maintain the cap may be terminated only with the approval of the Board of Trustees. The expense ratio paid by an investor is the net expense ratio (the total annual fund operating expenses after fee waivers) as stated in the prospectus.

*Figures quoted represent past performance, which is no guarantee of future results and do not reflect taxes that a shareholder may pay on an investment in a fund. Investment returns will fluctuate. The fund's yield figures more closely reflect the current earnings of the fund than the total return figures. Current performance may be lower or higher than the performance data quoted and assumes the reinvestment of dividends and capital gains. Current month-end performance is available at the fund's website, wfam.com.*

*Money market funds are sold without a front-end sales charge or contingent deferred sales charge. Other fees and expenses apply to an investment in the fund and are described in the fund's current prospectus.*

(Continued on next page.)

 **Advisors**

Wells Fargo Advisors
MAC H0005-035
One North Jefferson Avenue
St. Louis, MO 63103

January 14, 2021

Westmount Group, Inc.
7604 Plaza Redonda Drive
El Paso, TX 79912-8402

**RE: Verification of Assets for Account xxxx-7582**

Dear Westmount Group, Inc.:

This letter confirms that:

(i)     You maintain a brokerage account with Wells Fargo Clearing Services, LLC ("Wells Fargo Advisors"), numbered xxxx-7582 ("Account"), established on 07/20/2020;

(ii)    As of 01/13/2021, the Account maintains a total account value in excess of $338,000.00.

This letter is provided for informational purposes and does not represent future Account value. If your Account will remain with Wells Fargo Advisors in the future, any purposes not mentioned in this letter, or the creditworthiness of the person(s) referenced within. Wells Fargo Advisors will have no liability with any party's reliance on this letter or the information within.

Sincerely,

*Denise Gilles*

Denise Gilles
Securities Operations Services Specialist 3
Client Mailings – Verifications & Inquiries

Investment and Insurance Products are:
• Not Insured by the FDIC or Any Federal Government Agency
• Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate
• Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested



© 2019 Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC and Wells Fargo Advisors Financial Network, LLC, separate registered broker-dealers and non-bank affiliates of Wells Fargo & Company

# EXHIBIT "D"

1

| 1 | REPORTER'S RECORD      COPY |
| 2 | TRIAL COURT CAUSE NO. 2020DCV2997 |
| 3 | VOLUME 1 OF 1 VOLUMES |

1                  REPORTER'S RECORD      COPY

2           TRIAL COURT CAUSE NO. 2020DCV2997

3              VOLUME 1 OF 1 VOLUMES

4  ALBERTO FLORES,                  )
       Plaintiff,                 )

5  vs.                              )
   KEYVAN PARSA, M.D. and           )

6  MONTOYA PARK PLACE, INC.,        )
       Defendants,                )  IN THE DISTRICT COURT

7                     )
   vs.                              )  OF EL PASO COUNTY, TEXAS

8                     )
   WESTSTAR TITLE, L.L.C.,          )  327TH JUDICIAL DISTRICT

9  Intervenor/Third-Party           )
   Plaintiff,                       )

10                    )
   FIDELITY NATIONAL TITLE          )

11 INSURANCE, CO.                   )

12

13         ********************************

14               MOTIONS HEARING

15         ********************************

16       The 18th day of May, 2020, the following

17 proceedings came on to be heard in the above-entitled

18 and numbered cause before the Honorable THOMAS A.

19 SPIECZNY  Judge Presiding, via Zoom in accordance with

20 the Supreme Court of Texas' Emergency Order Regarding

21 the COVID-19 State of Disaster, held in El Paso, El Paso

22 County, Texas:

23       Proceedings reported by machine shorthand

24 utilizing computer-assisted realtime transcription.

25

1  obligations are under that injunction?

2      A.   Not -- not to spend the money, not to transfer

3  the money and just keep the money until we have the

4  solution with the outcome.

5      Q.   Okay.  And since entering the injunction, is it

6  your opinion that you've complied with its terms?

7      A.   One hundred percent.

8      Q.   Okay.  Is the money -- has the money ever been

9  in Mexico?

10      A.   Never.  That was actually Mr. Kirk [sic]

11  imagination.

12      Q.   When you say --

13      A.   (Indecipherable.)

14      Q.   -- Mr. Kirk's imagination, can you describe to

15  us what the context of that statement --

16      A.   Yes.  He came up with this idea that the money

17  is in Mexico, and he has reason to believe that the

18  money is in Mexico.  The money never ever left the

19  United States and still was always in the bank with

20  Wells Fargo Bank forever.  Never left.

21      Q.   And was it ever your intention to transfer the

22  money out of the country?

23      A.   Never.  Never was my intention.  Never.

24      Q.   Okay.  Now, do you recall giving me a letter

25  yesterday, dated May 17th, from a Wells Fargo Bank

1  representative?

2      A.   Yes.

3      Q.   And can you explain to the Court what that

4  letter stated?

5      A.   Yes.  It all -- I had no idea that I have to

6  get the other statement.  There are not -- because

7  Mr. Kirk earlier stated that, What happened to the rest

8  of the money?  The money is in the bank -- in the Wells

9  Fargo Bank.  I just -- it was a short notice for the

10  bank to give me the statement.  I have the statement.  I

11  can forward it to you that the whole money is there.

12      Q.   And so you're willing to share all that

13  information with Mr. Flores and with WestStar and

14  Fidelity?

15      A.   As soon as possible.  Yes.

16      Q.   Okay.  Have you transferred any of the money

17  out of the accounts since the injunction was entered?

18      A.   Never.

19      Q.   Now, you heard some accusations earlier that

20  they were concerned about transfers being made.  Do you

21  know what they were referring to?

22      A.   I have no idea.  This -- I have no idea why

23  they -- why they are thinking that way.

24      Q.   So what's the total of the funds remaining in

25  the Wells Fargo accounts?

1     A.   Exactly what the -- the 700 and 338 that Mr. --

2  based on that joint temporary TRO that we signed.

3     Q.   So approximately over $1 million?

4     A.   That's correct.  Yes.

5     Q.   And is it your understanding that that amount

6  is sufficient to cover the claims of Fidelity and

7  WestStar?

8     A.   Yes.

9     Q.   And it would be sufficient to cover the claim

10  of Mr. Albert Flores?

11     A.   Of course.

12     Q.   Okay.

13         MR. MIRANDA:  All right.  No further

14  questions, Your Honor.  I'll pass the witness for now.

15         THE COURT:  Okay.  Mr. Kirk, do you have

16  any questions?

17               CROSS-EXAMINATION

18  BY MR. KIRK:

19     Q.   Mr. Parsa, aren't -- aren't you aware that

20  there's a demand for about $786,000 now from WestStar

21  and Fidelity?

22     A.   Yes, I'm aware of that.  Yes.

23     Q.   Are you not aware that there's a demand for

24  interest and attorneys' fees from Mr. Flores?

25     A.   Yes, I do.  Yes, I understand.

1      Q.   So $1,038,000 is not going to cover all that,

2  is it?

3      A.   It will, because I received my portion of the

4  money as well that I did not touch either.

5      Q.   What have you done with the rest of the money?

6      A.   It's in the bank.  I did not spend any -- a

7  penny of it.

8      Q.   Why isn't it in one of these two accounts?

9      A.   From the beginning, because I just wanted to

10  separate the money that you are claiming and the money

11  that WestStar and Fidelity are claiming.  Just -- I

12  didn't want to -- that was part of the agreement of the

13  TRO, if you remember.  That's exactly what I did.

14      Q.   So you set aside something that you think no

15  one else is asking for?

16      A.   No, it's not true.  I just wanted to clarify

17  that the funds, they are not getting mixed up.  They are

18  all -- they are translucent.  If you -- if you refer

19  to -- if you see the document that I provided a couple

20  of months ago, it's clear, but you didn't -- you didn't

21  object at that time, and I don't understand why you're

22  objecting this time.

23      Q.   I'm objecting because your attorney has been

24  saying that 700,000 in Wells Fargo takes care of

25  everything.

42

1  STATE OF TEXAS            )

2  COUNTY OF EL PASO         )

3

4      I, Maria I. Stallings, Official Court Reporter in

5  and for the 327th District Court of El Paso County,

6  State of Texas, do hereby certify that the above and

7  foregoing contains a true and correct transcription of

8  all portions of evidence and other proceedings requested

9  in writing by counsel for the parties to be included in

10  this volume of the Reporter's Record, in the

11  above-styled and numbered cause, all of which occurred

12  in open court or in chambers and were reported by me.

13      I further certify that this Reporter's Record of

14  the proceedings truly and correctly reflects the

15  exhibits, if any, offered by the respective parties.

16      I further certify that the total cost for the

17  preparation of this Reporter's Record is $70.00 and was

18  paid by Mr. James Brewer, Esq.

19      WITNESS MY OFFICIAL HAND this the _2_nd day of

20  June, 2021.

21

22                    /s/ Maria I. Stallings
                      MARIA I. STALLINGS, Texas CSR# 8229
23                    Official Court Reporter
                      327th District Court
24                    500 E. San Antonio, Rm. 606
                      El Paso, TX 79901
25                    (915) 546-2032
                      Expires May 31, 2023

# EXHIBIT "E"

1

1    REPORTER'S RECORD          COPY

2    TRIAL COURT CAUSE NO. 2020DCV2997

3    VOLUME 1 OF 1 VOLUMES

4  ALBERTO FLORES,               )
       Plaintiff,                )
5  vs.                           )
   KEYVAN PARSA, M.D. and        )
6  MONTOYA PARK PLACE, INC.,     )
       Defendants,               )   IN THE DISTRICT COURT
7                                )
   vs.                           )   OF EL PASO COUNTY, TEXAS
8                                )
   WESTSTAR TITLE, L.L.C.,       )   327TH JUDICIAL DISTRICT
9  Intervenor/Third-Party        )
   Plaintiff,                    )
10                               )
   Fidelity National Title       )
11 Insurance, CO.                )

12

13    *********************************

14    MOTIONS HEARING

15    *********************************

16        The 8th day of June, 2021, the following

17 proceedings came on to be heard in the above-entitled

18 and numbered cause before the Honorable THOMAS A.

19 SPIECZNY Judge Presiding, via Zoom in accordance with

20 the Supreme Court of Texas' Emergency Order Regarding

21 the COVID-19 State of Disaster, held in El Paso, El Paso

22 County, Texas:

23        Proceedings reported by machine shorthand

24 utilizing computer-assisted realtime transcription.

25

1 not sure if the four and a half percent was on -- I

2 think it's, like, 1,038,000, and I don't know if the

3 four and a half percent is on all of that. Because

4 there's two different chunks, and I'm not sure which one

5 the four and a half percent was on.

6          MR. BREWER: I don't know which one is

7 pledged.

8          MR. BROWN: Your Honor, I believe that --

9 that Dr. Parsa testified that it was 4.5 percent on the

10 full amount of 1,038,000, but there's also additional

11 monies that -- that represent tax consequences and other

12 penalties.

13          THE COURT: How are tax -- how are taxes

14 flowing from a deposit into the registry of the Court?

15 That's not --

16          MR. BROWN: No, from withdrawal of the

17 monies. From withdrawal of the monies.

18          THE COURT: I didn't hear what you said.

19          MR. BROWN: From withdrawal of the monies.

20 You have to leave them in there for so long. If you

21 take them out early then --

22          THE COURT: Well, but if you take them out

23 early and put them into the registry of the Court,

24 you're saying that is a taxable event? I mean, that --

25 that would not be considered income to Dr. Parsa or to

1 anybody else, would it?

2                MR. BROWN:  I think -- well, I don't

3 purport to be a tax expert, but once you remove monies

4 from an account like that, there -- I think there --

5 there are certain tax consequences, because you have to

6 move -- you move those monies initially in there for a

7 benefit that you're getting.  But I -- I'm getting out

8 of my depth.

9                THE COURT:  I don't see tax consequences.

10 I may be wrong, but I don't --

11                MR. PARSA:  Can I say something?

12                THE COURT:  And I'm not -- I'm not stopping

13 you from saying anything, but I'm suggesting you talk to

14 your lawyer before you say whatever you want to say.

