IN THE UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF TEXAS, EL PASO DIVISION

In re WESTMOUNT GROUP, INC., Debtor          No. 21-30633-RGB-7

ALBERT

FLORES' LIST OF EXHIBITS AND WITNESSES

FOR HEARING ON CLAIM OBJECTION

A. Notice of Hearing given February 16, 2024

B. Objection to Proof of Claim No. 5 filed by MONTOYA PARK PLACE, INC. on October 9, 2021

  1. State court judgment in favor of ALBERT FLORES for $442,000.00, March 23, 2023

  2. WESTMOUNT GROUP, INC. schedule D, debt for $1,461,588.09 in favor of MONTOYA PARK PLACE, INC.

  3. Summary judgment in state court in favor of WESTSTAR TITLE. LLC for $895,637,67, dated October 25, 2022

  4. State court award of attorney fees to WESTSTAR TITLE, LLC, $60,000.00, November 8, 2022

  5. Promissory note for $1,461,586.89 payable to MONTOYA PARK PLACE, INC., dated July 15, 2020

  6. WESTMOUNT GROUP, INC. amended statement of affairs, December 1, 2021

C. State court findings of fact and conclusions of law, following judgment for ALBERT FLORES .

D. Proof of Claim by MONTOYA PARK PLACE. INC., Claims docket #5, $1,461,586.89

LIST OF WITNESSES

1. ALBERT FLORES. Mr. FLORES is expected to testify that as a co-Director in MONTOYA PARK PLACE, INC. on July 1, 2020, he was expecting to receive half of the profit from a sale of real estate, the closing for which was held at WESTSTAR TITLE, LLC in El Paso, Texas. The property was Tract 3, Johannsen Subdivision. FLORES' interest in the Property started as an inheritance from a deceased relative, then it became a real estate note receiveable (second lien) from a sale of Tract 3 in 2017. The note proved difficult to collect, and FLORES, after repeated forebearance agreements and promises of sales that fell through, finally foreclosed his note on February 4, 2020. The other Director in MONTOYA PARK PLACE, INC. was KEYVAN PARSA. PARSA had invested in the 2017 purchase of Tract 3, lost money in the effort to develop the Property, and turned to FLORES for sympathy while FLORES was foreclosing. FLORES agreed PARSA could have a 50% interest in MONTOYA PARK PLACE, INC., a new corporation that would continue to develop Tract 3. PARSA made no capital contribution to MONTOYA, but he promised to service half of the first-lien note installments on Tract 3. The first-lien note was held by RIGHT IMMIX CAPITAL, LLC, which had refinanced Tract 3 in June of 2019. FLORES had then been promised a full payoff from a sale that never materialized, and FLORES had to settle for a partial paydown of $155,000.00 on his junior note, then having a balance of nearly $600,000.00. FLORES agreed to subordinate his 2017 deed of trust lien so that RIGHT IMMIX CAPITAL would do the refinancing.

FLORES and PARSA (co-Directors in MONTOYA PARK PLACE, INC.) got an offer for Tract 3 for $1,955,000.00 in May of 2020 and closed the sale at WESTSTAR TITLE, LLC in El Paso (" WESTSTAR"). WESTSTAR evidently assumed that FLORES' foreclosure of his 2017 deed of trust extinguished the 2019 deed of trust in favor of RIGHT IMMIX CAPITAL. As a result, MONTOYA PARK PLACE, INC was overpaid by $722,000.00 at the closing. (FLORES' Subordination Agreement was filed of record, but some two months after the other June 2019 refinancing instruments.)

The total payout to MONTOYA was $1,829.295.40, which was wired to a MONTOYA PARK PLACE, INC. account PARSA had opened at Western Heritage Bank in Las Cruces.

WESTSTAR had separate closings, first for PARSA and then for FLORES. (There had never been any initial organizational meeting of MONTOYA PARK PLACE, INC., and no officers elected, no by-laws approved, and no shares issued.) FLORES did not carefully read the closing papers, but did notice the payout figure, did not know why it was so high, and decided to confer with PARSA the next day to see how much the actual payout was. When they talked the next day, it became clear that there was an overpayment, and that the overpayment matched what the note balance to RIGHT IMMIX CAPITAL was. FLORES said they would have to give it back, because of the magnitude of the mistake and the certainty that someone would detect it and demand its return—if not WESTSTAR, then the buyer of the Property, or RIGHT IMMIX CAPITAL.