15                (Discussion off the record.)

16                MR. KIRK:  Your Honor, would you ask

17 Dr. Parsa to what extent he has encumbered with loans

18 either of the accounts?

19                THE COURT:  Wait until we're finished and

20 then I'll respond to that.

21                MR. PARSA:  Can I tell you something?

22                MR. BROWN:  I guess --

23                THE COURT:  -- with your client?

24                MR. BROWN:  Yeah, I did.  And I guess I --

25 I can ask him a question about his understanding of the

1 months and/or a year to just close it.  And then it's

2 going to take, too, time to liquidate the account.  It's

3 not something I can just do it overnight.

4           THE COURT:  So you are -- it is your

5 understanding there would be tax consequences on the

6 income that has been earned?

7           THE WITNESS:  Yes.  Yes, Your Honor.

8           THE COURT:  -- interest, which is rather

9 low for the last year or two.  I mean, banks aren't

10 paying high interest rates.

11           THE WITNESS:  Well, you know, this is a

12 money market account.  It could go to -- up to eight to

13 10 percent.

14           THE COURT:  Up to 10 percent?

15           THE WITNESS:  Eight to 10 percent.  It's a

16 money market.

17    Q.   (BY MR. BROWN)  Of interest or tax?

18    A.   I mean, interest eight -- from eight to 10 and

19 consequences of tax for it if you just close the

20 account.

21           MR. BROWN:  Can I ask one more question,

22 Judge?

23           THE COURT:  You may.

24    Q.   (BY MR. BROWN)  The -- you -- I think you

25 testified earlier that there's about $180,000 that was

1  borrowed on the line of credit -- not taken from the

2  accounts but on the line of credit?

3      A.   Yes.

4      Q.   Will -- if you're having -- if you remove these

5  funds, how will that affect the line of credit in terms

6  of that $180,000?

7      A.   Honestly, it's going to be very bad, because I

8  don't know even -- I cannot even imagine if I can do

9  that.

10      Q.   What I'm asking is, do you have to pay that

11  amount?

12      A.   Yes.  Absolutely.  I have to pay it overnight.

13      Q.   The 180,000?

14      A.   Yes.

15              MR. BROWN:  All right.  I'll pass the

16  witness.

17              THE COURT:  Well, just on that topic, if I

18  ordered him to --

19              MR. KIRK:  Dr. Parsa --

20              THE COURT:  -- remove -- wait.  Let me just

21  ask a question, please.

22              If I ordered him --

23              MR. KIRK:  -- is 180,000 the total?

24              THE COURT:  -- to pay into the registry of

25  the Court --

1          MR. KIRK:  Is that the total encumbrance on

2  the funds?

3          THE COURT:  -- then that -- that would

4  cover what's been pledged.  So if -- instead of a

5  million three, it would -- that would be 850,000.

6          MR. KIRK:  I wasn't able to hear what

7  people were saying.  I'm sorry.

8          THE COURT:  That's okay.  I think what I

9  heard Dr. Parsa say is that there is $180,000 that is

10  pledged.

11          THE WITNESS:  Your Honor, it's at least

12  $180,000.  I can get you that exact amount but at least

13  $180,000.

14          THE COURT:  All right.  Okay.  Anyway,

15  Mr. Kirk, let's go ahead and -- I interrupted you.  You

16  were about to ask some questions.  And I think they were

17  about how the money is encumbered, so let's go ahead

18  with that now.

19                  RECROSS-EXAMINATION

20  BY MR. KIRK:

21     Q.  -- then the rest of it could come into the

22  registry with no harm to Dr. Parsa?

23          THE COURT:  What I was asking.

24          MR. BROWN:  Can you rephrase that?  I -- I

25  didn't understand that.  I didn't hear it, partly.

1    Q.   (BY MR. KIRK) -- the extent of the borrowing
2  that encumbers these two accounts, or one of the two
3  accounts, 180,000.  Then the rest of the account should
4  be available to come into the registry?
5             THE COURT:  Yeah.  Yeah.  So that would be
6  roughly 850.
7             MR. BROWN:  I don't -- I don't know if
8  that's correct.
9             Dr. Parsa, what's your understanding of --
10            THE WITNESS:  Well, you know, the concept
11  is that the line of the credit, the way it works, the
12  way that I was explained by the banker is that I cannot
13  break the contract with them.  It's already -- I'm
14  engaged in a contract with them.  It's not a question of
15  pay them 180,000.  If Mr. Kirk wants to pay me $180,000,
16  I can do that tomorrow.  I cannot do that.  I can't just
17  break the contract with them.  It's something that I
18  cannot do it.  It's not because I don't want to.
19            THE COURT:  Okay.  Is there anything
20  further that --
21    Q.   (BY MR. KIRK)  You're telling me you could pay
22  the loan?
23    A.   I'm sorry?
24            THE COURT:  I think he asked -- we didn't
25  quite hear, Mr. Kirk.  Could you repeat that, please?

50

1  tax consequences, and then I guess Mr. Kirk wants to ask

2  him a question about the encumbrance.

3           THE COURT:  Right.  So why don't you ask

4  him about the tax consequences first, and then we'll

5  have -- hear Mr. Kirk's question.

6                    REDIRECT EXAMINATION

7  BY MR. BROWN:

8     Q.   Dr. Parsa, have you consulted with an

9  accountant regarding withdrawal of these funds?

10    A.   Yes, and also -- yes.  And also --

11    Q.   And would you explain your understanding of the

12 tax consequences of removal of the funds?  And I'm not

13 saying you individually removing the funds but the

14 account holder removing the funds.

15    A.   Well, you know, the -- the -- I actually spoke

16 to two individuals, one with my accountant and the

17 second with the -- with the banker, and he tells me that

18 first of all --

19    Q.   Just talk about your understanding.

20    A.   Yeah.  My understanding is that if -- if we

21 close the account tomorrow, that virtually is

22 impossible, there's going to be tax consequences based

23 on the money that the account has earned so far and --

24 because the way that the account is designed, you have

25 to have it for years.  It's not just for a couple of

1          MR. BROWN:  I think his Internet -- oh,
2  there it is.
3          THE COURT:  Mr. Kirk, are you muted or did
4  we lose you -- your audio somehow?
5          MR. KIRK:  Everybody has gone silent on the
6  screen and also immobile, Your Honor, so --
7          THE COURT:  No, I --
8          MR. KIRK:  -- see blinking eyes.
9          THE COURT:  I'm moving my head, and it
10 looks like I'm -- I can see it on here.  Can -- can
11 you-all hear me?
12         MR. BREWER:  Yes.
13         MS. KELLEY:  Yes.
14         MR. BROWN:  Yes, Your Honor.
15         THE COURT:  Okay.  Everybody can hear me?
16         MR. KIRK:  Yes, Your Honor.
17         THE COURT:  Here is what I think we need to
18 do.  I will modify the order as follows:  And Dr. Parsa
19 will be ordered to deposit $750,000 into the registry of
20 the Court within 10 days.  And to whatever extent there
21 is an issue with the bank, in terms of doing that, all
22 counsel are going to communicate and if there is some
23 impossibility or some big penalty because that is
24 happening or because I'm ordering that, then I want to
25 immediately hear that within that 10 days.  So that

1 would be some time next week.

2        I do want to have a bond, which would be

3 contingent, which would mean that if there is that early

4 withdrawal that does kick in, there would be a bond in

5 place to cover that expense so that Dr. Parsa would not

6 be the person penalized if he ultimately prevails at the

7 end of all this litigation.

8        So, Mr. Brewer, you seem to have a good

9 amount of familiarity with this -- these sort of

10 documents.  Can you prepare or obtain that sort of a

11 bond that would cover that contingency?

12        MR. BREWER:  Sure.  Yes.

13        THE COURT:  Okay.  So 10-days from today --

14 I believe today is the 8th.  Let me look at a calendar.

15 10 days would be the 18th, which is a Sunday, so we will

16 make it the 19th.  So the funds have to be deposited on

17 or before the 19th.  If there is some sort of snag with

18 the bank, bring that to my attention and we'll reconvene

19 and discuss that and have a hearing next week.

20        Anything further from either side at this

21 time?

22        MR. BROWN:  No, Your Honor.

23        MR. KIRK:  No, Your Honor.

24        MS. KELLEY:  No, Your Honor.  Thank you.

25        THE COURT:  Okay.  Thank you.  We will be

58

1  STATE OF TEXAS              )

2  COUNTY OF EL PASO           )

3

4       I, Maria I. Stallings, Official Court Reporter in

5  and for the 327th District Court of El Paso County,

6  State of Texas, do hereby certify that the above and

7  foregoing contains a true and correct transcription of

8  all portions of evidence and other proceedings requested

9  in writing by counsel for the parties to be included in

10 this volume of the Reporter's Record, in the

11 above-styled and numbered cause, all of which occurred

12 in open court or in chambers and were reported by me.

13      I further certify that this Reporter's Record of

14 the proceedings truly and correctly reflects the

15 exhibits, if any, offered by the respective parties.

16      I further certify that the total cost for the

17 preparation of this Reporter's Record is $97.00 and was

18 paid by Mr. James Brewer, Esq.

19      WITNESS MY OFFICIAL HAND this the _15_ th day of

20 July, 2021.

21

22                       /s/ Maria I. Stallings
                         MARIA I. STALLINGS, Texas CSR# 8229
23                       Official Court Reporter
                         327th District Court
24                       500 E. San Antonio, Rm. 606
                         El Paso, TX 79901
25                       (915) 546-2032
                         Expires May 31, 2023

# EXHIBIT "F"

NO. _____

IN THE COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

**In Re:**

**KEYVAN PARSA, M.D. and
MONTOYA PARK PLACE, INC.**

**Relators.**

Original Proceeding Arising Out of
the 327th Judicial District Court of El Paso County, Texas
No. 2020DCV2997
(Hon. Thomas Spieczny)

**Petition for Writ of Mandamus, and
Request for Emergency Relief**

Respectfully Submitted,

By: _/s/Troy C. Brown_

Troy C. Brown
Texas Bar No. 00783735
1074 Country Club Rd.
Ste. B-4
El Paso, Texas 79932
Tel. 915-543-9669
Fax 888-922-3353
troy@tcblegal.com
Attorney for Relators

# IDENTITIES OF PARTIES AND COUNSEL

**RESPONDENT (also referred to as Respondent Judge):**

Hon. Thomas Spieczny
327th Judicial District Court
El Paso County Courthouse
500 East San Antonio; Room 606
El Paso, Texas 79901
Tel. (915) 546-2032
Fax. (915) 546-2131

**RELATORS:**  Keyvan Parsa, M.D. and Montoya Park Place, Inc.

**COUNSEL FOR RELATORS:**

Troy C. Brown
1074 Country Club Rd.
Ste. B-4
El Paso, Texas 79932
Tel. 915-543-9669
Fax. 888-922-3353
troy@tcblegal.com

**REAL PARTIES IN INTEREST:**  Weststar Title, LLC and Fidelity National Insurance Company

**COUNSEL FOR REAL PARTIES IN INTEREST:**

James W. Brewer
Kemp Smith LLP
221 N. Kansas, Ste. 1700
El Paso, Texas 79901
Tel. (915) 533-4424
Fax. (915) 546-5360
James.brewer@kempmith.com

S. Shakira Ali Kelley
Gregory T. Brewer
Fidelity National Law Group
6900 Dallas Parkway, Suite 610
Plano, Texas 75024
(972) 812-6407
(972) 812-9408
Shakira.Kelley@fnf.com
Gregory.brewer@fnf.com

ii

**Additional parties in trial court**
**(not parties on appeal)**

Albert Flores, Plaintiff

E.P. Bud Kirk
Attorney at Law
Terrace Gardens
600 Sunland Park Dr.
Building Four, Suite 400
El Paso, Texas 79912
budkirk@aol.com