Then PARSA showed his true colors. He said he would not give the money back, because MONTOYA had paid for title insurance, and the insurance would have to pay for the loss; also that he had lost too much money to the other investors in the development of Tract 3 to be giving the money back. To PARSA the title company error was a divine intervention. And PARSA was in fact in control of the money (all $1,829,295.40 of it); he had not given FLORES any checks or access to the funds. FLORES said he wanted no part of keeping the money that should have paid off the first lien, just wanted his half of the correct proceeds plus reimbursement for half of the $36.000.00 he had paid in monthly installments upon the first-lien note (unmatched by PARSA). FLORES also announced that he did not want to remain a shareholder in MONTOYA PARK PLACE, INC. PARSA then asked, as though there were other obligations impinging on the proceeds of Tract 3, how much money FLORES had to have right away. FLORES made notes on some scratch paper at hand, and replied "$280,000.00." PARSA said he would get FLORES a cashier's check for that amount promptly, and FLORES asked, when he would get the rest of his share (roughly $291,000.00). PARSA said, "In a little while. Just give me some time." The following Monday, July 6, 2020, PARSA gave FLORES a Western Heritage Bank cashier's check

for $280,000.00, and PARSA repeated his promise to pay FLORES the rest of his share "In a little while. Just give me some time."

PARSA then summoned FLORES to his weight-loss clinic on Friday the 10th of July. FLORES went, thinking he might get the rest of his money. But what PARSA had ready for FLORES was a "Stock Purchase Agreement," the salient parts of which were a recitation that the "total consideration" paid for the stock was a personal check from PARSA for $50.00, and elaborate provisions for legal proceedings over the Agreement, if any should arise: trial would have to be in a District Court in El Paso, and there was a jury waiver. Before and after signing it FLORES asked if PARSA still was going to pay him the rest of his share of the Tract 3 proceeds—a promise PARSA continued to make for the rest of Summer, 2020, each time using the phrase, "In a little while. Just give me some time."

It was not until after suing PARSA in September of 2020 to collect on his promise to pay, that FLORES saw that PARSA was claiming that in signing the "Stock Purchase Agreement" FLORES had given up his rights to whatever belonged to MONTOYA PARK PLACE, INC.

The Findings of Fact and Conclusions of Law made by The Hon. Thomas W. Spieczny in the state court trial, included findings of fraud, fraud and unjust enrichment iin the stock purchase transaction, exemplary damages of $100,000.00, attorney's fees awarded in the amount of $100,000.00, and actual damages of $240,000.00. The chief evidence of fraudulent misrepresentation was the false promise to pay "in a little while" and the subterfuge of asking FLORES how much money he had to have "right away," when there was no reason why PARSA and MONTOYA PARK PLACE, INC. could not have paid immediately. For on July 15, 2020, PARSA and MONTOYA PARK PLACE, INC. transferred $1,461,586,89 from the Western Heritage Bank account to the Debtor WESTMOUNT GROUP, INC. The transfer was obviously made to avoid debt, which PARSA and MONTOYA PARK PLACE, INC. knew they owed to FLORES, to WESTSTAR, to RIGHT IMMIX CAPITAL (PARSA was a personal guarantor of the RIGHT IMMIX CAPITAL first lien note), and to the buyer of Tract 3, which was IDEA PUBLIC SCHOOLS.

The testimony of ALBERT FLORES is also expected to include his observation or belief that if this Court were to allow payment upon the Proof of Claim filed by MONTOYA PARK PLACE, INC. from the funds which the Chapter 7 Trustee BRAD W. ODELL has recovered, that would be an undoing of the judgments which WESTSTAR and FLORES have recovered against MONTOYA PARK PLACE, INC. in the state court, as well as a frustration of the recoveries made by the Chapter 7 Trustee. The fraudulent transfer of $1,461,586.89 to the Debtor on July 15, 2020 is the same money that came from the sale of Tract 3, the same money that MONTOYA PARK PLACE, INC. and KEYVAN PARSA were trying to conceal from and place beyond the reach of their joint and several creditors FLORES and WESTSTAR, and the same money on account of which the Trustee has been recovering assets in this case. It would be a miscarriage of justice, for MONTOYA PARK PLACE, INC. to regain any of the money.

Respectfully submitted this 14th day of March, 2024.

E.P. Bud Kirk
332 Serrania
El Paso, TX 79932
TSBN 11508650
(915) 584-3773
budkirk@aol.com

CERTIFICATE OF SERVICE

I, E.P. Bud Kirk, certify that on this 14th day of March, 2024, I did cause a copy of the foregoing List of Exhibits and Witnesses to be served upon Keyvan Parsa, Director of Montoya Park Place, Inc., at 810 N. Kansas St., El Paso, Texas 79902, by hand delivery; and to Michael Nevarez, Attorney of Record for Montoya Park Place, Inc., at MNevarez@LawOfficesMNR.com, and at MNR4 Bankruptcy@gmail.com.

E.P. Bud Kirk