**Debra Jordan, Intervenor/Third-Party Defendant**

Richard A. Roman
1018 Brown St.
El Paso, Texas 79902
(915) 351-2679
(915) 351-6754 fax
rromanattorney@yahoo.com

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ..................................................... ii

TABLE OF CONTENTS.......................................................................................iv

INDEX OF MANDAMUS RECORD ...................................................................v

INDEX OF AUTHORITIES................................................................................ vii

REFERENCES IN THE PETITION .................................................................. viii

STATEMENT OF THE CASE..............................................................................ix

ISSUES PRESENTED..........................................................................................x

STATEMENT OF FACTS ....................................................................................1

SUMMARY OF THE ARGUMENT ..................................................................12

ARGUMENT AND AUTHORITIES.................................................................13

I. Standard of Review. ......................................................................................13

II. The trial court erred when it ordered Relators to deposit $750,000 in the registry of the court where there was no evidence the funds were in danger of being lost or depleted .................................................................................15

PRAYER and CERTIFICATE OF SERVICE.....................................................23

APPENDIX:

Appx. Tab 1.     Joint Order to Compel Interpleader and Hold Funds Into Registry of Court (April 26, 2021)

## MANDAMUS RECORD:

Suit to Appoint a Receiver for a Corporation Under Texas Business Corporations Act § 7.05.A (filed September 16, 2020) ............................................... Tab A

Defendants' Motion to Dismiss a Baseless Cause of Action (filed October 5, 2020) ......................................................................................................... Tab B

Plaintiff's Second Amended Petition (Suit for Rescission of Contract, for Fraud in a Stock Transaction, for Unjust Enrichment, for Injunctive Relief, and to Appoint a Receiver) (filed November 23, 2020) ............................................... Tab C

Motion for Temporary Restraining Order and Injunctive Relief (filed November 25, 2020) ............................................................................................. Tab D

Agreed Temporary Restraining Order (filed January 4, 2021) and Agreed Temporary Injunction (filed January 27, 2021)..............................................Tab E

Petition in Intervention of Weststar Title, LLC (filed January 6, 2021) .......... Tab F

Fidelity National Title Insurance Company's Original Petition In Intervention (filed January 22, 2021) ................................................................ Tab G

Albert Flores' Answer to the Petition In Intervention by Weststar Title, LLC (filed February 3, 2021).............................................................................. Tab H

Albert Flores' Answer to the Petition In Intervention by Fidelity National Title Insurance Company (filed February 4, 2021).......................................Tab I

Counterclaim of Plaintiff and Third-Party Defendant Albert Flores for Comparative Negligence, Against Intervenor/Third Party Plaintiff Fidelity National Title Insurance Company (filed February 8, 2021) ............................Tab J

Joint Motion to Compel Interpleader of Funds Into Registry of Court (filed April 21, 2021). ................................................................................................ Tab K

Joint Order to Compel Interpleader and Hold Funds Into Registry of Court (filed April 26, 2021)..............................................................................................Tab L

Keyvan Parsa M.D. and Montoya Park Place, Inc.'s Response & Objection to Joint

Motion for Interpleader (filed April 26, 2021) .................................................Tab M

Keyvan Parsa M.D. and Montoya Park Place, Inc.'s Motion for Reconsideration & Abatement of Order Granting Joint Motion for Interpleader (filed April 28, 2021) .................................................................................................................... Tab N

Keyvan Parsa M.D. and Montoya Park Place, Inc.'s Motion for Reconsideration of and to Abate Joint Order to Compel Interpleader and Hold Funds Into Registry of Court (filed May 28, 2021) ............................................................................ Tab O

Motion for Contempt of Court and Request for Sanctions (filed June 7, 2021)Tab P

Westar Title, LLC's Objection to Keyvan Parsa M.D. and Montoya Park Place, Inc.'s Motion for Reconsideration of and to Abate Joint Order to Compel Interpleader (filed June 15, 2021)..................................................................... Tab Q

Defendants' Response to Motion for Contempt of Court and Request for Sanctions (filed July 5, 2021) ........................................................................................ Tab R

Keyvan Parsa and Montoya Park Place, Inc.'s Amended Reply to Albert Flores' Weststar Title, LLC's Response to Defendants' Motion for Reconsideration and to Abate Joint Order to Compel Interpleader (filed July 8, 2021)......................... Tab S

Transcript of Motions Hearing, dated July 8, 2021 (filed July 8, 2021) .......... Tab T

Defendants' Exhibit 1, Hearing July 14, 2021 (filed July 14, 2021)............... Tab U

# INDEX OF AUTHORITIES

**Cases**

*Castilleja v. Camero,* 414 S.W.2d 431, 433 (Tex.1967) ...........................................14

*In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135-36 (Tex.2004) (orig. proceeding) ...................................................................................................13

*In re Reveille Resources (Texas), Inc.,* 347 S.W.3d 301, 304 (Tex.App.–San Antonio 2011, orig. proceeding) ............................................................................14

*N. Cypress Med. Ctr. v. St. Laurent,* 296 S.W.3d 171, 178-79 (Tex.App.—Houston [14th Dist.] 2009, orig. proceeding) ...................................................... 13, 14, 18

*Walker v. Packer,* 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding) ..........13

*Zhao v. XO Energy LLC,* 493 S.W.3d 725, 736 (Tex.App.—Houston [1st Dist.] 2016, no pet.) ..................................................................................................14

**Statutes**

TEX. GOV'T CODE § 22.221(b)................................................................................3

## REFERENCES IN THE PETITION

Keyvan Parsa, M.D. and Montoya Park Place, Inc. are the Relators in this matter (Defendants and Intervenor-Defendants in the proceedings below) originally filed by Plaintiff Albert Flores ("Flores").

For convenience, Keyvan Parsa, M.D. and Montoya Park Place, Inc. are referred to as "Relators," "Parsa" or "Montoya."

For convenience, the real parties in interest are referred to in this petition for writ of mandamus as "RPI," "Weststar" or "Fidelity."

The reference to "Respondent" in this petition for writ of mandamus is a reference to the Honorable Thomas Spieczny.

References to the Mandamus Record are abbreviated as "(MR)." Specific citation to an exhibit is by tab to a corresponding letter. For example, the citation to the Mandamus Record at Tab A is "(MR, Tab A)" and to Tab B as "(MR, Tab B)."

Certain documents in the Mandamus Record are also attached as an Appendix to the Petition. They are cited by the abbreviation "(Appx., Tab)." To avoid confusion, the Appendix tabs are assigned a number.

# STATEMENT OF THE CASE

A. <u>**Nature of the Underlying Proceeding**</u>

The proceeding below involves claims by the Plaintiff and RPI to portions of the sales proceeds, including $700,000, received by Relator Montoya Park Place, Inc. following the sale of real property described as Tract 3, Johannsen Subdivision in the City of El Paso, Texas (the "Property"). Both Plaintiff and RPI assert $700,000 was owed and payable from the proceeds to Right IMMIX Capital, Inc. ("RIC") at the time of the closing of the sale. It is undisputed RPI Weststar's title search failed to discover a lien of record in favor of RIC which its insurer, RPI Fidelity, was forced to pay to RIC to satisfy the lien. RPI, despite Weststar's mistake, nonetheless assert that Relator wrongly received the $700,000 and filed a Joint Motion requesting that certain funds in the sum of $1,038,000 (the "Deposited Funds") be paid into the registry of the court.

Relators who entered into an agreed injunction which by its terms prohibits them from spending or transferring proceeds of the sale (i.e., the Deposited Funds) assert deposit into the registry is improper because there is no evidence the Deposited Funds are in danger of loss or depletion.

Nevertheless, the trial court issued on order on April 26, 2021, which requires deposit of $750,000 into the court registry **on or before July 19, 2021**. Relators face contempt if they do not.

ix

**B.**    <u>**Respondent**</u>

Respondent is the Honorable Thomas Spieczny, presiding judge of the 327th Judicial District Court of El Paso County, Texas.

**C.**    <u>**Respondent's Action**</u>

Respondent improperly ordered the deposit of the Deposited Funds into the registry of the Court.

## STATEMENT OF JURISDICTION

The Court has jurisdiction over this matter pursuant to section 22.221(b) of the Texas Government Code.  TEX. GOV'T CODE ANN § 22.221(b).

## ISSUES PRESENTED

Did the trial court err by ordering Relators to deposit $750,000 into the registry of the court where there is no evidence that the funds are in danger of loss or depletion?

x

## PETITION FOR WRIT OF MANDAMUS

Keyvan Parsa, M.D. and Montoya Park Place, Inc., Relators, file this Petition for Writ of Mandamus and, as grounds therefore, would show as follows:

## STATEMENT OF FACTS

On July 1st and 2nd, 2020, Montoya sold real property described as "Tract 3, JOHANNSEN SUBDIVISION an Addition to The City of El Paso," Texas (the "Property"). The closing took place at Weststar Title. (MR, Tab C[1] ¶¶ 5, 8, 14 & Ex. B).

On September 16, 2020, Flores filed suit claiming that i) $700,000 was due and payable out of the sale proceeds of the Property to Right IMMIX Capital, Inc. ("RIC"), ii) because RIC lent this sum to Montoya's predecessor Johannsen Development Group, Inc. (which Parsa and Debra Jordan guaranteed (the "Guaranty")), iii) but which amount was not paid at the closing. (MR, Tab A[2] ¶¶ 8, 9, 14, 15). In addition, Flores alleged Montoya Park Place was deadlocked (as between he and Parsa) and sought appointment of a receiver. (MR, Tab A ¶ 22).

Parsa and Montoya responded that Flores had transferred his fifty percent (50%) of the stock of Montoya to Parsa on July 1, 2020, and, thus, had no

---

[1] "Plaintiff's Second Amended Petition (Suit for Recission of Contract, for Fraud in a Stock Transaction, for Unjust Enrichment, for Injunctive Relief, and to Appoint a Receiver)" filed on November 23, 2020.

[2] "Suit to Appoint a Receiver for a Corporation Under Texas Business Corporations Act § 7.05.A" filed on September 16, 2020.

ownership interest to justify appointment of a receiver or to maintain the suit. (MR, Tab B[3] & Ex. A ("Stock Purchase Agreement")).

In his most recent pleading, despite having received $280,000 from the sales proceeds on or about July 2, 2020 (and releasing any interest in Montoya), Flores seeks to rescind the Stock Purchase Agreement, asserting, among other things, fraud by Parsa. However, Flores acknowledges i) that prior to the sale (on February 4, 2020), he foreclosed on a deed of trust note for a lien he had held on the Property since September 2017, ii) that Montoya paid Weststar Title $10,000 for a title policy, iii) that Weststar issued a title commitment reflecting "the Right IMMIX Capital lien had been 'cut off' by [Flores'] foreclosure," and, finally, iv) that he signed the closing documents knowing the HUD-1 did not include any payment to RIC. (MR, Tab C ¶ 8, 14, 15, 17, 18 & Ex.D; Tab B, Ex. B). Flores additionally seeks $338,000 for "his share" of the settlement proceeds and that a receiver be appointed to recover the $700,000.[4] (MR, Tab C ¶ 17, 18, 34).

Flores then sought a temporary restraining order and temporary injunction, (MR, Tab D[5]), and on December 14, 2020, and January 15, 2021, respectively, Flores, Parsa and Montoya entered into an Agreed Temporary Restraining Order and Agreed Temporary Injunction (the "Injunction"). The Injunction, filed of

---

[3] "Defendants' Motion to Dismiss a Baseless Cause of Action" filed on October 5, 2020.
[4] To date, Flores has neither set a hearing on nor otherwise sought appointment by the trial court of a receiver.

2

record on January 27, 2021, restrained Parsa and Montoya from spending, transferring or alienating the proceeds of the sale of the Property. (MR, Tab E[6]).

On January 6th and 22nd, 2021, respectively, Weststar (as to Montoya) and its insurer, Fidelity (as to Parsa, Montoya Park Place, Flores, and Deborah Jordan), intervened in the lawsuit alleging generally, among other claims, that Montoya, Parsa and Flores had breached their obligations and warranties under one "Commercial Affidavit as to Debts and Liens" ("Debts and Liens Affidavit"), dated July 1, 2020, and signed at the closing, and that Parsa and Jordan had breached the Guaranty. (MR, Tab F[7] ¶¶ 10-11; Tab G[8] ¶¶ 34, 49-52, 53-58). Weststar sought injunctive relief, Fidelity did not, and, although counsel for Parsa and Montoya kept counsel for Weststar and Fidelity apprised of negotiations with Flores as to the proposed injunction (as well as where the funds were on deposit), neither chose to be a party to the Injunction. (MR, Tab F ¶15; Tab G; Tab P & Ex. B p. 8-9).

Flores answered the Weststar and Fidelity petitions in intervention and filed a counterclaim against Fidelity. Notably, Flores alleges the failure to identify the

---

[5] "Motion for Temporary Restraining Order and Injunctive Relief" filed on November 25, 2020.

[6] "Agreed Temporary Restraining Order" filed January 6, 2021 and "Agreed Temporary Injunction" filed January 27, 2021.

[7] "Petition of Intervention of Weststar Title, LLC."

[8] "Fidelity National Title Insurance Company's Original Petition in Intervention."

3

RIC lien and to include payment to it from the sales proceeds was due to Weststar's own negligence:

> Texas is a comparative negligence state, and clearly, the greater negligence is overwhelmingly on the part of WESTSTAR (as authorized agent of FIDELITY NATIONAL TITLE INSURANCE COMPANY). The standard of care, is far greater for the title company, because it is a professional, of whom skill and expertise is expected. There is no good excuse for failing to detect (or failure to understand?) the recorded subordination agreement; it was blatant and gross error to have missed it, and WESTSTAR TITLE as agent and FIDELITY NATIONAL TITLE INSURANCE COMPANY as authorizing principal should have to answer for all the harm proximately caused by their negligence.

(MR, Tab H,[9] Tab I,[10] & J[11] ¶ 7).

On April 21, 2021, Fidelity and Weststar filed their "Joint Motion to Compel Interpleader of Funds into Registry of Court" ("Joint Motion") in which they acknowledged that 1) the sums of $338,000 and $700,000 were on deposit in two (2) Wells Fargo Bank accounts (the "Deposited Funds"), 2) Parsa and Montoya had consented to the Injunction, and 3) the Injunction restrained them from spending, transferring or alienating the Deposited Funds. Nevertheless, Fidelity and Weststar alleged "[t]he Parties have asserted competing claims to the Deposited Funds" and Fidelity and Weststar "object to the monies remaining

---

[9] "Albert Flores' Answer to the Petition in Intervention by Weststar Title, LLC" filed on February 3, 2021.
[10] "Albert Flores Answer to the Petition in Intervention by Fidelity National Title Insurance Company" filed on February 4, 2021.

4

*outside of the security* of the Court Registry" and "requests [sic] that the Court enter an order compelling Intervenor Defendants to interplead the Deposited Funds into the registry of the Court *where it will remain until the Court determines to whom the Deposited Funds should be awarded.*" (MR, Tab K & Ex. B (emphasis added)).

On April 26, 2021, believing the Joint Motion was joint as to *all parties*, and without a hearing, Judged Spieczny entered an order granting it. (MR, Tab L; Tab P, Ex. 2, p. 5, 7, 30, 31). On the same day, Parsa and Montoya filed a response and objection to the Joint Motion,[12] and on April 28, 2021, their first Motion to Reconsider[13] the order. (MR, Tab M & N). In the Motion to Reconsider, Parsa and Montoya noted that the case was recently mediated (on April 19, 2021) and that there were no claims at mediation that either defendant had "violated or breached the terms of the Temporary Injunction." Furthermore, then-counsel for Parsa and Montoya posited that the motion was "retributory by [Fidelity] for not being able to resolve this matter at mediation." (MR, Tab N ¶ 7).

On May 18, 2021, Judge Spieczny held a hearing on the Motion to Reconsider. He first heard argument from counsel. Counsel for Parsa and

---

[11] "Counterclaim of Plaintiff and Third-Party Defendant Albert Flores for Comparative Negligence, Against Intervenor/Third Party Plaintiff Fidelity National Title Insurance Company" filed on February 8, 2021.
[12] "Keyvan Parsa M.D. and Montoya Park Place, Inc.'s Response and Objection to Joint Motion for Interpleader."

Montoya explained that 1) the Temporary Injunction had maintained the status quo as to the Deposited Funds 2) in January of 2021, he had discussions with counsel for Weststar and Flores and provided them with "evidence of where the money was ... in a Wells Fargo account" and 3) "on May 17th [he] provided [counsel for Weststar and Fidelity] an updated letter from Wells Fargo Bank confirming that the funds are still there." (MR, Tab P, Ex. B, p. 8-9). Counsel for defendants further confirmed in response to inquiry from Judge Spieczny that despite Flores' pleadings to the contrary, the money was never transferred to Mexico. (MR, Tab P, Ex. B, p. 10). Notably, counsel for Flores spoke next, and he made no mention of his pleadings about the money being transferred to Mexico, only voicing concern about having seen just one letter from Wells Fargo evidencing the one account containing $700,000. Counsel for Weststar pointed only to Flores' affidavit purporting to assert that the money had been transferred to Mexico but acknowledged that Parsa "may have a different position." (MR, Tab P, Ex. B, p. 11-13). Last, counsel for Fidelity admitted the Joint Motion was filed for security and not because of any evidence the Deposited Funds were in any danger:

> MR. WILLEY [Counsel for Fidelity]: We do it for security and also for - - you know, just to ensure that, you know all the parties' interest in the matter is addressed.

---

[13] "Keyvan Parsa M.D. and Montoya Park Place, Inc.'s Motion for Reconsideration & Abatement of Order Granting Joint Motion for Interpleader."

So, you know, I know Mr. Parsa hasn't done anything to date to raise concerns, but, you know, in - - in fact, if, you know, the - - the relief that we were requesting is not granted, you know, there's no assurances, Your Honor, that, you know - -

THE COURT: I understand.

MR. WILLEY: Yeah. So - -

THE COURT: He could do something tomorrow.

MR. WILLEY: Exactly. And so in that regards, I don't think saying that he hasn't done anything to date is grounds to vacate that order...

(MR, Tab P, Ex. B, p. 15-16).

Counsel for defendants then called Parsa to testify. Parsa confirmed 1) knowledge of the Injunction and its terms, 2) he had followed the terms "One hundred percent," 3) the money had never been transferred to Mexico (or anywhere else outside the country), 4) was always in Wells Fargo Bank, 5) that all the money was still in the Wells Fargo accounts (but that he had only obtained a letter as to one account due to short notice), 6) he was willing to share "all that information with [the other parties]," 7) he had never transferred any of the money out of the accounts since the injunction was entered, and 8) $1,038,000 remained in the accounts. (MR, Tab P, Ex. B, p. 17-21). During cross examination, counsel failed to illicit any evidence Parsa had acted in any way violative of the Injunction or that the Deposited Funds were otherwise at risk of loss or depletion. (MR, Tab P, Ex. B, p. 23-26). Moreover, Exhibit B to the Joint Motion clearly evidences the

7

sums of $700,000 and $338,000, respectively, were deposited into two accounts at Wells Fargo **on July 20, 2020**, well before the filing of the lawsuit on September 16, 2020 and remained on account as of the date of the letters, January 14, 2021— and before the Injunction was rendered on January 20, 2021 (and filed of record on January 27, 2021). (MR, Tab K, Ex. B).

Finally, despite conceding there was no risk of loss or depletion of the funds, Judge Spieczny concluded there was no prejudice in placing the monies in the registry:

> THE COURT: ... And, Doctor, I – here is how I think I should rule, and I want to explain this to you. I do not have a basis for thinking that you're going to move that money, and I do not have any basis to think you're going to do anything devious or that you're going to do anything sneaky or inappropriate. And I take and give full credibility to everything you have said, that you are honoring the injunction and that you intend to continue to honor the injunction.

> But I do understand the apprehension and the fear of these - - these other lawyers and their clients who don't know you and, you know, their interest in wanting to get just some more security just in case you were to do something with that money.

> And so I'm going to deny the motion to abate that order. I don't know if I need to do another order confirming that. I think the order was originally in place. And I will accept full responsibility for the confusion that has occurred here.

> ...But I think at this stage of the proceedings, what we are going to do is leave the original order to deposit the money into the registry of the Court in place.

> That order will allow the doctor and Mr. Miranda to ask for access to it at any time. And, you know, you would be free, if there

8

> was a need that arose, for - - to come in and say, We need relief from this order, and we'd have a hearing and I'd rule on it at that time. But right now I think the most cautious thing to do is to go ahead and just leave the order in place.

(MR, Tab P, Ex. B, 29-31). The court further orally ordered the Deposited Funds be deposited into the registry of the court no later than ten (10) days from the date of the hearing (i.e., by May 28, 2021). (MR, Tab P, Ex. B, p.31).

On May 28, 2021, Parsa and Montoya filed a second Motion to Reconsider specifically addressing the requirements of a petition for interpleader under Rule of Civil Procedure 43—which were not present or met in this case—and urging that withdrawal of the Deposited Funds would i) result in a 4.5% penalty (as the monies were in money market accounts), ii) would result in loss of a credit line (as the monies had been pledged to open the credit), iii) require immediate payment of the monies borrowed (of $180,000), and iv) that the present injunction was sufficient protection.[14] (MR, Tab O).

In response, Fidelity filed its Motion for Contempt[15] and Weststar its Objection[16] to the second Motion for Reconsideration now asserting as the basis for deposit into the registry the court's inherent authority "if there is evidence that

---

[14] The second Motion to Reconsider was filed prior to receipt of the Transcript of the May 18, 2021, Motions Hearing.

[15] "Motion for Contempt of Court and for Sanctions" filed on June 7, 2021. Parsa and Montoya filed their "Defendants' Response to Motion for Contempt of Court and Request for Sanctions" on July 5, 2021. (MR, Tab R).

9

the funds are in danger of being lost or depleted." (MR, Tab P & Tab Q). Weststar argued that the Deposited Funds were in danger of being lost or depleted because "[t]he Defendants have apparently already transferred the funds that are the subject of the Injunction Orders," i.e., the funds are pledged as security for a Priority Credit Line Agreement in the name of Westmount Group which is not a party to the suit. The Objection goes on to allege pledge of the funds constituted a transfer as it created a lien. (MR, Tab Q). However, the credit line was created on August 8, 2020 (MR, Tab O, Ex. A), again, well before the filing of the lawsuit and the date of the Injunction; and as Exhibit B to the Joint Motion evidences, the Deposited Funds were placed on deposit on July 20, 2020 in the name of Westmount Group, Inc.[17], a non-party—which facts were made known to Fidelity and Weststar in January 2021—and in which accounts the funds *remain on deposit.* (MR, Tab K, Ex. B; Tab P, Ex. B p. 17-21). In addition, the Joint Motion and Order specifically reference as the "Deposited Funds" to be deposited into the registry "the two (2) separate Treasury Money Market Funds with Wells Fargo Bank, N.A., in amounts of at least $338,000 and $700,000, respectively (the

---

[16] "Weststar Title, LLC's Objection to Keyvan Parsa M.D. and Montoya Park Place, Inc.'s Motion for Reconsideration and to Abate Joint Order to Compel Interpleader" filed on June 15, 2021.

[17] The true and correct name of the entity holding the credit line is Westmount Group, Inc. not Westmount Group, LLC as the latter entity does not exist. (MR, Tab S, "Keyvan Parsa and Montoya Park Place, Inc.'s Amended Reply to Albert Flores' and Weststar Title, LLC's Response to Defendants' Motion for Reconsideration and to Abate Joint Order to Compel Interpleader" at n. 7; Tab T, p. 18).

"Deposited Funds")." (MR, Tab L). In other words, the funds identified, and the subject of the letters/accounts contained, in Exhibit B to the Joint Motion. (MR, Tab K, Ex. B).

On July 8, 2021, the trial court held a hearing on the *second* Motion to Reconsider (and Fidelity's Motion for Contempt).[18] The only evidence presented at the hearing was Parsa's testimony.[19] Parsa testified that the Deposited Funds i) were originally deposited on July 20, 2020, in the name of Westmount Group, Inc., ii) pledged to the line of credit in August of 2020, iii) remained on deposit as of July 8, 2021 in the same accounts as reflected in Exhibit B to the Joint Motion, and, iv) since issuance of the Injunction, there had likewise been no change "in where these monies [were] deposited [or] in what name." In addition, Parsa testified that withdrawing the funds from the accounts would incur a 4.5% penalty, tax consequences, and would be in breach of the credit line agreement causing the additional expense of immediate payment of the funds borrowed against the credit line (approximately $180,000). (MR, Tab T, p. 18-21, 50-54). Cross-examination did not illicit contrary evidence. (MR, Tab T, p. 22-35). Ultimately, the court ordered $750,000 be deposited into the registry of the court within ten (10) days— **on or before July 19, 2021**—with a contingent bond equal to the early withdrawal

---

[18] Transcript of Motions Hearing, dated July 8, 2021 (the Transcript incorrectly states that the date of the hearing was *June* 8, 2021). (MR, Tab T).

11

penalty (4.5%), if applicable, on the total funds on deposit. (MR, Tab T, p. 50-57). Finally, the court asked that the parties bring any issues before it prior to July 19th. Thereafter, on July 14, 2021, the court held a hearing where the issue of redeeming the shares in the accounts presented a potential delay in the eventual withdrawal of the funds—which could take 10-15 days.

Judge Spieczny left the prior order in place but modified it i) to allow counsel for Parsa and Montoya to alert the court and the parties about the maturity date (in the event it was July 20, 2021) and whether waiting to withdraw the funds on that date might avoid penalty, ii) order defendants to initiate the process to redeem/withdraw the funds, and iii) reserved any contempt until July 19, 2021. Finally, Judge Spieczny admitted defendants' Exhibit 1, updated statements/letters from Wells Fargo Bank, evidencing the Deposited Funds remained on account as of July 14, 2021 (in the sums of $338,000 and $700,000, respectively). (MR, Tab U).

It is about the Joint Order which Relators complain and from which they seek relief.

## SUMMARY OF THE ARGUMENT

A trial court may order deposit of funds into the registry of the court in certain limited circumstances one being where there is a danger of loss or depletion

---

[19] Additionally, undersigned counsel asked that the court take judicial notice of the

of specific funds which are in dispute. The only evidence before the trial court showed that Relators had at all times—and consistent with the agreed Injunction—safeguarded the disputed funds and the funds were in no danger of being lost or depleted. Nevertheless, the trial court issued an order requiring deposit of the funds into the registry to provide security for the opposing parties' claims. While this action may be laudable, because there is no evidence of risk of loss or depletion, the trial court's actions were in error constituting an abuse of discretion. The trial court's order should be vacated and mandamus issue.

## ARGUMENT AND AUTHORITIES

### I. Standard of review.

"Mandamus relief may be available if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy." *N. Cypress Med. Ctr. v. St. Laurent*, 296 S.W.3d 171, 178-79 (Tex.App.—Houston [14th Dist.] 2009, orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex.2004) (orig. proceeding). The court of appeals will not disturb a trial court's resolution of disputed fact matters, but the trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding).

Unless a party is seeking issuance of writ of attachment, a trial court has the

pleadings on file as well as the exhibits thereto. (MR, Tab T, p. 39).

power to order deposit in the court registry of specific funds *only when* such funds are in danger of being lost or depleted:

> A trial court has two routes of authority to order money to be deposited in the registry of the court. The court may, in compliance with section 61.001 of the Texas Civil Practice and Remedies Code, issue a writ of attachment. The court may also, in exercise of its inherent authority "order a party to pay disputed funds into the court's registry if there is evidence the funds are in danger of being 'lost or depleted.'" *In re Reveille Resources (Texas), Inc.,* 347 S.W.3d 301, 304 (Tex.App.–San Antonio 2011, orig. proceeding) (citing *Castilleja v. Camero,* 414 S.W.2d 431, 433 (Tex.1967)).

*Zhao v. XO Energy LLC,* 493 S.W.3d 725, 736 (Tex.App.—Houston [1st Dist.] 2016, no pet.). "When there is insufficient evidence presented that the 'funds are in danger of being 'lost or depleted,'" however, the trial court abuses its discretion by ordering funds deposited in the registry of the court and mandamus relief from such an order is appropriate. *Id.* (citing *In re Reveille Resources (Texas), Inc.,* 347 S.W.3d at 304 (trial court abused its discretion when there was no evidence of possible depletion of funds and trial court based injunction solely on statement by counsel during hearing rather than evidence)). *See also N. Cypress Med. Ctr.,* 296 S.W.3d at 178-79. (trial court abused its discretion when there was no evidence that funds at issue were at risk of being lost or depleted, but only that disputed partnership funds were in same bank account that partnership actively used to fund several business activities.).

14

**II.    The trial court erred when it ordered Relators to deposit $750,000 in the registry of the court where there was no evidence the funds were in danger of being lost or depleted**

The trial court's order i) fails for lack of any evidence the funds at issue were in danger of being lost or depleted, ii) was based on providing security to the other parties in the nature of pre-judgment writ of attachment, iii) requires a non-party to deposit the disputed funds, and iv) fails to recognize the Relators initially consented to, and have since complied with, the Injunction which has proven sufficient to protect the parties.

**No Evidence Funds in Danger of Being Lost or Depleted**

In the Joint Motion, RPI identify and request certain funds, the "Deposited Funds," be placed in the registry.  More specifically, Weststar and Fidelity identify the funds as those on deposit in the accounts at Wells Fargo Bank and depicted in the statements/letters attached as Exhibit B to the Joint Motion.  (MR, Tab K & Ex. B).  Furthermore, the Joint Order similarly identifies the Deposited Funds as those on deposit in "the two (2) separate Treasury Money Market Funds with Wells Fargo Bank, N.A., in amounts of at least $338,000 and $700,000, respectively (the "Deposited Funds")."  (MR, Tab L).

Therefore, as to the Deposited Funds, the evidence before the court establishes:

i)    The Deposited Funds (as a portion of the sales proceeds) were originally deposited in Montoya Park Place, Inc.'s account at Western Heritage Bank on or about July 2, 2020 (MR, Tab C ¶ 16);

ii)   On July 20, 2020, Parsa deposited the Deposited Funds into the Wells Fargo Bank accounts in the name of Westmount Group, Inc. (MR, Tab T, p. 18-21);

iii)  The Deposited Funds were never transferred to Mexico or anywhere else outside of the United States (MR, Tab P, Ex. B, p. 19);

iv)   Parsa/Montoya's counsel apprised Weststar and Fidelity of the negotiations with Flores' counsel in January 2021 resulting in the Restraining Order and Injunction, including where the funds were on deposit (MR, Tab P & Ex. B, p. 8-9; MR, Tab K, Ex. B);

v)    On April 19, 2021, the parties mediated the case, and there were no claims/concerns raised as to any breach or violation of the Injunction (MR, Tab N ¶ 7);

vi)   The Joint Motion (of April 21, 2021) attached Exhibit B, the letters/statements of the Wells Fargo Bank accounts, evidencing the Deposited Funds were deposited on July 20, 2020, and remained in the accounts on January 14, 2021 (before the Injunction was rendered on January 20, 2021) (MR, Tab K, Ex. B.)

vii)  On May 17, 2021, counsel for defendants provided counsel for Weststar and Fidelity with an updated letter from Wells Fargo Bank confirming the Deposited Funds were still on deposit (MR, Tab P, Ex. B, p. 8-9);

viii) The Deposited Funds remained in the accounts as of May 18, 2021, in the sum of $1,038,000 (MR, Tab P, Ex. B, p. 19-21);

ix)   Parsa had "[o]ne hundred percent" complied with the Injunction as of May 18, 2021 and no monies had been transferred from the accounts since the injunction was entered (MR, Tab P, Ex. B, p. 20);

x)    Counsel for Fidelity admitted as of May 18, 2021, "Parsa hasn't done anything to date to raise concerns" (MR, Tab P, Ex. B, p. 15-16);

xi)  Judge Spieczny acknowledged there was no evidence the Deposited Funds were in danger of being lost or depleted (MR, Tab P, Ex. B, p. 29-31);

xii)  On July 8, 2021, Parsa confirmed the Deposited Funds were originally deposited on July 20, 2020, in the name of Westmount Group, Inc., pledged to the credit line in August of 2020, and remained on deposit in the same accounts as reflected in Exhibit B to the Joint Motion (MR Tab T, p. 18-21,50-54); and

xiii)  Letters/statements from Wells Fargo Bank updated as of July 14, 2021 confirm $1,038,000 remain on deposit (MR, Tab U).

It cannot be disputed that the funds sought by RPI to be deposited into the registry—the Deposited Funds—were made known to them by counsel for Relators in January of 2021, in conjunction with preparation of the Injunction by the letters/statements dated January 14, 2021, and attached to the Joint Motion at Exhibit B. In addition, that counsel for Weststar and Fidelity felt comfortable that the Deposited Funds remained on account is evident in that they asked the court to enter the Joint Order which of course also described the Deposited Funds as those on account at Wells Fargo Bank in the name of Westmount Group, Inc. And, at the hearing on May 18, 2021, they were unable to point to any evidence the funds were in danger of being lost or depleted. Judge Spieczny too acknowledged there was no evidence Parsa had violated the terms of the Injunction or that he intended to move the money or to otherwise engage in any wrongdoing. Rather, he and counsel for Fidelity desired to provide security for the parties' claims. Finally,

17

since May 18, 2021, it is undisputed the funds remain on account—and have remained so since July 20, 2020, before the lawsuit was filed. Quite simply, there is no evidence the Deposited Funds are in danger of being lost or depleted.

Moreover, recent claims by RPI that the monies were "transferred" to Westmount Group, Inc. indicating a violation of the injunction (MR, Tab Q ¶ 9) are belied by the fact RPI knew as of January 14, 2021, that the monies were on deposit in the name of Westmount, and had been since July 20, 2020, and yet still they requested these funds be placed in the court registry. Weststar and Fidelity were under no misimpression, nor have they been, about the whereabouts and character of the Deposited Funds. Likewise, to assert that the pledge of the funds to the credit line in August 2020 constitutes a transfer by creation of "lein" (MR, Tab Q ¶ 10) again ignores that the Deposited Funds remain in the same form they did in August 2020, January 2021 (at the time of the Temporary Injunction), and, most recently, as of July 14, 2021.

This case is analogous to *North Cypress Medical Center v. St. Laurent*, where St. Laurent, a doctor, attempted to prevent the sale of his profits-only ownership interest in a hospital's limited partnership. St. Laurent was subject to an agreement that provided the partnership, "at its sole option," could sell his shares for several and various reasons, including breach of the agreement. The partnership later notified him that he had breached a non-competition clause and

18

that it intended to sell his shares. In response, he filed suit seeking an injunction preventing the sale. The trial court granted the injunction and ordered North Cypress "to pay into the registry St Laurent's portion of any future partnership distributions." 296 S.W.3d at 174. Despite that the undisputed evidence suggested that the funds at issue were on deposit in a bank account that the partnership could use to fund several activities, including reinvestment of funds into the hospital's physical plant, i.e., from "Available Cash," (the same source used to pay partner distributions); the Court found 1) the funds were not shown to be in danger of being lost or depleted (because the funds were being reinvested) and 2) there was no showing of "the extent, if any, to which the available cash may be dwindling because of the capital improvements." Id. at 179.

Here, assuming arguendo that the Deposited Funds are "encumbered" by having been pledged to secure the credit line, there is no evidence of the extent, if any, that the amount borrowed ($180,000) has compromised the Deposited Funds in any way,[20] that the credit line is in default (or in danger of default), or that there is any intent or need to withdraw the funds. In fact, as set forth above ad nauseum, the Deposited Funds have remained on deposit in the Wells Fargo accounts during

---

[20] In fact, the trial court reduced the amount to be deposited to $750,000 to accommodate the prospect of the need to immediately pay the $180,000 to satisfy the amounts borrowed on the credit line once the funds were withdrawn and the terms of the credit line breached. (MR, Tab T, p. 51-56). RPI cannot have it both ways. If payment of $180,000 upon withdrawal is not a risk to the Deposited Funds, then leaving the funds on deposit, even encumbered to $180,000,

the entire pendency of the case and up until as recently as July 14, 2021. Moreover, the trial court found Parsa credible in his testimony that he had always complied with the injunction and intended to. (MR, Tab P, Ex. B, 29-31).

### The Trial Court's Order was an Impermissible Attempt to Provide Security for the claims of RPI

Counsel for Fidelity urged the trial court to order the funds be deposited not because of any danger of loss or depletion but as security for any eventual judgment:

> MR. WILLEY [Counsel for Fidelity]: We do it for security and also for - - you know, just to ensure that, you know all the parties' interest in the matter is addressed.

(MR, Tab P, Ex. B, p. 15-16). And, in announcing his decision, Judge Spieczny transparently provided security, not risk, as his rationale:

> THE COURT:
>
> But I do understand the apprehension and the fear of these - - these other lawyers and their clients who don't know you and, you know, their interest in wanting to get just some more security just in case you were to do something with that money.

(MR, Tab P, Ex. B, 29-31). However, the laudable goal of providing security is not a substitute for the lack of evidence of the risk of loss or depletion of the funds and amounts to an improper prejudgment writ of attachment leaving Relators with no adequate remedy at law or by appeal. *See Noteboom v. Gray*, 111 S.W.3d 794,

---

prevents no present risk, especially given that there is no evidence of any default as to the credit

798 (Tex.App—Fort Worth 2003, orig. proceeding) ("[T]he record reflects the trial court was attempting the admirable goal of safeguarding sufficient assets necessary to satisfy any future money award on final judgment of the case; however, by refusing to permit Noteboom the opportunity to introduce evidence concerning the merits of the claims prior to the trial court's setting of the bond amount, the trial court failed to afford Noteboom the procedural due process to which he was entitled"). Here, as in *Noteboom*, Relators here have no adequate remedy by appeal with respect to the loss of the funds required at the time of withdrawal of the Deposited Funds—and the contingent bond offers no protection for this loss which amounts to a prejudgment attachment—such that mandamus is appropriate. *Id.* (citing See *S.R.S. World Wheels, Inc. v. Enlow*, 946 S.W.2d 574, 575 (Tex.App-Fort Worth 1997, orig. proceeding) (granting mandamus relief in connection with a prejudgment writ of attachment under which relator had no adequate remedy at law by which to obtain possession of its property).

**The Order Requires Relators to Deposit Funds which are in Possession of a Non-party**

Relators agreed to and have complied with the Injunction, but it is undisputed the Deposited Funds are in possession of Westmount Group, Inc. and always have been. (MR, Tab T, p. 29). RPI were provided the opportunity to be party to the Injunction and were provided copies of the statements/letters from

line.

Well Fargo identifying the accounts and account holder of the Deposited Funds. Nevertheless, RPI chose not to join the Injunction or add Westmount Group, Inc. as a party to the lawsuit. Furthermore, the Joint Order purports to order payment into the registry of funds which Relators do not presently possess. Putting aside for the moment the infirmities addressed above, the Joint Order cannot require Relators to perform an act for which they neither have the ability nor the authority. And, Westmount Group, Inc. cannot be compelled to turn over funds without due process.

### The Temporary Injunction Provides Sufficient Protection of the Deposited Funds

Parsa and Montoya are parties, and in fact agreed, to the Temporary Injunction. More importantly, there is no evidence of any actual or perceived breach of the terms of the Injunction, and the trial court was convinced Parsa had no intention to violate its terms. Therefore, although Westmount Group, Inc. is not a party to the Injunction, given Relators' consent to its terms, the Deposited Funds are protected even though held by Westmount Group, Inc. because if Relators withdrew the funds, they would be violation of the Injunction. Moreover, Relators agreed to terms in the Injunction which would arguably be an abuse of discretion for a trial court to order be enjoined. *See N. Cypress Med. Ctr.*, 296 S.W.3d at 178 (granting relief from mandamus requiring deposit in the court registry funds representing shares *and injunction* prohibiting sale or transfer of shares);

22

*Noteboom*, 111 S.W.3d at 798. Therefore, Relators, by their agreement, have provided the parties with more protection than they would otherwise be entitled by injunction, and by their performance, Relators have complied with the Injunction—providing actual protection of the parties', including RPI's, claims to the disputed funds.

## Conclusion

There is no evidence that the Deposited Funds are in danger of being lost or depleted, the Joint Order was entered in error, and was an abuse of discretion. In addition, Relators and/or Westmount Group, Inc. face tens, perhaps hundreds of thousands, of dollars in financial losses, if they are required to withdraw the Deposited Funds and pay them into the registry of the court—for which they have no adequate remedy by appeal. Furthermore, despite that the Deposited Funds are in possession of non-party Westmount Group, Inc., Relators, in addition to losses to the corpus of the funds, face the imminent consequence of being held in contempt.

The issuance of the Joint Order was in error and constitutes an abuse of discretion. Thus, the Joint Order should be vacated and mandamus granted.

## PRAYER

For these reasons, Relators respectfully request that the trial court's order ordering deposit of the disputed funds into the court registry be vacated, that same

23

be stayed pending this Court's decision on this petition and the case be remanded to the trial court for further proceedings and that Relators be awarded its costs of court.

TROY C. BROWN
Attorney at Law
1074 Country Club Dr., Ste. B-4
El Paso, Texas 79932
Phone: (915) 543-9669
Fax: (888) 922-3353
E-mail: troy@tcblegal.com

/s/ *Troy C. Brown*
TROY C. BROWN
State Bar Number 00783735
Attorney for Relators

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on the 17th day of July 2021 pursuant to the Court's Notice of Electronic Procedures established for the El Paso County Courts via e-mail:

James W. Brewer
Kemp Smith LLP
221 N. Kansas, Ste. 1700
El Paso, Texas 79901
Tel. (915) 533-4424
Fax. (915) 546-5360
James.brewer@kempmith.com

S. Shakira Ali Kelley
Gregory T. Brewer
Fidelity National Law Group
6900 Dallas Parkway, Suite 610
Plano, Texas 75024
(972) 812-6407
(972) 812-9408
Shakira.Kelley@fnf.com
Gregory.brewer@fnf.com

24

E.P. Bud Kirk
Attorney at Law
Terrace Gardens
600 Sunland Park Dr.
Building Four, Suite 400
El Paso, Texas 79912
budkirk@aol.com

Richard A. Roman
1018 Brown St.
El Paso, Texas 79902
(915) 351-2679
(915) 351-6754 fax
rromanattorney@yahoo.com

*/s/Troy C. Brown*
Troy C. Brown

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Petition for Writ of Mandamus complies with the type-volume limitations of TRAP Rule 9.4. The petition contains 5,658 words, excluding the parts of the petition exempted by 9.4(1); and this petition complies with the typeface requirements of 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point.

*/s/Troy C. Brown*
TROY C. BROWN

## VERIFICATION

STATE OF TEXAS              )
COUNTY OF EL PASO           )
                           )

Before me, the undersigned notary, on this day personally appeared Troy C. Brown, who after being duly sworn, stated:

"My name is TROY C. BROWN, I am over the age of 18 of sound mind, and I am fully competent to testify to the matters set forth herein. I have read the foregoing, including the Mandamus Record and Appendix referenced herein, and the documents attached hereto at the Appendix and attached as the Mandamus Record are true and correct copies of documents of record in the case and are what they purport to be."

Troy C. Brown

SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public, on this the 17th day of July 2021.

GENA OLNEY
Notary Public, State of Texas
Comm. Expires 05-09-2024
Notary ID 8807776

Notary Public in and for the State of Texas

My commission expires May 9, 2024

26

## CERTIFICATION

I hereby certify that the foregoing Petition for Writ of Mandamus complies with TRAP Rule 52.3(j).  I hereby certify that I have reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record.

/s/Troy C. Brown
TROY C. BROWN

NO. _____

IN THE COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

**In Re:**

**KEYVAN PARSA, M.D. and
MONTOYA PARK PLACE, INC.**

**Relators.**

Original Proceeding Arising Out of
the 327th Judicial District Court of El Paso County, Texas
No. 2020DCV2997
(Hon. Thomas Spieczny)

**Appendix**

**APPENDIX:**

**Appx. Tab 1.**     **Joint Order to Compel Interpleader and Hold Funds into
Registry of Court (April 26, 2021)**

# TAB 1

Norma Favela Barceleau
District Clerk
El Paso County
2020DCV2997

CAUSE NO. <u>2020DCV2997</u>

| | | |
|---|---|---|
| **ALBERT FLORES** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **FIDELITY NATIONAL TITLE** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| **Intervenor-Plaintiff,** | § | |
| | § | |
| **v.** | § | **EL PASO COUNTY, TEXAS** |
| | § | |
| **KEYVAN PARSA, M.D, AND** | § | |
| **MONTOYA PARK PLACE, INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| **and** | § | |
| | § | |
| **KEYVAN PARSA, M.D.,** | § | |
| **MONTOYA PARK PLACE, INC.,** | § | |
| **ALBERT FLORES, and DEBORAH** | § | |
| **JORDAN,** | § | |
| | § | |
| **Intervenor-Defendants.** | § | **327TH JUDICIAL DISTRICT** |

## <u>JOINT ORDER TO COMPEL INTERPLEADER AND HOLD FUNDS INTO REGISTRY OF COURT</u>

On this day came to be heard the Joint Motion to Compel Interpleader and Hold Funds into Registry of Court of Intervenor-Plaintiffs, Fidelity National Title Insurance Company and WestStar Title, LLC. The Court having considered the Joint Motion, finds as follows:

IT IS ORDERED that Defendants, Keyvan Parsa, M.D. and Montoya Park Place, Inc., shall within ten (10) days from the day of this order, interplead into the El Paso County Clerk

Registry the two (2) separate Treasury Money Market Funds with Wells Fargo Bank, N.A., in amounts of at least $338,000.00 and $700,000.00, respectively (the "Deposited Funds").

IT IS FURTHER ORDERED that all monies deposited by Defendants, Keyvan Parsa, M.D. and Montoya Park Place, Inc, into the Court's Registry and shall remain in the Court's Registry, and the Court shall not release the monies until a resolution is reached between the parties or thirty (30) days after a final, non-appealable Order has been entered in this suit.

IT IS FURTHER ORDERED that this Order is without prejudice to Plaintiff, Albert Flores, Intervenor-Plaintiff Fidelity National Title Insurance Company, Intervenor-Plaintiff WestStar Title, LLC and Defendants, Defendants, Keyvan Parsa, M.D. and Montoya Park Place, Inc., and Intervenor-Defendants, Keyvan Parsa, M.D. and Montoya Park Place, Inc, Albert Flores, and Deborah Jordan (collectively hereinafter referred to as the "Parties"), in recovering any and all funds deposited into the Court's Registry and any judgment against the Parties, claims and causes of action asserted or which could be asserted by the Parties in this suit.

IT IS FURTHER ORDERED that the Parties do not waive or release and are not estopped or otherwise prevented from recovering their claims and causes of action asserted or which could be asserted in this suit from all or any part of the funds held in the Court's Registry and any judgment.

SIGNED this 26 day of April, 2021.

PRESIDING JUDGE

*Agreed Order to Interplead Funds*
R002498

Page 2 of 3

**SUBMITTED BY AND AGREED AS TO FORM AND SUBSTANCE:**

*//s// Michael J. Willey*
**MICHAEL J. WILLEY**
State Bar No. 24115952
willey.michael@fnf.com
**GREGORY T. BREWER**
State Bar No. 00792370
Gregory.brewer@fnf.com
**FIDELITY NATIONAL LAW GROUP**
41785 Preston Road, Suite 1150
Dallas, Texas  75254-8046
Tel.: 972-812-6478
Fax.: 972-812-9408
*ATTORNEYS FOR INTERVENOR-PLAITNIFF*
*Fidelity National Title Insurance Company*

~And~

*//s// James W. Brewer*
**JAMES W. BREWER**
State Bar No. 02965200
James.brewer@kempsmith.com
**KEMP SMITH, LLP**
221 North Kansas, Suite 1700
El Paso, Texas 79901-1401
Tel.: 915-553-4424
Fax.: 915-546-5360
*ATTORNEYS FOR INTERVENOR-PLAITNIFF*
*WestStar Title, LLC*

# EXHIBIT "G"



## COURT OF APPEALS
### EIGHTH DISTRICT OF TEXAS
### EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: KEYVAN PARSA, M.D. AND MONTOYA PARK PLACE, INC., | § § § | No. 08-21-00125-CV |
| | | AN ORIGINAL PROCEEDING |
| Relators. | § | IN MANDAMUS |
| | § | |
| | § | |

## <u>J U D G M E N T</u>

The Court has considered this cause on the Relators' petition for writ of mandamus against the Honorable Thomas Spieczny, visiting judge of the 327th District Court of El Paso County, and concludes that Relators' petition for writ of mandamus should be denied. We therefore deny the petition for writ of mandamus, in accordance with the opinion of this Court.

IT IS SO ORDERED THIS 4TH DAY OF AUGUST, 2021.

GINA M. PALAFOX, Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.



**COURT OF APPEALS**
**EIGHTH DISTRICT OF TEXAS**
**EL PASO, TEXAS**

| | | |
|---|---|---|
| IN RE: KEYVAN PARSA, M.D. AND MONTOYA PARK PLACE, INC., | § § § | No. 08-21-00125-CV |
| | | AN ORIGINAL PROCEEDING |
| Relators. | § | IN MANDAMUS |
| | § | |
| | § | |

### <u>MEMORANDUM OPINION</u>

Relators Keyvan Parsa, M.D., and Montoya Park Place, Inc. have filed a petition for a writ of mandamus asking this Court to overturn an order issued by the Hon. Thomas Spieczny, visiting judge of the 327th District Court, impounding certain funds in the court's registry pending resolution of a lawsuit. Relators also filed a motion for emergency relief from the order pending resolution of the mandamus petition on the merits. The motion for emergency relief and petition for writ of mandamus are denied.

To be entitled to mandamus relief, a relator generally must meet two requirements. First, the relator must show that the trial court clearly abused its discretion. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). Second, the relator must demonstrate

1

that there is no adequate remedy by appeal. *Id.* at 135-36. The burden is on the relator to show he is entitled to mandamus relief. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding).

After reviewing the mandamus petition and record, we conclude that Relators have failed to show entitlement to mandamus relief on this record. Accordingly, we deny the emergency motion and the petition for writ of mandamus.

GINA M. PALAFOX, Justice

August 4, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

2

# EXHIBIT "H"

CAUSE NO. <u>2020DCV2997</u>

| | | |
|---|---|---|
| ALBERT FLORES | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| KEYVAN PARSA, M.D. and | § | |
| MONTOYA PARK PLACE, INC. | § | |
| | § | |
| Defendants, | § | |
| | § | |
| FIDELTIY NATIONAL TITLE | § | |
| INSURANCE COMPANY and | § | EL PASO COUNTY, TEXAS |
| WESTSTAR TITLE, INC. | § | |
| | § | |
| Intervenors/Third Party Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| KEYVAN PARSA, M.D. and | § | |
| MONTOYA PARK PLACE, INC., | § | |
| ALBERT FLORES, and DEBORAH | § | |
| JORDAN | § | |
| | § | |
| Third Party Defendants, | § | 327TH JUDICIAL DISTRICT |
| | § | |
| and | § | |
| | § | |
| WESTMOUNT GROUP, INC. | § | |
| | § | |
| Intervenor-Third Party Defendant | § | |

## <u>MOTION TO VACATE ORDERS</u>

COMES NOW Westmount Group, Inc. Intervenor-Third Party Defendant, and files this

Motion to Vacate Orders and would shows as follows:

1.    Intervenor Westmount Group, Inc. is a Texas corporation with its principal place

of business in El Paso County, Texas.

2.     Westmount Group, Inc. has a justiciable interest in this suit because it is the owner of funds which have been ordered to be tendered into the registry of the court.

3.     Westmount Group, Inc. was incorporated on December 7, 2012. It has multiple shareholders. It is in the business of owning real estate and engaging in lending.

4.     On July 17, 2020, Westmount Group, Inc. received two deposits of funds which it used to open brokerage accounts with Wells Fargo Bank in the amounts of approximately $700,000 and $338,000 as shown by Exhibit A.

5.     On August 7, 2020, Westmount Group, Inc. signed a line of credit with Wells Fargo Bank, a true and correct copy of which is attached as Exhibit B.

6.     On September 16, 2020, Plaintiff Albert Flores filed this action.

7.     At a later date, Fidelity National Title Insurance Company and WestStar Title, LLC intervened in this action.

8.     On or about April 21, 2021, Fidelity and WestStar filed a Joint Motion to Compel Interpleaders of Funds Into Registry of Court.

9.     The Court granted the Motion without a hearing on April 26, 2021.

10.    Although the funds sought to be interpleaded were the property of Westmount Group, Inc., Westmount was not made a party to the motion nor was it given notice.

11.    Notwithstanding the filing of several motions for reconsideration, the Court has continued to order that the funds belonging to Westmount Group, Inc. be deposited into the registry of the Court.

12.    The Court should vacate the Orders requiring deposit of funds into the registry of the Court for the following reasons:

a. The orders are void for lack of jurisdiction. Westmount Group, Inc. is the owner of the funds in question. It was not made a party to the proceedings or given notice that its pecuniary interests were being threatened. Notice to Westmount's shareholder Keyvan Parsa is insufficient because there has not been any finding or allegation that Westmount is the alter ego of Dr. Parsa.

b. A Motion to Compel Interpleader does not exist under the Texas Rules of Civil Procedure. Tex.R.Civ.P. 43 allows a person having claims against the plaintiff to be joined and required to interplead when the plaintiff may be subject to multiple claims. That is not the case. Intervenor does not assert claims against Plaintiff Albert Flores or Third Party Plaintiffs Fidelity or WestStar Title.

c. Westmount Group cannot be compelled to deposit the funds as security for any future judgment. This is prohibited by the Supreme Court decision in *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308 (1999). Additionally, there are no claims pending against Westmount Group.

d. Requiring Westmount Group to deposit its funds into the registry will work an undue hardship upon Westmount. It has pledged the funds in question to secure a line of credit to Wells Fargo Bank. If Westmount delivers the funds, it will be in breach of its agreements with Wells Fargo Bank and will be forced out of business.

WHEREFORE, PREMISES CONSIDERED, Westmount Group, Inc. prays that the Court vacate any and all orders compelling it to deposit funds into the registry of the court, either

directly or indirectly, and for such other and further relief, at law and in equity to which it may be entitled.

Respectfully Submitted,

**BARRON & NEWBURGER, P.C.**
7320 N. Mopac Expy, Suite 400
Austin, Texas 78731
(512) 649-3243
(512) 476-9253 Facsimile

/s/ Stephen W. Sather
Barbara M. Barron (SB No 1817300)
Stephen Sather (SBN 7657520)
**ATTORNEY FOR INTERVENOR**

## CERTIFICATE OF SERVICE

I certify that a true copy of this document was served in accordance with Rule 21a of the Texas Rules of Civil Procedure on the following on this the 16th day of July 2021.

All Counsel of record by electronic filing manager.

/s/Stephen W. Sather
Stephen W. Sather

Institutional Class shares



**Asset Management**

# 100% Treasury Money Market Fund

All information is as of 12-31-20 unless otherwise indicated. Information is subject to change.

| | |
|---|---|
| S&P rating | AAAm |
| Moody's Rating | Aaa-mf |

| | |
|---|---|
| Share Class | Institutional |
| Investment Minimum | $10 million |
| Ticker | WOTXX |
| CUSIP | 94988A759 |
| Gross Expense Ratio | 0.23% |
| Net Expense Ratio | 0.20% |

| | |
|---|---|
| Total fund assets | $18.9 billion |
| Fund Manager | Laurie R. White, Jeffrey L. Weaver, CFA, Michael C. Bird, CFA |
| Fund Inception Date | 12-03-90 |
| Class Inception Date | 10-31-14 |
| Trading deadline | 1 p.m. Eastern Time |



Seeks current income exempt from most state and local individual income taxes, while preserving capital and liquidity. Invests in high-quality, short-term money market instruments that consist of U.S. Treasury obligations.



% of portfolio
- Treasury debt: (100)



Total : 100%

### Current yield as of 12-31-20

| | 7-day SEC yield (%) |
|---|---|
| | 0.01 |

| Month | 30-day current yield (%) |
|---|---|
| December 2019 | 1.46 |
| January 2020 | 1.42 |
| February 2020 | 1.41 |
| March 2020 | 0.91 |
| April 2020 | 0.25 |
| May 2020 | 0.09 |
| June 2020 | 0.05 |
| July 2020 | 0.05 |
| August 2020 | 0.01 |
| September 2020 | 0.01 |
| October 2020 | 0.01 |
| November 2020 | 0.01 |
| December 2020 | 0.01 |

### Average annual total returns (%) as of 12-31-20

| 1 year | 3 year | 5 year | 10 year | Since Inception |
|---|---|---|---|---|
| 0.36 | 1.35 | 0.98 | 0.49 | 2.30 |



Weighted average maturity: 53 days
Weighted average life: 110 days

Daily liquid assets: 100%
Weekly liquid assets: 100%

*The Manager has contractually committed through May 31, 2021, to waive fees and/or reimburse expenses to the extent necessary to cap the fund's total annual fund operating expenses after fee waivers at the amounts shown above. Brokerage commissions, stamp duty fees, interest, taxes, acquired fund fees and expenses, and extraordinary expenses are excluded from the expense cap. The Manager may also voluntarily waive or reimburse additional fees and expenses, and such voluntary waivers may be discontinued or modified at any time without notice. Without these reductions, the fund's seven-day current yield would have been -0.09%. Prior to or after the commitment expiration date, the cap may be increased or the commitment to maintain the cap may be terminated only with the approval of the Board of Trustees. The expense ratio paid by an investor is the net expense ratio (the total annual fund operating expenses after fee waivers) as stated in the prospectus.*

*Figures quoted represent past performance, which is no guarantee of future results and do not reflect taxes that a shareholder may pay on an investment in a fund. Investment returns will fluctuate. The fund's yield figures more closely reflect the current earnings of the fund than the total return figures. Current performance may be lower or higher than the performance data quoted and assumes the reinvestment of dividends and capital gains. Current month-end performance is available at the fund's website, wfam.com.*

*Money market funds are sold without a front-end sales charge or contingent deferred sales charge. Other fees and expenses apply to an investment in the fund and are described in the fund's current prospectus.*

(Continued on next page.)

 **Advisors**

Wells Fargo Advisors
MAC H0005-035
One North Jefferson Avenue
St. Louis, MO 63103

January 14, 2021

Westmount Group, Inc.
7604 Plaza Redonda Drive
El Paso, TX 79912-8402

**RE: Verification of Assets for Account** █████

Dear Westmount Group, Inc.:

This letter confirms that:

(i)    You maintain a brokerage account with Wells Fargo Clearing Services, LLC ("Wells Fargo Advisors"), numbered █████ ("Account"), established on 07/20/2020;

(ii)    As of 01/13/2021, the Account maintains a total account value in excess of $700,000.00.

This letter is provided for informational purposes and does not represent future Account value, if your Account will remain with Wells Fargo Advisors in the future, any purposes not mentioned in this letter, or the creditworthiness of the person(s) referenced within. Wells Fargo Advisors will have no liability with any party's reliance on this letter or the information within.

Sincerely,

*Denise Gilles*

Denise Gilles
Securities Operations Services Specialist 3
Client Mailings – Verifications & Inquiries

Investment and Insurance Products are:
• Not Insured by the FDIC or Any Federal Government Agency
• Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate
• Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested



© 2019 Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC and Wells Fargo Advisors Financial Network, LLC, separate registered broker-dealers and non-bank affiliates of Wells Fargo & Company

Institutional Class shares

# 100% Treasury Money Market Fund

All information is as of 12-31-20 unless otherwise indicated. Information is subject to change.

 **WELLS FARGO Asset Management**

## Facts

| | |
|---|---|
| S&P rating | AAAm |
| Moody's Rating | Aaa-mf |
| | |
| Share Class | Institutional |
| Investment Minimum | $10 million |
| Ticker | WOTXX |
| CUSIP | 94988A759 |
| Gross Expense Ratio | 0.23% |
| Net Expense Ratio | 0.20% |
| | |
| Total fund assets | $18.9 billion |
| Fund Manager | Laurie R. White, Jeffrey L. Weaver, CFA, Michael C. Bird, CFA |
| Fund Inception Date | 12-03-90 |
| Class Inception Date | 10-31-14 |
| Trading deadline | 1 p.m. Eastern Time |

 **Principal investment strategies**

Seeks current income exempt from most state and local individual income taxes, while preserving capital and liquidity. Invests in high-quality, short-term money market instruments that consist of U.S. Treasury obligations.

**Portfolio composition**

% of portfolio
- Treasury debt: (100)



Total : 100%

## Performance

Current yield as of 12-31-20

| | 7-day SEC yield (%) |
|---|---|
| | 0.01 |

| Month | 30-day current yield (%) |
|---|---|
| December 2019 | 1.46 |
| January 2020 | 1.42 |
| February 2020 | 1.41 |
| March 2020 | 0.91 |
| April 2020 | 0.25 |
| May 2020 | 0.09 |
| June 2020 | 0.05 |
| July 2020 | 0.05 |
| August 2020 | 0.01 |
| September 2020 | 0.01 |
| October 2020 | 0.01 |
| November 2020 | 0.01 |
| December 2020 | 0.01 |

Average annual total returns (%) as of 12-31-20

| 1 year | 3 year | 5 year | 10 year | Since Inception |
|---|---|---|---|---|
| 0.36 | 1.35 | 0.98 | 0.49 | 2.30 |

**Portfolio maturity schedule (%)**



**Weighted average maturities**

Weighted average maturity: 53 days
Weighted average life: 110 days

Daily liquid assets: 100%
Weekly liquid assets: 100%

The Manager has contractually committed through May 31, 2021, to waive fees and/or reimburse expenses to the extent necessary to cap the fund's total annual fund operating expenses after fee waivers at the amounts shown above. Brokerage commissions, stamp duty fees, interest, taxes, acquired fund fees and expenses (if any), and extraordinary expenses are excluded from the expense cap. The Manager may also voluntarily waive or reimburse additional fees and expenses, and such voluntary waivers may be discontinued or modified at any time without notice. Without these reductions, the fund's seven-day current yield would have been -0.09%. Prior to or after the commitment expiration date, the cap may be increased or the commitment to maintain the cap may be terminated only with the approval of the Board of Trustees. The expense ratio paid by an investor is the net expense ratio (the total annual fund operating expenses after fee waivers) as stated in the prospectus.

**Figures quoted represent past performance, which is no guarantee of future results and do not reflect taxes that a shareholder may pay on an investment in a fund.** Investment returns will fluctuate. The fund's yield figures more closely reflect the current earnings of the fund than the total return figures. Current performance may be lower or higher than the performance data quoted and assumes the reinvestment of dividends and capital gains. Current month-end performance is available at the fund's website, wfam.com.

Money market funds are sold without a front-end sales charge or contingent deferred sales charge. Other fees and expenses apply to an investment in the fund and are described in the fund's current prospectus.

(Continued on next page.)

 **Advisors**

Wells Fargo Advisors
MAC H0005-035
One North Jefferson Avenue
St. Louis, MO 63103

January 14, 2021

Westmount Group, Inc.
7604 Plaza Redonda Drive
El Paso, TX  79912-8402

**RE:  Verification of Assets for Account** ▮▮▮▮▮▮

Dear Westmount Group, Inc.:

This letter confirms that:

(i)  You maintain a brokerage account with Wells Fargo Clearing Services, LLC ("Wells Fargo Advisors"), numbered ▮▮▮▮▮▮ ("Account"), established on 07/20/2020;

(ii)  As of 01/13/2021, the Account maintains a total account value in excess of $338,000.00.

This letter is provided for informational purposes and does not represent future Account value, if your Account will remain with Wells Fargo Advisors in the future, any purposes not mentioned in this letter, or the creditworthiness of the person(s) referenced within. Wells Fargo Advisors will have no liability with any party's reliance on this letter or the information within.

Sincerely,

*Denise Gilles*

Denise Gilles
Securities Operations Services Specialist 3
Client Mailings – Verifications & Inquiries

Investment and Insurance Products are:
• Not Insured by the FDIC or Any Federal Government Agency
• Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate
• Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested



© 2019 Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC and Wells Fargo Advisors Financial Network, LLC, separate registered broker-dealers and non-bank affiliates of Wells Fargo & Company

# Signature Page

WESTMOUNT GROUP, LLC
PRIORITY CREDIT LINE
7604 PLAZA REDONDA DR
EL PASO TX 79912-8402

| Sub Firm # | BR Code | FA Code | Account Number |
|---|---|---|---|
| 20 | TK | TK2Y | XXXX -0087 |

| Account Type |
|---|
| C-Corporation-privately owned |

BY SIGNING THIS PAGE, I/WE ("I") ACKNOWLEDGE THAT I HAVE RECEIVED AND REVIEWED A COPY OF MY/OUR INVESTMENT PROFILE(S) INCLUDED IN THIS PACKAGE AND I HAVE READ AND AGREE TO BE BOUND BY THE AGREEMENTS AND/OR DOCUMENTS LISTED BELOW AND ANY OTHER AGREEMENTS AND DOCUMENTS THAT ARE INCORPORATED BY REFERENCE INTO SUCH AGREEMENTS AND/OR DOCUMENTS.

020 - New Account Application, WBS - 1001
024 - Supplemental Account Owner Documentation *
131 - Trusted Contact Authorization, WFA - ICED

**I UNDERSTAND AND ACKNOWLEDGE THAT INVESTMENTS AND INSURANCE PRODUCTS IN MY BROKERAGE ACCOUNT:**
* **ARE NOT INSURED BY THE FDIC OR ANY FEDERAL GOVERNMENT AGENCY**
* **ARE NOT A DEPOSIT OR OTHER OBLIGATION OF, OR GUARANTEED BY, THE BANK OR BY ANY BANK AFFILIATE**
* **ARE SUBJECT TO INVESTMENT RISKS, INCLUDING POSSIBLE LOSS OF PRINCIPAL AMOUNT INVESTED**

I agree to promptly review and immediately advise Wells Fargo Advisors if any of the Owners and/or Account Profile information is not accurate or becomes inaccurate. I understand that Wells Fargo Advisors will rely on this information and that it is my responsibility to provide accurate and timely updates. My failure to do so may affect recommendations that are given to me related to my Priority Credit Line Account. I will provide notification to Wells Fargo Advisors.

BY SIGNING THIS SIGNATURE PAGE, I/WE AUTHORIZE, ACKNOWLEDGE, AND AGREE TO THE TERMS AND CONDITIONS OF THE PRIORITY CREDIT LINE AGREEMENT AND TO THE FOLLOWING:
* **Stock Lending:** My securities may be loaned to Wells Fargo Clearing Services, LLC or to others.
* **Communications Consent:** My Financial Advisor may contact me/us as described in the Communications, Recording and Monitoring, Statements and Confirmations section of the Priority Credit Line Agreement.
* **PCL Account Holders:** In connection with my Priority Credit Line Account, Wells Fargo Bank, N.A. may establish a Bank Account in my/our name(s) and provide the banking-related services as set forth in the Priority Credit Line Account Agreement and may make any inquiry considered appropriate, including credit or other reports, to determine if the Bank Account should be opened. I/We also agree to the terms of the dispute resolution program described in the Priority Credit Line Account Agreement relating to disputes specifically involving the Bank Account.

| **W-9:** *(Not Applicable to W-8 Clients)* | Under penalties of perjury, I certify that: |
|---|---|
| Payer's Request for Taxpayer Identification Number | 1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me); and |
| Is this your correct Social Security/Tax ID? If not, please enter the correct number in the appropriate boxes. | 2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and |
| ☐ Social Security  ☒ Tax ID  [ XXXX 9727 ] | 3) I am a U.S. citizen or other U.S. person; and |
| or  Corrected Social Security/ Tax ID  [          ] (Please omit dashes) | 4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct. (NOTE: The FATCA code is not applicable for accounts maintained in the United States.)  ☐ Check here if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. |

THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATIONS REQUIRED TO AVOID BACKUP WITHHOLDING.

THIS PRIORITY CREDIT LINE AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE LOCATED ON PAGE 4, PARAGRAPH G. BY EXECUTING THIS DOCUMENT CLIENT IS AGREEING TO BE BOUND BY THE PRE-DISPUTE ARBITRATION CLAUSE. THE UNDERSIGNED ACKNOWLEDGES RECEIPT OF A COPY OF THE PRIORITY CREDIT LINE AGREEMENT.

**———— MUST SIGN AND DATE ————**

I agree to the terms and conditions of this agreement and attest that the certification made of the W-9 above is true. *(Not Applicable to W-8 Clients)*

| Signature of KEYVAN PARSA  X _(signature)_ (Primary Owner) Use BLACK ink only. | Title if Applicable  Pres. Lnt | Date (Required)  08-07-20 |
|---|---|---|

I agree to the terms and conditions of this agreement.

| Signature of  X | Title if Applicable | Date (Required) |
|---|---|---|
| Signature of  X | Title if Applicable | Date (Required) |
| Signature of  X | Title if Applicable | Date (Required) |
| Signature of  X | Title if Applicable | Date (Required) |

**Investment and Insurance Products:**

| Not Insured by FDIC or any Federal Government Agency | May Lose Value | Not a Deposit of or Guaranteed by a Bank or any Bank Affiliate |
|---|---|---|

Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC, a registered broker-dealer and non-bank affiliate of Wells Fargo & Company.

* Total Supplemental Form(s) - 1, 1096

591213 (Rev 11 - 11/20)

WFGESGN  0080811608001  75530087

# EXHIBIT A

# EXHIBIT "I"

**From:** ssather@bn-lawyers.com,
**To:** budkirk@aol.com,
**Subject:** RE: Westmount Group, Inc., Case No. 21-30633-HCM-11
**Date:** Tue, Sep 21, 2021 5:00 pm

---

I did not leave anything out. If you will notice, the debtor listed various notes receivable. Those assets take the place of the prior money market certificates.

**From:** E.P. Bud Kirk <budkirk@aol.com>
**Sent:** Monday, September 20, 2021 6:13 PM
**To:** Steve Sather <ssather@bn-lawyers.com>
**Subject:** Westmount Group, Inc., Case No. 21-30633-HCM-11

Dear Steve,

After reading the Schedules and Statement of Affairs in Westmount Group, Inc., I am just astounded.

Did you mean to leave the money market certificates out?

Is there any intention by PARSA to satisfy the claims of FLORES, FIDELITY, and WESTSTAR?

R.S.V.P.,

E.P. BUD KIRK

(915) 584-3773

The information in this electronic message is privileged and confidential information intended only for the use of the individual or entity addressee. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to Terrace Gardens, 600 Sunland Park Drive, Building Four, Suite 400, El Paso, Texas 79912 VIA the U.S. Postal Service.

9/30/2021, 10:41 AM

**Thank you.**